Stephen C. McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Valerie McConnell (State Bar No. 274159)
valerie@smcarthurlaw.com
THE MCARTHUR LAW FIRM PC
400 Corporate Pointe, 3rd Floor
Culver City, CA 90230
Telephone: (323) 639-4455

Attorneys for Plaintiff and Counterdefendant,
Mike Sarieddine

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE SARIEDDINE, an individual<br><br>Plaintiff,<br><br>vs.<br><br>D&A DISTRIBUTION, LLC (dba STRICTLY E-CIG) a Georgia limited liability company; ELECTRONIC CIGARETTES, INC. (dba WHOLESALE VAPOR) a New York corporation; LA VAPOR, INC. a California corporation; MADVAPES HOLDINGS, LLC a North Carolina limited liability company; SHENZHEN IVPS TECHNOLOGY CO., LTD (fka SHENZHEN SMOK TECHNOLOGY CO., LTD.) a Chinese corporation; VAPETRIK, LLC (dba RIP TRIPPER) a North Carolina limited liability company; LAN AND MIKE INTERNATIONAL TRADING, INC. (dba VAPORDNA) a California corporation; | Case: 2:17-cv-02390-DSF-SK<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **Federal Trademark Infringement**<br><br>2. **False Designation of Origin 15 U.S.C.**<br><br>3. **Common Law Trademark Infringement**<br><br>4. **California Statutory Unfair Competition**<br><br>5. **California Common Law Unfair Competition**<br><br>6. **Breach of Contract**<br><br>7. **Contributory Trademark Infringement**<br><br>8. **Breach of the Implied Covenant of Good Faith and Fair Dealing**<br><br>9. **Intentional Interference with Contractual Relations**<br><br>**DEMAND FOR JURY TRIAL** |

VAPOR AUTHORITY, INC.
a California corporation;
VAPOR RANGE, INC.
a California corporation; and
VAPRO SUPPLY, LLC
a Texas limited liability company; and
E-CIG GALLERY WHOLESALE
AND DISTRIBUTION, INC.
A California corporation; and
DOES 1 through 10, inclusive,

      Defendants.

Plaintiff, Mike Sarieddine ("Sarieddine" or "Plaintiff") by and through its undersigned counsel, states as follows for his amended complaint against Defendants Shenzhen IVPS Technology Co., Ltd ("IVPS") and Shenzhen Smok Technology Co. Ltd. ("Smok") (collectively, the "Smok Defendants") and D&A Distribution, LLC, Electronic Cigarettes, Inc., LA Vapor, Inc., MadVapes Holdings, LLC, , Vapetrik, LLC (dba Rip Trippers), Lan & Mike International Trading, Inc. (dba VaporDNA), Vapor Authority, Inc., Vapor Range, Inc., Vapro Supply, LLC., and E-Cig Gallery Wholesale Distribution, Inc. (collectively, the "Distributor Defendants", and all Defendants, together with Does 1-10, are collectively referred to as the "Defendants"), and alleges as follows:

## I. INTRODUCTION

1.   This action arises out of Defendants' intentional and willful decisions to ignore Sarieddine's federal and common law trademark rights in its Alien Vape e-cigarette products, Defendants' unfair competition in violation of the Lanham Act, and Smok's intentional and willful breach of a signed settlement agreement between Smok and Sarieddine.

2.   Since 2008, Plaintiff has manufactured and sold high quality electronic cigarette products to consumers under its federally registered ALIEN VAPE® trademarks.

3.   In 2016, the Smok Defendants began to market and sell e-liquid vaporizer products under the infringing brand name "Alien Kit."

4.   In August 2016, Sarieddine notified the Smok Defendants of their infringement. In lieu of filing a lawsuit, Sarieddine entered into a binding settlement agreement with the Smok Defendants in October 2016 (the "Settlement Agreement") (attached hereto as **Exhibit 1**). Under the Settlement Agreement, Sarieddine agreed not to sue the Smok Defendants for trademark infringement as long as the Smok Defendants adhered to the Settlement Agreement's requirements regarding the use of Sarieddine's federally registered ALIEN VAPE® marks.

5.   Under clause 3 of the Settlement Agreement, Sarieddine gave Smok a license for Sarieddine's federally registered ALIEN VAPE® marks for the limited purpose of advertising and selling Sarieddine's "Alien Vape"-branded e-liquid product.  Clause 3 set forth requirements that Smok had to follow when advertising and selling Sarieddine's Alien Vape branded e-liquid product. Sarieddine retained control of all advertisements and promotions of his Alien Vape branded e-liquid product.

6.   Under clause 4 of the Settlement Agreement, Sarieddine gave Smok a license to use the "Alien Kit" brand name on Smok's existing vaporizer products only.  The license was conditioned on Smok's compliance with its obligations under the Settlement Agreement.  The Settlement Agreement prohibited Smok from advertising or selling any new products using the word "Alien" without Sarieddine's prior written consent.

7.   In January 2017, in direct violation of the Settlement Agreement, Smok began to market and sell a new e-liquid vaporizer product under the name "Alien Baby" and failed to meet any of its other obligations in the signed Settlement Agreement.

8.   As soon as he discovered this infringement of his Alien Vape mark, Sarieddine repeatedly notified Smok of the infringement and breach of their

Settlement Agreement, both informally and through his attorney.

9.   After repeated appeals for compliance and threats of legal action, Smok finally changed the name of their Alien Baby product to "AL85".

10.   However, Smok continues to breach other provisions of the Settlement Agreement.  These breaches include: (i) failing to adhere to the advertising requirements set forth in clauses 3.1.2 through 3.1.7 of the Settlement Agreement, (ii) failing to resell and distribute Plaintiff's Alien Vape e-liquid in accordance with clauses 3.1.9 and 3.1.10; (iii) introducing new "Alien" branded e-cigarette products in violation of clause 3.2.3; (iv) applying for registration of trademark(s) that include the term "ALIEN," or other confusingly similar terms, in violation of clause 3.2.2; (v) continuing to advertise and sell products under the "Alien Kit" brand, even though Plaintiff has terminated Smok's license to use this mark, in violation of clause 3.3; and (vi) challenging the validity and enforceability of Sarieddine's Alien Vape marks, including by filing a counterclaim in this case to cancel the Alien Vape marks, in violation of clause 8; and (vii) encouraging and assisting third parties, including the Distributor Defendants, to contest the validity and enforceability of these trademarks, in violation of clause 8.

11.   Despite Sarieddine's federal and common law trademark rights and Smok changing the name of the product, the Distributor Defendants continue to advertise and sell the Smok AL85 vaporizer product under the infringing name "Alien Baby".  The Distributor Defendants are also infringing Sarieddine's Alien Vape marks by continuing to advertise and sell products under the "Alien Kit" brand name and other confusingly similar names.

12.   Accordingly, due to the Defendants' collective blatant and willful infringement, Sarieddine has no choice but to file this lawsuit seeking damages that it has suffered as a result of the Defendants' unfair competition, trademark infringement, and breach of contract.

## II.   JURISDICTION AND VENUE

13.  This Court has subject matter jurisdiction over Sarieddine's Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1367, and 1338(a).

14.  This Court has supplemental jurisdiction over Sarieddine's pendent state law claims pursuant to 28 U.S.C. § 1367 in that the state law claims are integrally interrelated with Sarieddine's federal claims and arise from a common nucleus of operative facts such that the administration of Sarieddine's state law claims with its federal claims furthers the interest of judicial economy.

15.  This Court has personal jurisdiction over the Smok Defendants because they do substantial business and sales in this District, and advertise, distribute, offer for sale, and sell the infringing products in this District. The Smok Defendants have purposefully availed themselves and directed their business at opportunities in this District. The Smok Defendants have committed tortious acts in this District against Plaintiff, whose principal place of business is in this District. Additionally, Defendant Shenzhen Smok Technology Co. Ltd. signed a settlement agreement with Plaintiff, which includes a forum selection clause naming California's state and federal courts as the sole and exclusive forum for resolution of disputes over the Settlement Agreement.

16.  This Court has personal jurisdiction over LA Vapor, Inc., Lan & Mike International Trading, Inc. (dba VaporDNA), Vapor Authority, Inc., Vapor Range, Inc., and E-Cig Gallery Wholesale and Distribution, Inc. (the "California Defendants") because the California Defendants are located in this District, do substantial business and sales in this District, and advertise, distribute, offer for sale, and sell the infringing products in this District. The California Defendants have purposefully availed themselves and directed their business at the opportunities of this District. The California Defendants have committed tortious acts in this District against Plaintiff, whose principle place of business is located in this District.

17.  This Court has personal jurisdiction over D&A Distribution, LLC, Electronic Cigarettes, Inc., MadVapes Holdings, LLC, Vapetrik, LLC (dba Rip Trippers), and Vapro Supply, LLC (the "Out-of-state Defendants") because the Out-of-state Defendants do substantial business and sales in this District and advertise, distribute, offer for sale, and sell the infringing products in this District. The Out-of-state Defendants have purposefully availed themselves and directed their business at the opportunities of this District. The Out-of-state Defendants have committed tortious acts in this District against Plaintiff, whose principle place of business is located in this District.

18.  Venue is proper in this District under 28 U.S.C. § 1391.

### III.    PARTIES

19.  Plaintiff Mike Sarieddine is an individual residing in the county of Los Angeles, California.

20.  Upon information and belief, Defendant DNA Distribution, LLC is a Georgia limited liability company with an address of 202 Bourne Blvd., Ste 180, Savannah, GA 31408.

21.  Upon information and belief, Defendant Electronic Cigarettes, Inc. is a New York corporation with an address of 279 Front St., Binghamton, NY 13905.

22.  Upon information and belief, Defendant LA Vapor Inc. is a California corporation with an address of 1305 John Reed Court, City of Industry, CA 91745.

23.  Upon information and belief, Defendant Madvapes Holdings, Inc. is a North Carolina corporation with an address of 130 Oak Park Drive, Ste A, Mooresville, NC 28117.

24.  Upon information and belief, Defendant Shenzhen IVPS Technology Co. Ltd. is a Chinese corporation with an address of 3rd Floor, No. 15, Kejibei 2nd Road, Nanshan District, Shenzhen, China

25.  Upon information and belief, Defendant Shenzhen Smok Technology Co. Ltd. is a Chinese corporation with an address of 3rd Floor, No. 15, Kejibei 2nd

Road, Nanshan District, Shenzhen, China.

26. Upon information and belief, Defendant Vapetrik, LLC is a North Carolina limited liability company with an address of 5448 Apex Peakway #147, Apex, NC 27502-3924.

27. Upon information and belief, Defendant Lan & Mike International Trading, Inc. (dba VaporDNA) is a California corporation with an address of 20435 Gramercy Place, Ste 101, Torrance, CA 90501.

28. Upon information and belief, Defendant Vapor Authority, Inc. is a California corporation with an address of 9187 Clairemont Mesa Blvd., Ste 596, San Diego, CA 92122.

29. Upon information and belief, Defendant Vapor Range, Inc. is a California corporation with an address of 15210 S. Western Ave., Gardena, CA 90249.

30. Upon information and belief, Defendant Vapro Supply, LLC is a Texas limited liability company with an address of 4150 Freidrich Lane, Ste G, Austin, TX 78744-1052.

31. Upon information and belief, Defendant E-Cig Gallery Wholesale and Distribution, Inc. is a California corporation with an address of 9273 Research Drive, Irvine, CA 92618

32. Plaintiff is ignorant of the true names and capacities of the defendants sued as Does 1 to 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

## IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF
### Plaintiff's Successful Alien Vape® Brand and Trademarks

33. Since 2008, when Plaintiff first began selling high quality e-cigarette products in California, and later in other states, Plaintiff has invested tremendous time and resources into marketing and promoting e-liquids, vaporizers and related

e-cigarette products under the trademark ALIEN VAPE®.

34. Plaintiff advertises its goods on its website at www.alienvape.com, among other forms of advertising and promotion.

35. The ALIEN VAPE® Marks are inherently distinctive, and have developed widespread brand recognition among consumers in California and in many other states as the source of high-quality e-liquid products.

36. As a result of Plaintiff's high-quality products, extensive advertising and promotion of the brand, and continuous and widespread use in California and other states, the ALIEN VAPE® Marks are extremely strong, distinctive, and have acquired extensive and valuable goodwill with consumers as an identifier of superior quality e-liquid products.

37. Plaintiff owns two United States federal trademark registrations for the ALIEN VAPE® Marks:

- U.S. Trademark Registration No. 4997336 for the mark ALIEN VAPE® for "Electronic cigarette liquid (e-liquid) comprised of flavorings in liquid form used to refill electronic cigarette cartridges; Electronic cigarette liquid (e-liquid) comprised of propylene glycol; Electronic cigarette liquid (e-liquid) comprised of vegetable glycerin; Electronic cigarettes; Oral vaporizers for smokers" in International Class 34; and

- U.S. Trademark Registration No 4517249 for the mark ALIEN VAPE. VAPE JUST GOT REAL!® (and "alien head" design) for "Electronic cigarettes vaporizers for alternative smoking" in International Class 34 (collectively, the "ALIEN VAPE® Registrations")

38. The ALIEN VAPE® Registrations are prima facie evidence that the ALIEN VAPE® Marks are valid, and that Plaintiff is entitled to the exclusive use of the marks in commerce throughout the United States for the goods listed in the registrations.

39. Plaintiff also has extensive common law rights in the ALIEN VAPE®

Marks due to his continuous use of the marks in commerce in California and in other U.S. states since 2008.

40. The ALIEN VAPE® Marks have become well-known with Plaintiff's customers, and have developed substantial goodwill and association in the mind of the consumer, due to Plaintiff's extensive marketing, promotion, and use of the ALIEN VAPE® Marks. On the basis of the inherent distinctiveness of the ALIEN VAPE®, the public differentiates Plaintiff's products from others on the market.

**Smok's Infringement of Plaintiff's Trademarks and Settlement Agreement**

41. Sometime in 2016, the Smok Defendants began selling an e-cigarette device kit using the brand name "Alien Kit," which is a highly similar trademark to Plaintiff's ALIEN VAPE® Marks.

42. Around August 2016, Plaintiff discovered that the Smok Defendants were selling the Alien Kit products.

43. Plaintiff brought the infringement to the attention of the Smok Defendants and discussed the issue with Smok's Sales Manager, Elaine Tang, over the phone. Plaintiff and Smok then entered into settlement negotiations over the next two months.

44. In exchange for Plaintiff's license to continue using the "Alien" name on its existing Alien Kit products, Smok signed a Settlement Agreement with Plaintiff in which Smok agreed, among other things, to:

- Respect and never challenge Plaintiff's Alien trademarks;
- Spend a minimum of $15,000 per month for 18 months purchasing Plaintiff's Alien Vape-branded e-liquids;
- Advertise Plaintiff's Alien Vape-branded e-liquid products on the front page of Smok's website, online stores, on Smok's social media accounts, and through Smok's marketing emails to customers;
- Never to adopt any new trademarks anywhere in the world that include the term "Alien" or any confusingly-similar term, or to use the term

9

"Alien" in connection with any new products, aside from their use of the word in their existing "Alien Kit" product;

- To pay attorneys' fees to Plaintiff if is the prevailing party for any litigation that relates to the Settlement Agreement.

45.  Over the next few months, Plaintiff was forced to contact multiple Smok employees on numerous occasions, requesting that Smok simply comply with the terms of the Settlement Agreement. These requests included numerous pleas for Smok personnel to:

- Place the initial monthly order of Alien Vape e-liquids agreed upon in the settlement;
- Place subsequent monthly orders of Alien Vape e-liquids or pay the substitute amounts agreed upon in the settlement;
- To display Plaintiff's banner advertisement on the front page on the Smok website www.smoktech.com;
- To send the agreed-upon email marketing messages to Smok's customer mailing list;
- To share Plaintiff's images to Smok's social media followers.

46.  The Settlement Agreement also contains a provision (Section 7.1) wherein if Smok fails to meet the minimum required purchase for two consecutive months, Smok would pay Plaintiff the full value of the monthly purchase over the 18-month term within 30 days. The monetary value of this provision, $15,000 over 17 months, is a total of USD $255,000.

47.  Additionally, Section 7.1 also provides that if Smok breaches the terms of the Agreement dealing with Smok's advertisement of Plaintiff's products, Smok agreed to pay Plaintiff $5,000 per month in which they failed to satisfy those requirements. Smok failed to uphold the terms of the agreement in every month since signing. Therefore, the monetary value of $5,000 per month over 18 months is a total of USD $90,000.

48. Smok personnel have continually requested adjustments to the already-signed contract, and demanded that Plaintiff pay for expenses related to sending emails to Smok's mailing list and other concessions that were not contemplated in the Settlement Agreement.

49. To date, only a single monthly payment of $15,000 has been made to Plaintiff (in November 2016).

50. It has been over four months since Smok's last payment, triggering the clause for Smok to pay Plaintiff out $255,000 for the remaining 17 months.

51. Together, with the $90,000 Smok owes Plaintiff for its failure to advertise and promote pursuant to the Settlement Agreement, Smok owes Plaintiff $345,000 for breach of those two clauses alone.

52. Additionally, in early January 2017, Plaintiff became aware that Smok planned to launch a new e-cigarette product, the Alien Baby, a clear violation of Section 3.2 of the Settlement Agreement.

53. Plaintiff sent multiple emails to Smok personnel pleading with them not to advertise or release this infringing new product that would also clearly breach the Settlement Agreement.

54. On January 5, 2017, Plaintiff and Smok discussed the possible terms of a partnership regarding Smok's use of the Alien Baby name over WeChat and Skype.

55. While those negotiations were ongoing and despite Plaintiff's pleas, the Smok Defendants moved forward with the advertisement of the upcoming "Alien Baby" product on their website and on social media.

56. Throughout early January 2017, Plaintiff continued to alert Smok personnel that the infringing Alien Baby name was on their website and social media. Smok personnel eventually responded, claiming that they had removed the infringing images, and renamed the Alien Baby product to "AL85".

57. Despite purportedly having renamed the "Alien Baby" product to

11

"AL85", Smok continues to use the infringing "Alien Baby" name.

58. At least as late as January 4, 2017, the text of the URL for the AL85 page and the meta-tag description of the AL85 product page on Smok's website contains the infringing "Alien Baby" name. This is shown from the printout of the AL85 product page below:



59. On January 5, 2017, Smok sent a marketing email to customers announcing their new product, using the infringing "Alien Baby" name:



# LOVE LIKE THE BEAST

Alien Baby Kit, consists of AL85 mod and TFV8 Baby tank features with delicate design, smooth streamline and integrated functional buttons. You would enjoy thoughtful experience and innovative d esign from SMOK when its 85W output power combines with Cloud Beast TFV8 Baby tank. Vaping, just enjoy it.

60.  Additionally, an Instagram post made on or around March 8, 2017 on Smok's official smok_tech account contains the infringing name, advertising a sweepstakes giveaway featuring the AL85, but referring to the device as the "Alien

Baby Kit":



61.  Also on or around March 9, 2016, the official Smok Instagram Account profile contained a link to an e-cigarette online discussion forum thread that clearly used the infringing "Alien Baby" name in the URL, in connection with a giveaway of the AL85 e-cigarette devices. See screenshot below:



## smok_tech  Follow

**1,766** posts     **113k** followers     **258** following

**SMOK TECHNOLOGY** Customer Service: support@smoktech.com Promotion: marketing@smoktech.com Wholesale: manager@smoktech.com | Newest: 100 AL85 kit & 100 TFV12 for you **www.e-cigarette-forum.com/forum/threads/winning-is-back-again-massive-8000-of-smok-alien-baby-kits-up-for-grabs.792047**





62. On April 5, 2017, Smok circulated on its Instagram Page another marketing material push identifying for its "Alien Baby AL85".

63. On April 16, Smok shared another promotional advertisement referring to its AL85 vaporizer as the "SMOK ALIEN MINI AL85 KIT".

64. On April 23, Smok again called their new vaporizer the "Alien 85".

65. On May 1, 2017, Smok posted to its Instagram Page the AL85 and used the #alien hashtag.

66. On May 4, 2017, Smok posted an image of their AL85. One commenter asked: "What is that called". There were two immediate responses from separate commenters: "Alien mini" and "The baby Alien AL85".

67. On May 9, 2017, Smok posted yet another promotional photograph on its official Instagram account of its AL85 product and used the #alien hashtag.

68. Since Smok unlawfully released its Alien Baby vaporizer, Plaintiff has received dozens of emails from confused, misdirected customers asking about Smok's infringing Alien vaporizers.

69. These uses of the "Alien Baby" name constitute not only a blatant infringement of Plaintiff's registered ALIEN VAPE® Marks, but also a willful breach of the Settlement Agreement signed by Smoke just months before.

70. Smok also willfully breached the Settlement Agreement by refusing to adhere to the Settlement Agreement's requirements for advertising and selling Plaintiff's Alien Vape-branded e-liquid.  On February 6, 2017, Smok informed Plaintiff that Smok would no longer be allowed to sell e-liquid products, due to a notice from the "Industry and Trade Commerce Bureau". However, Section 7.1 of the Settlement Agreement explicitly provides that if Smoke does not purchase and advertise Plaintiff's e-liquid products, it will pay Plaintiff a total of $20,000 per month. Furthermore, the contract contains no Force Majeure or other similar clauses excusing Smok's performance.

71. Due to Smok's material breaches, Plaintiff terminated the Distribution

Term in January 2017 pursuant to Section 6.1 of the Contract. Smok's continued use of the term "Alien" on its e-cigarette products, in violation of Settlement Agreement's provisions restricting such use, constitutes willful infringement of Sarieddine's federally registered trademarks.

72. Since the commencement of this case, Smok has continued to breach the Settlement Agreement.  On April 13, 2017, about two weeks after Plaintiff filed this action, Smok filed with the USPTO a brand-new trademark application for "SMOK Alien Kit" for electric cigarettes. Smok also applied for other "ALIEN" trademark registrations in countries outside the United States, including filing trademark applications in China for "Alien Mod" and "Alien Kit."  Smok's filing of these trademark applications violates Section 3.2.2 of the Settlement Agreement, which prohibits Smok from applying for registration anywhere in the world of any trademark that includes the term "Alien," or any confusingly similar term.

73. On May 31, 2017, Smok sent a letter to Plaintiff, announcing that it was terminating the Settlement Agreement in its entirety.  However, pursuant to Section 6 of the Settlement Agreement, only the Distribution Term can be terminated.  Section 6 expressly states that the rest of the Settlement Agreement remains in effect following the expiration of the Distribution Term.  By announcing that Smok would no longer follow the Settlement Agreement, Smok's letter of May 31, 2017 is a breach of Section 6.

74. Smok has also contested the validity and enforceability of Plaintiff's Alien Vape Marks, including by filing a counterclaim in this action to cancel Plaintiff's Alien Vape Marks.  In addition, upon information and belief, Smok also encouraged and assisted third parties, including the Distributor Defendants, in contesting the validity and enforceability of Plaintiff's Alien Vape Marks.  This conduct constitutes a clear breach of clause 8 of the Settlement Agreement, in which Smok had agreed not to challenge the validity or enforceability of the Alien Vape Marks, or support, aid, or assist any third party in contesting the validity or

enforceability of these marks.

## **Infringement by Distributor Defendants**

75.  On March 9, Smok informed Plaintiff that they had notified retailers that Smok had ceased usage of the "Alien Baby" name in connection with the AL85 product.

76.  Despite this, numerous e-cigarette retailers and reviewers continue to refer to the AL85 device as the "Alien Baby" or "Baby Alien", a clear infringement of Plaintiff's trademark rights to "Alien" for vaporizers and e-cigarette products. Screenshots of representative examples of this infringement on the Distributor Defendants' websites and marketing emails are shown below:



source: D&A Distribution, LLC (dba Strictly E-Cig)



source: Electronic Cigarettes, Inc. (dba Wholesale Vapor)




source: LA Vapor, Inc.



source: MadVapes Holdings, LLC



source: Lan & Mike International Trading, Inc. (dba VaporDNA)

1

2

3

4

5

6

7

8

9

10

11

12

13



source: Vapor Authority, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26



source: Vapor Range, Inc.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



source: Vapro Supply, LLC

21
22
23
24
25
26
27
28

source: E-Cig Gallery Wholesale and Distribution, Inc.

77.  Defendant Vapetrik, LLC (dba Rip Trippers) operates a YouTube channel in which they review e-cigarette products.

78.  The Rip Trippers YouTube channel contains a video published February 3, 2017, named "The SMOK AL85 Quick Glance! Its The Baby Alien Starter Kit!", in which the AL85 kit from Smok is reviewed (the "Video")[1].

79.  In the description of the Video, there are links to www.bevapehappy.com and www.vapordna.com to purchase. The links, https://www.bevapehappy.com/?rfsn=167690.4700b and http://www.vapordna.com/?Click=106881 are "affiliate" links that attribute sales of the AL85 product to Vapetrik, LLC. Vapetrik, LLC then receives a commission for each sale of the AL85 product. The code following the main URLs in each of these links is Vapetrik, LLC's affiliate code, used to track sales made when a user visits the site through that link.

80.  The Distributor Defendants have also infringed Plaintiff's trademark

---

[1] https://www.youtube.com/watch?v=7CP9SBuhohQ.

23

rights to "Alien" for e-cigarette products by continuing to sell, distribute and advertise Smok's products under the "Alien Kit" brand name and other confusingly similar names.  Screenshots of representative examples of this infringement on the Distributor Defendants' websites and marketing emails are shown below:



source: D&A Distribution, LLC (dba Strictly E-Cig)

**New Smok Alien Colors - G150 and GX350 Restock - Smok Coil Restock - Tpriv Restock**
1 message

Wholesale Vapor <info@wholesalevapor.com>                     Tue, Jul 18, 2017 at 1:14 PM
Reply-To: Wholesale Vapor <info@wholesalevapor.com>

View this email in your browser




source: Electronic Cigarettes, Inc. (dba Wholesale Vapor)







DEAL OF THE DAY

https://mail.google.com/mail/u/3/?ui=2&ik=70c3ba1e32&jsver=EaiL6uzdi9M.en.&view=pt&as_from=lavaporwholesale%40gmail.com&as_has=alien&...   7/35

9/27/2017   Gmail - Sigelei J150 Plus | Swallowtail Paint & Resin | KAOS Spectrum | Alien Kit Green/Gold | SLYDR Coils | IPVD4 & TFV8 Baby Tank Rainb...

TEXT "LAVAPOR" TO 48421 FOR OFFERS AND PROMOTIONS!

source: LA Vapor, Inc.



source: Lan & Mike International Trading, Inc. (dba VaporDNA)



source: Vapor Authority, Inc.



source: Vapor Range, Inc.

27



**SmokTech New Colors for Alien 220 Kit**

source: Vapro Supply, LLC



source: E-Cig Gallery Wholesale and Distribution, Inc.

### Consumer Confusion

81. Evidence of actual consumer confusion abounds, as Plaintiff has received numerous emails from Smok's customers asking about the Alien Kit and Alien Baby devices, and about vaporizers in general, which Plaintiff does not currently sell (but plans to start selling again soon).

82. Examples of this confusion from customer emails include (emphasis added, and all typos and errors left in their original format):

- November 1, 2016 – "I bought **one of your vapes, 220 Watt gold and black** at eb vape attic in Philipsburg PA. I went to twist the top piece off (the part containing the juice) and the part that connects the box and the top piece twisted and came with it and pulled the wire. I am unsure why this happened and so is the owner of the shop. I paid near to $300 and didn't have it for three months. **They told me to contact you about this problem** to see if I could get the problem fixed."

29

(Demonstrating confusion both by the consumer and the retailer as to the source of the "Alien"-branded e-cigarette product).

- Dec 28, 2016 – "I have only had my Allen [sic] mod for 1 day and it is already tasting metallic . .why is this?? The coil can't be burn pur already!!!"

- Jan 20, 2017 – "I bought the **Smok Alien 220W** tc from you but the only thing is the screen is very very dim but it's at 100% contrast and you can only see the screen if your in the dark with the lights off. I love my Smok Alien but it makes it difficult to see what anything on it is. So, is there anyway I could make it a lot brighter to look what it's supposed to look like?!"

- Feb 7, 2017 – "Hello, I have a complaint. I purchased my vape on Black Friday. I love this vape but it has a defect. Something is wrong with the charging portal. Can someone please assist me with this matter? I feel it cost too much to have this issue. Thank you"

- Feb 15, 2017 – "I just bought my vape used, and I am trying to charge it. It says its charging, and I left it plugged in for 4 hours, but it still says low battery. Is this a battery issue or a mod issue?"

- Feb 17, 2017 – "I bought an alien mod a few weeks ago and I have never dropped my mod ever and It kept reading ohms too low and I opened up the top part with the proper screw and there is a wire snapped I have the warranty card could I get a new one? Thanks."

- Feb 17, 2017 – "I would like to ask if it's possible **to send smok alien vape** to a country that has Vape's as an prohibited item in anyway ??"

- Feb 20, 2017 – "Hi I bought an alien 220w tc. I love the product except the tank leaks all the time it's installed properly and it closes all the way. I'm very unhappy with this I bought it less then a month ago I still have the receipt I don't over fill the tank of anything. [...] But I don't want to spend more money and none of them match my mod, I hope there is something

you can do because of know **I would not recommend your product** nor will I buy another tank to have the same exact problem!"

(Demonstrating the harm that the customer association with Smok's infringement is causing to Plaintiff's brand).

- Feb 21, 2017 – "Hi I brought one of your 220 w alien vape I looking to get a tank and coil that goes up to the 220w are able to point me in the right direction please"

- Feb 25, 2017 – "Hello, So I have the **alien smok kit** with the baby beast. My baby best drip tip broke and would like to get a new tip. Is there anyway I can buy a new tip that is the exact same as the one that came with it?"

- Feb 28, 2017 – "Hi names Phil and I'm a fan of the **smok alien 220w** tc. vape mod and the baby beast tank I been looking for a great e-juice to vape that's equal in flavor and cloud production. I read a lot about the roswell and area 51 juices on your website after I got an email about them I'm interested in trying these e-juices but unfortunately I'm outta state."

(Showing that Smok's usage of the infringing "Alien" mark is causing confusion as to the source of goods, since the Roswell and Area 51 e-juices mentioned in the email are from Plaintiff).

- March 8, 2017 – "Good afternoon! You spoke with one of our employees here at Crystal Vapor regarding Alien Vape E-liquids. I would like to inquire about the availability of any **Smok Alien hardware** that you also be selling. Thank you for your time and consideration. Hope to hear from you very soon! Crystal Vapor"

(Demonstrating retailer confusion between Plaintiff's and Smok's brands).

- March 15, 2017 – "I have had my set up for less than a month and the lights have stopped working. My screen is blank but it would still let me vape."

- March 19, 2017 – "My vape was hitting fine 1 second I put it down and 5 minutes later the screen is black and doesn't fire but can still be read by the

computer"

(Again, demonstrating confusion with Smok's infringing devices).

- March 21, 2017 – "I purchased an order of two juice bottles on the 7th of march, I was wondering if you could let me know how much more time it will take for it to arrive. I've never ordering online with you before and I'm really just curious. I am quite happy with he Alien220W TC by the way, great product!"

- March 23, 2017– "The display on my Alien 220w mod stopped working. What could I have done? It's about 2 months old. I replaced the batteries with no luck. It still works, however. Thank you"

(Showing confusion between Plaintiff's and Smok's Alien brands).

83. To this day, the Smok Defendants and the Distributor Defendants continue to advertise and sell products using the infringing "Alien Baby" and "Alien Kit" trademarks.

84. The Smok Defendants and the Distributor Defendants must now answer for their infringing conduct, which will include an injunction barring all future sale or advertisement of the Alien Kit and the AL85 "Alien Baby" products, Plaintiff's actual damages, the disgorgement of 100% of Defendants' profits to Plaintiff, and enhanced damages for the Defendants' willful infringement.

**<u>Distributor Defendants' Intentional Interference with the Settlement Agreement between Plaintiff and Smok Defendants</u>**

85. The Distributor Defendants were aware of Settlement Agreement between Smok and Plaintiff.  Upon information and belief, the Distributor Defendants encouraged Smok to breach the Settlement Agreement with Plaintiff so that the Distributor Defendants would be free to sell and advertise e-cigarette products under brand names containing the term "Alien Baby."  Distributor

32

Defendants induced Smok to breach the Settlement Agreement by continuing to use the infringing name "Alien Baby" to promote Smok's vaporizer, even after Smok had notified Distributor Defendants that it had changed the name of this product to AL85.

86. Distributor Defendants' use of the term "Alien Baby" to promote Smok's vaporizer made Smok's continued performance under the Settlement Agreement very difficult, as Section 3.2.3 of the Settlement Agreement prohibited Smok from using the word "Alien" to promote any of its e-cigarette products without Plaintiff's prior written consent. Distributor Defendants' continued use of the term "Alien Baby" was willful and intended to disrupt, and did disrupt, the contractual relationship between Plaintiff and Smok.

87. The Distributor Defendants were also aware that the Settlement Agreement prohibited Smok from challenging Plaintiff's ALIEN VAPE® Marks. Distributor Defendants further interfered with Smok's performance under the Settlement Agreement by encouraging Smok to challenge the validity and enforceability of Plaintiff's ALIEN VAPE® Marks.  Since at least April 2017, Distributor Defendants have repeatedly demanded that Smok seek to invalidate Plaintiff's ALIEN VAPE® Marks and have communicated with Smok about strategies for doing so.

88. Distributor Defendants' communications with Smok about challenging the validity and enforceability of Plaintiff's ALIEN VAPE® Marks prompted Smok to file a trademark application in the United States for the mark "Smok Alien Kit" on April 13, 2017.

89. Those communications also knowingly prompted Smok to breach the Settlement Agreement and challenge the validity of Plaintiff's ALIEN VAPE® Marks by, among other things, filing a counterclaim for invalidity and cancellation of the ALIEN VAPE® Marks and working with other third parties such as Alien Visions E-Juice to challenge the validity and enforceability of the ALIEN VAPE®

33

Marks.

90. The foregoing intentional acts of interference by Distributor Defendants disrupted the contractual relationship between Plaintiff and Smok. Specifically, Distributor Defendants induced Smok to breach Section 3.2.3 of the Settlement Agreement by continuing to use the "Alien Baby" name to sell and promote Smok's Al85 vaporizer. Distributor Defendants also induced Smok to breach Section 3.2.1 of the Settlement Agreement by encouraging Smok to file the "Smok Alien Kit" trademark application and likewise induced Smok to breach Section 8, by encouraging Smok to challenge the validity and enforceability of Plaintiff's marks.

91. As a result of Distributor Defendants' intentional acts of interference and the resulting breaches of the Settlement Agreement, Plaintiff suffered damages, including loss of revenue that Plaintiff was entitled to receive under the Settlement Agreement, as well as loss of goodwill of Plaintiff's business and ALIEN VAPE® Marks resulting from the breach of the Settlement Agreement.

## FIRST CAUSE OF ACTION

### (Federal Trademark Infringement Under 15 U.S.C. § 1114)
### (Against all Defendants)

92. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

93. Plaintiff is the sole owner of the ALIEN VAPE® Marks, which are registered to Plaintiff on the Principal Register at the USPTO. These registrations constitute prima facie evidence that the ALIEN VAPE® Marks are valid; that they are owned by Plaintiff; and that Plaintiff has the exclusive right to use the ALIEN VAPE® Marks in commerce in connection with the goods specified in the ALIEN VAPE® Registrations.

94. Furthermore, Plaintiff has continuously used the ALIEN VAPE® Marks

in commerce since 2008. Meanwhile, on information and belief, the Defendants began their infringement of the ALIEN VAPE® Marks by using the ALIEN VAPE® Marks in commerce after the Plaintiff began using his marks. Therefore, Plaintiff clearly has priority of use of the ALIEN VAPE® Marks as against the Defendants. As such, for at least this additional reason, Plaintiff is the owner of the ALIEN VAPE® Marks, and has the exclusive right to use the marks in commerce.

95. The Defendants' infringement of the ALIEN VAPE® Marks, in the manner set forth above, supra, trades on the ALIEN VAPE® Marks and the goodwill associated therewith, and is likely to confuse and deceive the consuming public into believing that the Defendants are associated with ALIEN VAPE® and/or Plaintiff.

96. The actions of the Defendants complained of herein are likely to cause confusion, to cause mistake or to deceive others into erroneously believing that the Defendants' goods are authorized by, licensed by, sponsored by, endorsed by, or otherwise associated with ALIEN VAPE® and/or Plaintiff. The likelihood of confusion is particularly strong because, inter alia, (i) the ALIEN VAPE® Marks are strong due to Plaintiff's extensive use of the marks since 2008 and therefore carry a high degree of consumer recognition; (ii) Plaintiff's mark ALIEN VAPE® and the designations used by the Defendants, "Alien Baby" and "Alien Kit", are highly similar; and (iii) both the Defendants and Plaintiff use the marks in connection with identical or highly-related vaping products; (iv) the Defendants and Plaintiff share the same marketing and trade channels; and (v) on information and belief, concurrent use of the marks by the Defendants and Plaintiff has already resulted in actual confusion among consumers.

97. In view of the foregoing, and on information and belief, the acts and conduct of the Defendants complained of herein constitute willful and deliberate infringement of Plaintiff's ALIEN VAPE® Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. 1114.

98.  By reason of the foregoing, Plaintiff has been damaged and is being damaged by the Defendants' willful infringement of the ALIEN VAPE® Marks. Therefore, pursuant to 15 U.S.C. § 1117(a), Plaintiff is entitled to recover at least (i) the Defendants' profits gained from their infringement; (ii) Plaintiff's damages suffered due to the Defendants' infringement; and (iii) Plaintiff's costs in this action.

99.  Moreover, Plaintiff has been and will continue to be, irreparably injured by the continued infringing acts of the Defendants, until and unless such acts are enjoined. Plaintiff has no adequate remedy at law. Therefore, in addition to the foregoing, the Defendants should be preliminarily and permanently enjoined from their infringing acts under 15 U.S.C. § 1116.

## SECOND CAUSE OF ACTION

### (False Designation of Origin Under 15 U.S.C. § 1125(a))

### (Against all Defendants)

100.  Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

101.  The Defendants' use of the infringing "Alien Baby" and "Alien Kit" marks has resulted in and continues to result in confusion, mistake and deception among consumers as to the source of origin of Plaintiff and Smok's products.

102.  Through the Settlement Agreement between Plaintiff and Smok, and from numerous emails between Plaintiff and Smok expressly discussing their infringement, Smok was aware at least as early as August 2016 of Plaintiff's prior rights to the ALIEN VAPE® Marks.

103.  Through explicit notification by Smok and through Smok's revised advertising and marketing materials, the Distributor Defendants were aware as early as January 2017 that Smok was no longer referring to the AL85 by the infringing "Alien Baby" mark.

104.     By having actual and constructive knowledge of Plaintiff's rights and trademarks and continuing to use the infringing "Alien Baby" and "Alien Kit" marks, the Defendants have, without consent of Plaintiff, willfully violated 15 U.S.C. § 1125(a).

105.     The Defendants have done and are continuing to do so with the intent to unfairly compete against Plaintiff, to trade upon Plaintiff's reputation and goodwill by causing confusion and mistake among consumers and the public, and to deceive the public into believing that the e-cigarette products being sold by the Defendants are associated with, sponsored by, or approved by Plaintiff, when they are not.

106.     The Defendants' aforementioned acts and statements have caused damages to Plaintiff in an amount to be proven at trial.

107.     Plaintiff is also being irreparably injured. Such irreparable injury will continue unless the Defendants are permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### (California Statutory Unfair Competition, Cal. Bus. & Prof. Code § 17200)

### (Against all Defendants)

108.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

109.     By virtue of the acts complained of herein, the Defendants have intentionally caused a likelihood of confusion among consumers and the public and has unfairly competed with Plaintiff in violation of Cal. Bus. & Prof. Code § 17200, *et seq*.

110.     The Defendants' acts constitute unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged Plaintiff.

111.     As a direct and proximate result of the Defendants' acts, Plaintiff has

suffered and will suffer great harm in an amount to be determined at trial. Plaintiff has also been irreparably injured. Plaintiff will continue to be irreparably damaged unless Defendants are enjoined from further committing unfair and unlawful business practices against Plaintiff.

## FOURTH CAUSE OF ACTION

### (Common Law Trademark Infringement)

### (Against all Defendants)

112.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

113.    The Defendants have caused a likelihood of confusion among the purchasing public in this District and elsewhere, thereby infringing Plaintiff's common law trademark rights.

114.    Plaintiff is being irreparably injured. Such irreparable injury will continue unless the Defendants are permanently enjoined by this Court from further violations of Plaintiff's rights.

## FIFTH CAUSE OF ACTION

### (California Common Law Unfair Competition)

### (Against all Defendants)

115.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

116.    The Defendants have caused a likelihood of confusion among the purchasing public in this District and elsewhere, thereby infringing Plaintiff's trademark rights, in violation of the common law of the State of California.

117.    Plaintiff is being irreparably injured. Such irreparable injury will continue unless the Defendants are permanently enjoined by this Court from further violations of Plaintiff's rights.

## SIXTH CAUSE OF ACTION

### (Breach of Contract)

### (Against the Smok Defendants)

118.   Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

119.   Plaintiff and Smok entered into the Settlement Agreement on October 28, 2016, to settle matters related to Smok's infringement of the ALIEN VAPE® Marks.

120.   Plaintiff has fully performed or tendered all performances required by the Settlement Agreement.

121.   Smok has breached their obligations in clause 3.1.1 of the Settlement Agreement by failing to pay Plaintiff $15,000 per month for Plaintiff's e-liquid products.

122.   Smok has breached their obligations to Plaintiff in clauses 3.1.2 through 3.1.7 of the Settlement Agreement by failing to adhere to the advertising requirements set forth, including the placement of an ALIEN VAPE® banner ad on the first slide of the front page of the Smok website www.smoktech.com, regular social media postings.

123.   Smok has breached their obligations under clause 3.1.9 and 3.1.10 of the Settlement Agreement by failing to resell and distribute Plaintiff's Alien Vape e-liquid.

124.   Smok also breached the contract by introducing a second "Alien" branded e-cigarette product (the "Alien Baby"), in direct violation of clause 3.2.

125.   Smok also breached clause 3.2.2 of the Settlement Agreement by applying to register trademarks containing the term "Alien" for e-cigarette products, including filing trademark applications in the United States and in China for "Alien Kit" for electric cigarettes.

126.    Smok also breached clause 8 of the Settlement Agreement by challenging the validity and enforceability of Plaintiff's Alien Vape Marks, including by filing a counterclaim in this action to cancel Plaintiff's Alien Vape Marks.  In addition, Smok has breached clause 8 by supporting, aiding, and assisting third parties, including the Distributor Defendants, in contesting the validity and enforceability of Plaintiff's Alien Vape Marks.

127.    Smok's numerous breaches go to the heart of the Settlement Agreement and, accordingly, Plaintiff is entitled to terminate the contract, to collect the agreed-upon damages, and to recover any additional damages directly and proximately caused by Smok's breach, including interest.

128.    As a direct and proximate result of the Smoke Defendants' acts, Plaintiff has suffered and will suffer great harm in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Contributory Trademark Infringement)
### (Against the Smok Defendants)

129.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

130.    The Distributor Defendants are engaged in illegal trademark infringement of Plaintiff's ALIEN VAPE® Marks in that they each sell, offer for sale, promote, and advertise, infringing Alien Baby and Alien Kit e-cigarette products.

131.    The Smok Defendants have actual knowledge of the Distributor Defendants' illegal activities.

132.    The Smok Defendants have materially encouraged, enabled, contributed to, and induced the infringing conduct of the Distributor Defendants by providing, among other things, the infringing products to the Distributor Defendants and encouraged them to sell, market, and promote them.

133.     The Smok Defendants therefore bear contributory liability for the Distributor Defendants' trademark infringement of Plaintiff's ALIEN VAPE® Marks.

## EIGHTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)
### (Against the Smok Defendants)

134.     Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

135.     Plaintiff and Smok entered into the Settlement Agreement on October 28, 2016, to settle matters related to Smok's infringement of the ALIEN VAPE® Marks.  Every contract imposes the duty of good faith and fair dealing upon the parties in the enforcement of the contract.

136.     Smok has breached the implied covenant of good faith and fair dealing by refusing to use good-faith efforts to promote and sell Plaintiff's Alien Vape-branded e-liquid, as required by the Settlement Agreement.  Smok's willful refusal to promote and sell Plaintiff's Alien Vape-branded e-liquid has deprived Plaintiff of the benefits that Plaintiff was entitled to receive under the Settlement Agreement.

137.     Smok has also breached the implied covenant of good faith and fair dealing by sending its letter, dated May 31, 2017, announcing that it is terminating the Settlement Agreement.  The Settlement Agreement says that it cannot be terminated and that its provisions continue to remain in effect after the Distribution Term ends.  By its letter of May 31, 2017, Smok willfully refused to perform under the Settlement Agreement, even though Plaintiff performed its obligations under the agreement, and unfairly interfered with Plaintiff's right to receive the benefits of the contract.

138.     Smok has also breached the implied covenant of good faith and fair dealing by conspiring with Distributor Defendants to challenge the validity and

enforceability of Plaintiff's ALIEN VAPE® marks, including by filing a United States trademark application for the mark "Smok Alien Kit" on April 13, 2017, despite expressly agreeing not to engage in such conduct under the Settlement Agreement. By willfully engaging in the foregoing conduct, Smok has deprived Plaintiff of the benefits Plaintiff was entitled to receive under the Settlement Agreement.

139. Smok's breaches of the covenant of good faith and fair dealing have proximately and directly caused damages to Plaintiff.

## NINTH CAUSE OF ACTION

### (Intentional Interference with Contractual Relations)

### (Against the Distributor Defendants)

140. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

141. The Settlement Agreement created an enforceable contractual relationship between Plaintiff and Smok. The Distributor Defendants were aware of the Settlement Agreement between Plaintiff and Smok.

142. The Distributor Defendants' aforementioned intentional acts, including their continued use of the term "Alien Baby" to promote Smok's products and their encouragement and assistance with Smok's efforts to invalidate Plaintiff's "Alien Vape" marks, by, *inter alia*, filing a trademark application for "Smok Alien Kit," were designed to and did induce a disruption of Plaintiff's contractual relationship with Smok.

143. As a direct and proximate result of Distributor Defendants' conduct, Plaintiff has suffered irreparable harm to its business, goodwill and reputation, including monetary damages the amount of which will be proven at trial.

144. The acts of Distributor Defendants, as described above were and are willful, wanton, malicious and oppressive, and justify an award of punitive

damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a judgment against the Defendants and prays that this Court grants:

a. Permanent injunctive relief against all Defendants and their parents, subsidiaries, affiliated companies, and their respective officers, directors, employees, and agents from using the Alien trademarks, any marks likely to cause confusion with the Alien trademarks, and selling any of the Alien Baby/AL85 and Alien Kit vaporizer products;

b. An accounting of, and disgorgement of, any and all profits derived by the Defendants and all damages sustained by Plaintiff, trebled, by virtue of the Defendants' infringing and illegal acts, in an amount to be determined at trial;

c. Prejudgment interest, the costs of this action, witness fees, and Plaintiff's attorneys' fees, pursuant to the Settlement Agreement between Plaintiff and the Smok Defendants, 15 U.S.C. § 1117, 1118, and California Civil Code § 3288;

d. Punitive, enhanced, treble, and exemplary damages for the Defendants' acts of unfair competition and willful infringement;

e. The agreed-upon damages set forth in the Settlement Agreement between Plaintiff and the Smok Defendants;

f. That Plaintiff recover compensatory damages for Smok Defendant's breach of the Settlement Agreement, including incidental damages and consequential damages to Plaintiff's business;

g. That Plaintiff recover the costs of corrective advertising to remedy the harm from consumer confusion;

h. Compensatory and punitive damages for Smok Defendants' breach of the implied covenant of good faith and fair dealing;

43

i.  Compensatory and punitive damages for Distributor Defendants' intentional interference with the contractual relationship between Smok Defendants and Plaintiff;

j.  Other economic and consequential damages in an amount to be determined at trial;

k.  The destruction of all materials bearing infringements of Plaintiff's ALIEN VAPE® trademarks;

l.  That the Defendants be held jointly and severally liable;

m.  A judgment that the Defendants have unfairly competed with Plaintiff and violated the trademark laws of California and the United States; and

n.  Grant to Plaintiff such further relief as may be equitable and proper.

Respectfully submitted,

By:  _/s/ Stephen McArthur_
    Stephen Charles McArthur
    Valerie McConnell
    The McArthur Law Firm PC
    Attorneys for Plaintiff
    Mike Sarieddine
    400 Corporate Pointe, 3rd Floor
    Culver City, CA 90230
    (323) 639-4455

Dated:  January 3, 2018

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues in this lawsuit.

By:    */s/ Stephen McArthur*
Stephen Charles McArthur
Valerie McConnell
The McArthur Law Firm PC
Attorneys for Plaintiff
Mike Sarieddine
400 Corporate Pointe, 3rd Floor
Culver City, CA 90230
(323) 639-4455

Dated:  January 3, 2018