1  Stephen C. McArthur (SBN 277712)
   stephen@smcarthurlaw.com
2  Valerie McConnell (SBN 274159)
   valerie@smcarthurlaw.com
3  THE MCARTHUR LAW FIRM PC
4  400 Corporate Pointe, 3rd Floor
   Culver City, CA 90230
5  Telephone: (323) 639-4455

6  Attorneys for Plaintiff and
   Counterdefendant,
7  Mike Sarieddine

8  Matthew T. Furton (pro hac vice)          F. Phillip Hosp (SBN 265225)
   mfurton@lockelord.com                     phosp@lockelord.com
9  David T. Van Der Laan (pro hac vice)      LOCKE LORD LLP
   dave.vanderlaan@lockelord.com             300 S. Grand Avenue, Suite 2600
10 LOCKE LORD LLP                            Los Angeles, CA 90071
   111 South Wacker Drive Chicago, IL        Tel: 213-687-6787 / Fax: 213-
   60606                                     341-678
11
12 Attorneys for Defendant Shenzhen
   Technology Co., Ltd. f/k/a Shenzhen Smok
13 Technology Co., Ltd.

14              UNITED STATES DISTRICT COURT

15              CENTRAL DISTRICT OF CALIFORNIA

16

17 **MIKE SARIEDDINE,**                      **Case No. 2:17-cv-02390-DSF-SK**

18          **Plaintiff,**                   **Discovery Document: Referred to**
                                             **Magistrate Judge Steve Kim**
19       **v.**
                                             **JOINT STIPULATION**
20 **D&A DISTRIBUTION, LLC (dba**            **REGARDING PLAINTIFF'S**
   **STRICTLY E-CIG), et al.,**             **MOTION TO COMPEL**
21                                           **PRODUCTION OF**
          **Defendants.**                    **DOCUMENTS AND**
22                                           **RESPONSES TO PLAINTIFF'S**
   **SHENZHEN TECHNOLOGY CO.,**             **FIRST SET OF DOCUMENT**
23 **LTD. (fka SHENZHEN SMOK**              **REQUESTS AND**
   **TECHNOLOGY CO., LTD.),**              **INTERROGATORIES**
24
          **Counterclaimant,**              [Declarations filed concurrently
25                                           herewith]
         **v.**
26                                           **Hearing Date**: April 11, 2018
   **MIKE SARIEDDINE,**                     **Time**: 10:00 am
27                                           **Courtroom**: 23
          **Counterdefendant.**             **Magistrate**: Honorable Steve Kim
28                                           **Discovery Cut-off**: March 11,
                                             2019

**Pretrial conference**: July 15, 2019
**Trial**: August 13, 2019

# JOINT STIPULATION

This Joint Stipulation is submitted pursuant to Local Rule 37-2.1 in connection with Plaintiff Mike Sarieddine's ("Plaintiff") motion to compel Defendant and Counterclaimant Shenzhen IVPS Technology Co., Ltd. f/k/a Shenzhen Smok Technology Co., Ltd. ("Smok" or "Defendant") to produce documents and information in response to Plaintiff's First Set of Documents Requests and Interrogatories. In accordance with Local Rule 37-1, the parties met and conferred to resolve this dispute but were unable to do so. (Declaration of Valerie McConnell ("McConnell Decl."), ¶¶ 19-35.)

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

## I.   <u>PLAINTIFF'S INTRODUCTORY STATEMENT</u>

Smok has not produced the vast majority of documents and information sought by Plaintiff's document requests and interrogatories, even though Smok received these discovery requests six months ago. Virtually all of the few documents that Smok has produced were already in Plaintiff's possession or available from a public source. Smok has not produced any internal emails and very few company documents. The only financial information that Smok has produced regarding its infringement of Plaintiff's trademarks is limited to a single Excel spreadsheet created solely for this lawsuit, which is missing key data. Smok's responses to Plaintiff's interrogatories are similarly deficient.

In an effort to resolve this dispute, Plaintiff has sent *three* letters pursuant to Local Rule 37-1, asking Smok to produce the outstanding documents and information. McConnell Decl., ¶¶ 5; 13; 19. In response, Smok has asserted numerous unfounded objections that improperly limit the scope of Smok's obligation to search for and produce responsive documents and information. These improper objections include Smok's refusal to provide information regarding its AL85 or "Alien Baby" vaporizer—one of the key products at issue in this lawsuit—as well as its refusal to produce any data regarding the sales of its infringing products outside the United States.  Smok has also objected to providing basic information regarding its revenue, costs, and profits from selling its infringing products, which Plaintiff needs to calculate damages in this lawsuit.

In addition to its blanket refusal to produce relevant documents regarding its products and finances, Smok has unreasonably delayed in producing the few categories of documents that it has agreed to produce. Smok has given an internal deadline of June 29, 2018 to finish producing documents—which would give Smok almost a year to respond to Plaintiff's *first* set of discovery. Most recently, during the parties' meet and confer session on March 5, 2018, Smok revealed, for the first time, that certain documents that it had previously agreed to produce do not exist.

*Id.*, ¶ 22. Plaintiff has reason to believe that these documents *do* exist and that their absence from Smok's production is either due to Smok's failure to search for these documents or its decision to improperly withhold these documents from production.

Plaintiff therefore seeks an order compelling Smok to produce all the outstanding documents and information sought by Plaintiff's discovery requests. Furthermore, because Smok has already had six months to respond to Plaintiff's discovery, Plaintiff asks that the Court order Smok to produce the missing documents and information within two weeks of the hearing on this motion.

This is an action for federal trademark infringement, breach of contract, and related state law claims brought by Plaintiff against Smok and ten of its U.S. distributors (the "Distributor Defendants"). Plaintiff has sold high-quality e-cigarette products under the "Alien Vape" brand name since 2008 and is the owner of two federally registered trademarks for "Alien Vape" (the "ALIEN VAPE® marks"). Smok, a manufacturer of e-cigarette products, infringed Plaintiff's ALIEN VAPE® marks by selling an e-cigarette vaporizer under the confusingly similar name, "Alien Kit." After Plaintiff notified Smok that its "Alien Kit" vaporizer infringed his ALIEN VAPE® marks, the parties entered into a settlement agreement, which restricted Smok's ability to use the "Alien" name. However, Smok subsequently breached the settlement agreement by, *inter alia*, releasing a new "AL85" vaporizer, which it explicitly advertised as the "Alien Baby."

On September 15, 2017, Plaintiff served its first set of interrogatories and document requests on Smok. McConnell Decl., ¶ 3. These discovery requests seek information that is essential to Plaintiff's trademark infringement, breach of contract, and related state law claims, including: (1) Smok's sales and marketing of products under the infringing "Alien Kit Marks;" (2) Smok's revenue, costs, and profits from selling its infringing products, which Plaintiff needs to estimate damages pursuant to 15 U.S.C. § 1117(a) of the Lanham Act; (3) documents regarding Smok's decision to adopt and use the "Alien Kit Marks;" and (4)

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

documents regarding Smok's performance (and lack thereof) under the settlement agreement, including Smok's efforts to challenge Plaintiff's trademarks in violation of the settlement agreement.

Plaintiff has, in good faith, given Smok several lengthy extensions for responding to its discovery. Plaintiff first extended Smok's deadline for responding to its discovery requests to November 22, 2017. McConnell Decl., ¶ 4.  After Smok failed to meet that deadline, Plaintiff extended Smok's deadline until February 2, 2018.  *Id*., ¶ 15. Smok has already had six months to respond to Plaintiff's discovery requests. Smok is also flatly refusing to answer the *majority* of Plaintiff's discovery requests due to myriad improper objections, including refusing to provide information concerning the worldwide sales of its infringing products and any information regarding its AL85 / "Alien Baby" vaporizer.

Plaintiff cannot accept Smok's request for an extension through June, nor can Plaintiff accept Smok's meritless objections to providing information regarding its worldwide sales or its AL85 / "Alien Baby" vaporizer.  Moreover, Plaintiff cannot continue to wait for Smok to produce documents. Plaintiff cannot move forward with depositions or other discovery until it has basic information regarding the sales of Smok's infringing products, which Smok has yet to produce. Plaintiff does not have even *one* internal email that it could use in a deposition, nor does it have any accounting or sales documents reflecting Smok's revenue or profits.

By contrast, Smok has had the benefit of Plaintiff's discovery for months. Plaintiff produced responsive documents, as well as verified interrogatory responses, to Smok on November 22, 2017. McConnell Decl., ¶ 5.  Smok has had ample time to review these materials and is now proceeding to subpoena third-party witnesses. This information asymmetry is unfairly prejudicial to Plaintiff.  Plaintiff therefore seeks an Order compelling Smok to withdraw its improper objections and produce the documents and information sought by its interrogatories and document requests within two weeks of the hearing on this motion.

## II.   SMOK'S INTRODUCTORY STATEMENT

In the interest of brevity, Smok directs the Court's attention to Smok's Ominbus Position Regarding Document Requests (Section III.B. below) and Smok's Omnibus Position Regarding Interrogatories (Section III.E. below).

## III.   ARGUMENTS

### A. Plaintiff's Omnibus Position Regarding Document Requests

Smok has produced only a fraction of the documents sought by Plaintiff's Requests for Production ("RFPs").  Smok's document productions have been almost entirely comprised of documents created by Smok's attorneys to assist it in proving its own defenses in this action and are almost exclusively screenshots of publicly available websites, communications with Plaintiff, PACER documents from lawsuits that Plaintiff has filed, and photographs of Plaintiff's products.  In other words, Smok's production largely consists of self-serving documents that were already within Plaintiff's possession, custody, or control.  The documents that are missing from Smok's productions are far more significant than the documents that have been included.  The major deficiencies in Smok's productions can be summarized as follows:

*First*, Smok has failed to produce internal company communications. Smok is a large Chinese public company. Smok is one of the largest, if not the largest, e-cigarette company in the world.  Smok has not produced even a single email exchanged between Smok employees; the only emails in Smok's productions are emails to or from Plaintiff and a tiny subset of third parties.  During the parties' meet and confer session on March 5, 2018, Smok did not have any explanation for the paucity of internal communications in its production.  McConnell Decl., ¶ 25. Counsel for Smok has admitted that Smok has produced only 14 pages of company documents.  *Id.*, ¶ 35.  It is not credible that Smok employees never exchanged any emails, or have any other internal documents, about Plaintiff, Plaintiff's trademarks, the settlement agreement they supposedly negotiated and signed without any legal

1   advice, naming their own products, or any other topic relating to the claims or

2   defenses in this lawsuit.  Plaintiff requests that Smok search for and produce all

3   responsive documents, which necessarily includes internal documents and

4   communications.

5          *Second*, Smok has refused to produce any documents regarding its sales and

6   marketing of the infringing products outside of the United States.  Smok's attempt

7   to unilaterally restrict discovery to sales and marketing within the U.S. must be

8   rejected.  Plaintiff's breach of contract claim is not limited to Smok's use of the

9   "Alien" trademarks within the United States.  The settlement agreement between

10  Plaintiff and Smok—which is the foundation of Plaintiff's breach of contract and

11  related state law claims—applied "worldwide."  *See* Plaintiff's First Amended

12  Complaint, Ex. 1 (Dkt. 165-1) at Section 3.2 (prohibiting Smok from using the

13  ALIEN mark on any products similar to Sarieddine's Alien Vape products and from

14  applying "anywhere in the world" for any trademark that includes the term

15  "ALIEN") and Section 9 ("The scope of this Agreement shall be worldwide.").

16         Nor are Plaintiff's Lanham Act claims limited to acts of trademark

17  infringement that occurred within the United States.  The Lanham Act can be used

18  to reach extraterritorial conduct.  *See*, e.g., *Wells Fargo & Co. v. Wells Fargo*

19  *Express Co.*, 556 F.2d 406, 428 (9th Cir. 1977) ("[T]he extraterritorial coverage of

20  the Lanham Act should be gauged not so much by the locus of the activity sought to

21  be reached . . . as by the nature of its effect on that commerce which Congress may

22  regulate."); *Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d 1115, 1142 (C.D. Cal.

23  2009) ("To establish that it is appropriate to apply the Lanham Act

24  extraterritorially, [plaintiff] must first show that there is 'some effect on American

25  foreign commerce.'") (citing *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d

26  552, 544-57 (9th Cir. 1992)).  This Court has not issued any orders limiting

27  Plaintiff's Lanham Act claims to Smok's U.S. sales, and such an order would not

28  be appropriate at this stage in the proceedings.  Plaintiff is entitled to establish that

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

the Lanham Act should be applied extraterritorially by offering evidence demonstrating that Smok's infringing sales abroad affected American foreign commerce.  But to make this threshold showing, Plaintiff needs to conduct discovery regarding Smok's infringing sales abroad.  Smok's refusal to provide any information regarding its sales abroad, in the absence of any court order limiting the scope of Plaintiff's Lanham Act or breach of contract claims, is improper.

*Third*, Smok has refused to search for and produce documents regarding all of the infringing products in this lawsuit.  Plaintiff's RFPs seek documents regarding products that Smok sold under the "Alien Kit Marks," which is defined as the "marks used by SMOK that are at issue in this Action and are used to identify certain of its vaporizer products, the: Alien Kit, Alien Baby, AL85, Alien 2, AL220, and AL230."  Smok has objected to searching for documents regarding these products and has instead limited its search to products specifically named "Alien" or "AL85."  Because Plaintiff's trademark infringement and breach of contract claims broadly cover all products that Smok sold under names that are "confusingly similar" to "Alien," Smok's unilateral decision to limit discovery to products named "Alien" or "AL85" is improper.  Moreover, the few documents that Smok has produced demonstrate that Smok *did* sell products under the excluded names.  *See* McConnell Decl., ¶ 28, Ex. 15 (Smok advertisement for the "AL85 Kit – AKA Alien Baby.")  Smok's own website demonstrates that Smok continues to sell products under the Alien Kit Marks. McConnell Decl. ¶ 29, Ex. 16.  In addition, Smok's Twitter account continues, as of March 13, 2018, to display a post promoting its AL85 vaporizer using the #alienbaby hashtag.  *Id..*, ¶ 36, Ex. 20.  Smok's Instagram account likewise displays, as of March 13, 2018, promotions for the AL85 vaporizer using the #alienbaby hashtag, and Smok has published these #alienbaby posts to its 350,000 followers, even after this lawsuit was filed.  *Id*., ¶ 36, Ex. 21.

Plaintiff therefore requests that Smok search for and produce all documents

regarding products sold under *any* name that is confusingly similar to "Alien,"

including, but not limited to the following: "Alien Kit" aka AL220, Alien Mod,

"Alien Baby" aka AL85, and "Alien 2" aka AL230.

*Fourth*, Smok has refused to produce documents regarding its revenue,
profits, and costs from infringing Plaintiff's trademarks, which Plaintiff needs to
estimate damages under the Lanham Act, 15 U.S.C. § 1117(a).  The only document
containing any information regarding Smok's revenue and profits from infringing
Plaintiff's trademarks is a single Excel spreadsheet, SMOK002406.  This
spreadsheet appears to have been created specifically for this lawsuit and comes
with no supporting documents or details to authenticate the self-serving numbers.
Among other problems, this spreadsheet is limited to sales in the United States,
which is improper because Plaintiff's Lanham Act and breach of contract claims are
not so limited.

Perhaps even more troublingly, the Excel spreadsheet at SMOK002406 does
not contain any data for Smok's AL85 / "Alien Baby" vaporizer.  Smok has taken
the untenable position that it is not required to produce ***any*** financial data regarding
its AL85 product because Smok "does not interpret" Plaintiff's Complaint as
claiming that its AL85 vaporizer infringes Plaintiff's Alien Vape marks.
McConnell Decl., ¶ 35, Ex. 19. But even a cursory reading of Plaintiff's First
Amended Complaint demonstrates that Smok's interpretation is groundless; there
are numerous allegations that Smok's AL85 brand infringes Plaintiff's Alien Vape
marks.  *See,* First Amended Complaint, Dkt. 165, at ¶¶ 62-67 (alleging that Smok's
promotion of its vaporizer under the names AL85 and "Alien Baby" infringed
Plaintiff's trademarks); ¶¶ 78-79 (alleging that Vapetrik, one of Smok's
distributors, infringed Plaintiff's trademarks by selling and promoting the AL85
vaporizer) and ¶ 84 (asking for an injunction prohibiting Smok from selling or
advertising its AL85 vaporizer).

Smok's position that its AL85 vaporizer does not infringe Plaintiff's Alien

Vape Marks wholly ignores its marketing campaign for this product and the history behind the "AL85" name.  As Plaintiff explained at length in its Motion for a Preliminary Injunction, the "AL" in "AL85" refers to "Alien."  *See* Dkt. 71-1 at pp. 4-6.  And even after changing the official name of the vaporizer from "Alien Baby" to AL85, Smok has continued to use the "Alien Baby" name to promote the AL85 product.  Indeed, Smok's Twitter and Instagram accounts continue to display posts promoting the AL85 vaporizer using the #alienbaby hashtag.  McConnell Decl., ¶ 36, Exs. 20-2

Contrary to Smok's position, Plaintiff *can* maintain a trademark infringement claim based on the fact that Smok and its distributors nicknamed the AL85 product the "Alien Baby" and marketed its product under this name.  Liability for trademark infringement is not limited to "official" product names but can include nicknames. *See, e.g., Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co*., 408 F. Supp. 1219, 1229 (D. Colo. 1976) (affirming defendant tire manufacturer's liability for trademark infringement based on defendant's use of the infringing nickname "BIGFOOT" for its tires).  Furthermore, if Smok's position, that it has never sold a product named "Alien Baby" were true, then surely it would not be unduly burdensome or very difficult for it to search for and produce <u>every</u> internal document that uses the term "Alien Baby".

In any event, Smok cannot satisfy its discovery obligations by producing the Excel spreadsheet at SMOK002406, which is an incomplete and self-serving "summary" of its revenue and profits from infringing Plaintiff's trademarks.  At the parties' meet and confer session on March 5, 2018, Smok stated that it was willing to produce "some" underlying cost documents that it used to create this spreadsheet, but it did not commit to producing its underlying revenue or profit documents. McConnell Decl., ¶ 33. However, Plaintiff is entitled to review *all* underlying documents that Smok used to create this spreadsheet so that Plaintiff can investigate the veracity of these numbers.  *See, e.g., Wahoo Int'l, Inc. v. Phix Doctor, Inc.,* No.

13cv1395-GPC (BLM), 2014 U.S. Dist. LEXIS 98044, at *20-21 (S.D. Cal. July 18, 2014) (plaintiff was entitled to underlying financial documents where defendant only produced an Excel spreadsheet reflecting total sales). Plaintiff therefore asks that Smok produce all underlying financial documents that it used to create this spreadsheet. Plaintiff further asks that Smok withdraw its improper objections to producing data regarding its worldwide sales and its AL85 / "Alien Baby" product because Plaintiff's claims encompass Smok's worldwide sales of all infringing "Alien" products.

*Fifth*, Smok has failed to produce relevant communications with third parties regarding this lawsuit, even though these communications are sought by numerous RFPs. *See* RFP Nos. 21, 26, 28, 44-47, and 61. Smok's communications with third parties regarding Plaintiff and its trademarks are relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing, which allege that Smok worked with third parties to challenge Plaintiff's Alien Vape marks. The communications missing from Smok's production include Smok's communications with Big Bang Vape Co., another e-cigarette company accused of infringing Plaintiff's trademarks, and its communications with Vapor World, a former Smok distributor. Plaintiff knows that Smok communicated with these third parties regarding this lawsuit based on evidence produced thus far. For example, Smok's CEO told Plaintiff in writing that Smok has been communicating with "Alien Kiss"—the brand name of Big Bang—about invalidating Plaintiff's trademarks. McConnell Decl., ¶ 23, Ex. 13. Therefore, Plaintiff reasonably expects that Smok's communications with Big Bang exist and should be produced. Likewise, Plaintiff knows that Smok communicated with Vapor World about this lawsuit. *Id.,* ¶ 24, Ex. 14.

During the parties' meet and confer session on March 5, 2018, Smok revealed for the first time that it has "no written record" of these missing third-party communications. *Id.,* ¶ 22. However, documents produced in this lawsuit

demonstrate Smok employees essentially exclusively use email, WeChat, and Skype to communicate with individuals outside the company. *Id.,* ¶ 23, Ex.13. This is consistent with Plaintiff's own experience, as the vast majority of Plaintiff's communications with Smok occurred through these means. *Id.,* ¶ 23. This is also consistent with the fact that Smok is a Chinese company and its communications with third parties encounter a language barrier and a significant time zone difference. Furthermore, Vapor World has told Plaintiff's counsel telephonically that it had responsive written Skype and WeChat conversations with Smok employees. (See McConnell Decl.).  Plaintiff therefore believes Smok has additional responsive communications with third parties, including, but not limited to, communications with Big Bang and Vapor World, that it has chosen not to produce.

The sixth major problem is that Smok had agreed to produce documents in response to numerous RFPs—Nos. 3, 5, 6, 7, 8, 9, 12 13, 14, 15, 17, 21, 23, 27, 28, 30, 34, 37, 38, 53—but has not yet done so.  During the parties' meet and confer session, Smok stated that it will "try" to produce these documents by the end of March but left open the possibility that it will not finish producing these documents until June 29, 2018.  McConnell Decl., ¶ 21.  Smok's requested deadline is wholly unreasonable and gives Smok almost a year to respond to Plaintiff's ***first*** set of discovery. At Smok's current pace, Plaintiff will not have time to take depositions or complete other essential discovery tasks, including translating Smok's documents, written in Mandarin, by the Court's discovery deadline. Judge Fischer has been adamant that she will not extend the discovery deadline for any reason, so this delay will end up being extraordinarily prejudicial to Plaintiff.

The seventh and final major problem is that Smok has refused to produce numerous documents based on relevancy objections based on the faulty argument that the Settlement Agreement was terminated in early 2017, so documents related to breaches of the Settlement Agreement after that will not be searched for or

produced. The Settlement Agreement was *never* terminated. Plaintiff terminated one discrete clause of the Settlement Agreement: the distribution clause. Smok purported to terminate the entire Agreement on May 31, 2017 via a letter to Plaintiff's counsel, but that purported termination was ineffectual. The Settlement Agreement contains no provision at all for Smok to terminate the contract. Indeed, it would be incredibly unusual for a Settlement Agreement to be drafted to allow the infringer (here, Smok) to simply terminate it after signing it. Furthermore, despite Smok's assertions, the Settlement Agreement does have clauses regarding duration and survivability.  Section 3.3 requires that: "SMOK shall <u>forever refrain</u> from using ALIEN or any mark containing the term ALIEN or any similar term in connection with any products or services." Section 3.3 (emphasis added). Section 6.2 further holds that "This Agreement will remain in effect following expiration of the Distribution Term." The circumstances of the Settlement Agreement indicate that the prohibition of Smok using the Alien marks lasts at least as long as Plaintiff's Alien trademarks remain registered and protectable. Thus, the abandonment or cancellation of Sarieddine's trademark rights is the only condition that could theoretically terminate Smok's agreement to restrain its use of Alien. Accordingly, Smok should not be allowed to refuse to search for, or to withhold documents, based on the erroneous idea that the Settlement Agreement is terminated.

The significant gaps in Smok's production suggest that Smok has either failed to perform a diligent search for responsive documents, that Smok has improperly withheld numerous responsive documents, or that Smok has destroyed documents.  To the extent that Smok has limited its search for responsive documents to documents written in English, such a search is unacceptable.  Given that Smok is based in China, Plaintiff reasonably expects that many responsive documents are written in Mandarin, and these responsive documents must be produced.  To the extent that Smok has withheld documents on attorney-client, joint

defense, or common interest privilege grounds, Smok must produce a detailed privilege log.  And to the extent that Smok has withheld responsive documents on any other grounds, including its objections to producing relevant documents regarding its "Alien Baby" vaporizer, Smok should withdraw these improper objections and produce responsive documents forthwith.

Plaintiff therefore requests a Court Order requiring Smok to produce all outstanding responsive documents within two weeks of the hearing on this motion. Plaintiff's Document Requests, and the relevant portions of Smok's responses thereto, are identified below.

### B.    Smok's Omnibus Position Regarding Document Requests

1.    Smok's responses and ongoing document production comply with Smok's obligations under the Federal Rules of Civil Procedure. Smok has performed reasonable searches for responsive documents (including internal documents and documents in Mandarin). Smok's objections to producing documents related to trademark use outside the United States are well-founded, as is Smok's objection to Sarieddine's overbroad definition of "Alien Kit Marks." Smok has produced sufficient documentation to disclose its revenues, costs, and profits for Smok's Alien goods in the United States.

2.    Smok has searched for and produced internal documents responsive to Sarieddine's document requests. Smok's ongoing search has included internal communications, as well as documents in Mandarin. Smok's production of internal documents continues, and Smok expects to supplement its production by March 30, 2018. In its positions below regarding specific document requests, Smok will specify where its ongoing search has or has not revealed additional internal documents. But Plaintiff's belief that additional documents must exist does not mean that any such documents are in Smok's possession, custody or control.

3.    Smok is not obligated to produce documents or information related to trademark use outside the United States (including financial documents and

information related to such use). As a general matter, the Lanham Act applies only to conduct within the United States. Extraterritorial application is the exception, rather than the rule. And Sarieddine has not proven any exception here. All he has proven is that he is a trademark troll, using an ALIEN VAPE registration obtained under (at best) questionable circumstances to impose massive discovery costs on anybody using the word "Alien" in the e-cigarette industry, despite Sarieddine's ALIEN VAPE marks having coexisted for years with dozens of other "Alien" marks and generic uses of "alien" on alternative smoking goods and services, including the following:

- ALIEN VISIONS e-liquid
- ALIEN VAPOR e-liquid and online retail store services featuring e-cigarette products
- ALIEN PISS e-liquid
- ALIEN KISS e-liquid
- ALIEN e-liquid
- ALIEN BLOOD e-liquid
- ALIEN NECTAR e-liquid
- ALIEN OOZE e-liquid
- NATIVE ALIEN VAPOR e-liquid
- ALIEN-CLOUDVAPES distribution and wholesale services featuring e-cigarette goods
- ALIEN THROAT PUNCH  e-liquid
- PURPLE ALIEN e-liquid
- ALIEN MILK e-liquid
- ALIEN INVADER VAPOR e-liquid
- ALIEN INVADER e-cigarette devices
- ETALIENS e-cigarette devices
- ALIEN ANT e-cigarette devices

- ALIENWARE e-cigarette accessories
- ALIEN vapor hookas
- ALIEN hookah funnel bowls
- ALIENSHPAES hookah pipes
- ALIEN PHUNNEL hookah bowls
- ALIEN MINI PHUNNEL hookah bowls
- ALIEN FLASHBACK hookah bowls
- ALIEN hookah papies
- FOGSLORD-brand alien wire for e-cigarette goods
- XFKM-brand alien wire for e-cigarette goods
- DEMON KILLER-brand alien wire for e-cigarette goods
- LIGHNING VAPES-brand alien wire rods for e-cigarette goods
- FOCUSECIG-brand alien wire rods for e-cigarette goods
- KUKEN TECH-brand alien wire for e-cigarette goods
- ADVERKEN-brand alien wire for e-cigarette goods
- ROFVAPE-brand  alien wire shots for e-cigarette goods
- NINJA WIRE-brand alien wire for e-cigarette goods
- COILOLOGY-brand alien coils for e-cigarette goods
- CENTRAL IOWA VAPORS-brand alien wire for e-cigarette goods
- PURE COILS-brand alien coils for e-cigarette goods
- OHMLANDCOILS-brand alien coils for e-cigarette goods
- AKATTAK-brand alien wire for e-cigarette goods
- VPDAM-brand alien coils for e-cigarette goods
- PUFF N STUFF-brand alien wire for e-cigarette goods
- MEDUSA COILS-brand alien coils for e-cigarette goods

In order for the Lanham Act to apply extraterritorially, "first there must be some effect on American foreign commerce; second, the effect must be sufficiently great to present a cognizable injury to plaintiffs under the federal statute; and third,

the interests of and links to American foreign commerce must be sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority." *Aurora World*, 719 F.Supp.2d at 1142. It is undisputed that Smok has made significant sales within the United States. So it is unreasonable to expect that Smok's foreign sales would have such a great effect on American foreign commerce as to present a cognizable injury to Sarieddine under the Lanham Act. Nor is it reasonable to expect that American foreign commerce has sufficiently strong interests in and links to Smok's foreign sales to justify an assertion of extraterritorial authority. Moreover, Sarieddine has shown absolutely no cognizable injury as a result of Smok's alleged infringement (let alone alleged infringement outside the United States). Sarieddine was required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii) to provide "a computation of each category of damages claimed." Yet Sarieddine's initial disclosures—last supplemented on March 14, 2018—do not mention any injury traceable to Smok's foreign sales. In fact, Sarieddine's disclosures do not indicate any lost profits at all. If anything, discovery to date indicates that Sarieddine's business grew as a result of the purported confusion between Sarieddine's business and Smok's.

4.     Nor does Sarieddine's contract claim give him the right to documents related to Smok's trademark use outside the United States. It is undisputed that Smok has used the mark SMOK ALIEN in the United States, which is sufficient for Sarieddine's claims that Smok breached the purported contract. Thus, requiring Smok to search for and produce documents related to its trademark use in every other country in the world would not be proportional to the needs of the case. Smok does business worldwide, and should not be forced to search for and produce this duplicative documentation of its use of SMOK ALIEN. And even if Sarieddine were entitled to extraterritorial documents on the basis of his breach of contract claim, he would not be entitled to discover Smok's extraterritorial financials, as the breach of contract claim does not allow for profit disgorgement.

5.      Smok properly objected to Sarieddine's overbroad definition of the term "Alien Kit Marks." Smok limited the definition of "Alien Kit Marks" to mean only "Alien" and "AL85" because those are the product names Smok has uses for the products at issue in this action. While there have been passing references to the phrase "alien baby" in a few advertisements and promotions for Smok's AL85 goods, generally before launching the product in January 2017, Smok never adopted the phrase "alien baby" in the ordinary course of business as the name of any product. As to AL230 or "Alien 2," Smok has never used "AL230" or "Alien 2" in connection with any product sold or offered for sale. *See* Declaration of Freda Wong, ¶ 2-3.

6.      In a similar vein, Smok properly refused to provide financial documents or information regarding its AL85 goods. As discussed above, Smok's AL85 product was not named the "alien baby," and use of that phrase in connection with the AL85 has been scant. Sarieddine's case law supporting trademark infringement for nicknames is inapposite. In *Big O Tire Dealers*, the defendant engaged in "a massive advertising program using television commercials, magazine and newspaper advertising and point of sale material, all using the word BIGFOOT" as a nickname for the defendant's tires. 408 F.Supp. at 1223. The defendant spent $5,000,000 (in 1974 dollars) promoting this nickname. This is a far cry from the sporadic use of "alien baby" in the case at hand, including a file path to a product photograph (*see* First Amended Complaint, Dkt. No. 165, ¶ 58) and predominantly pre-sale emails and Instagram posts prominently featuring the actual product name (*see id.* at ¶¶ 59-60).

7.      Further, Sarieddine's newfound position that AL85 itself is confusingly similar to ALIEN VAPE strains credulity. Nowhere in the cited portion of Sarieddine's Motion for Preliminary Injunction does he actually contend that the "AL" in "AL85" refers to "Alien." Moreover, when he complained to Smok about the phrase "alien baby" in early 2017, Sarieddine did not object to Smok's use of

AL85. *See* Declaration of David T. Van Der Laan, ¶ 2, Ex. A. Sarieddine's request was as follows: "don't call the al85 alien baby." *Id.* This makes sense, as there is no good-faith argument that AL85 is confusingly similar to Alien Vape. So Smok should not be compelled to produce AL85 financials on this basis, either.

8. Smok's ongoing financial document disclosure satisfies Smok's discovery obligations. Smok has produced a spreadsheet (bates-labeled SMOK002406) showing its revenues, costs, and profits for Alien goods sold in the United States. Contrary to Sarieddine's presumption that Smok relied on other documents to create the spreadsheet, Smok created it by querying a report its internal electronic accounting system for Alien goods in the United States. Regarding Sarieddine's request for underlying financial and accounting documents, it is not clear to Smok what Sarieddine means by "underlying," and whether "underlying" documents are a subset of the overbroad universe of all documents reflecting any of Smok's financial transactions for the marks at issue. Sarieddine is not entitled to discover Smok's financials worldwide, nor is he entitled to discover Smok's financials with respect to all of Smok's products. Sarieddine's case law in support of his request for "*all* underlying documents that Smok used to create this spreadsheet" is inapposite. In *Wahoo Int'l*, the defendant's spreadsheets included only "total sales and some categories of expenses." 2014 WL 2573400, *1. Here, on the other hand, Smok's spreadsheet lists each US sale individually, and identifies the customer, revenue, cost, and profit for each such sale. In addition to  this spreadsheet, Smok has produced additional documentation of its advertising and promotion costs, and will produce additional documents related to other costs.

9. Regarding Sarieddine's various requests for third-party communications, Smok has produced responsive documents. Smok is aware of some additional communications between Smok and third parties that are responsive to one or more of Sarieddine's discovery requests, but does not have documents reflecting these communications. Smok's process of gathering and

producing documents is ongoing. Smok acknowledges that it may have communicated with Big Bang or with Vapor World, and will produce any documents in its possession, custody, or control related to any such communications. Smok is not withholding any non-privileged documents related to its communications with others related to this case.

10.     With respect to the timing of Smok's production, Smok has worked diligently to gather and produce responsive documents. Smok is making every effort to supplement its production on March 30, 2018 but additional responsive documents may be located as the case progresses. And if Smok locates additional potentially responsive documents in Mandarin, then Smok's counsel will need time to have those documents translated and then review them prior to production. The lengthy discovery timeline in this case was based in large part on Sarieddine's position at the scheduling conference in this case that gathering documents from China would be time-consuming. Sarieddine cannot feign surprise that his prediction came true. Smok's diligent effort has resulted in its production of 56 documents on December 1, 2017, 291 documents on December 22, 2017, 504 documents on February 2, 2018, and 323 documents on February 16, 2018.

11.     It is troubling that Sarieddine claims to have a "major problem" with an objection that Smok never raised. Specifically, Smok did not object to the relevancy any request on the basis that the so-called "Settlement Agreement" was terminated.

12.     Finally, Smok will produce a privilege log for any responsive, privileged documents dated prior to Sarieddine's filing of this lawsuit.

## C.     Document Requests That Are in Dispute

## REQUEST FOR PRODUCTION NO. 1:

All Documents that support or refute any position that SMOK intends to or may take against Sarieddine in this Action.

1

2 **<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 1:</u>**

3        Smok objects to this Request on the grounds that it is overbroad, unduly

4 burdensome, and not proportional to the needs of the case because it seeks

5 documents related to positions that Smok does not intend to take and it seeks to

6 force Smok's counsel to make legal determinations. Smok will not search for or

7 produce documents that support or refute positions that Smok does not intend to

8 take. Smok further objects to this Request on the grounds that it seeks documents

9 protected by the attorney-client privilege, the attorney work product doctrine, or the

10 common interest privilege Smok will produce non-privileged documents—if any—

11 that support any position that Smok intends to take in this Action.

12 **<u>PLAINTIFF'S POSITION:</u>**

13        Smok has not produced all documents within its possession, custody, or

14 control that are responsive to this Request.  Smok produced a limited volume of

15 responsive documents, primarily consisting of advertisements for Plaintiff's

16 products, documents from the website of the U.S. Patent and Trademark Office

17 ("USPTO") regarding Plaintiff's trademarks, and documents downloaded from

18 PACER.  It is not credible that the documents pertaining to the positions that Smok

19 intends to take in this lawsuit are limited to advertisements and publicly available

20 documents.  Smok has not produced any internal emails and few company

21 documents.  Nor has Smok produced documents regarding its affirmative defenses

22 (*see, e.g.,* RFP Nos. 52-54 and 81, discussed *infra*).  Plaintiff therefore requests that

23 Smok produce all documents that are responsive to this Request within two weeks

24 of the hearing on this motion.

25 **<u>SMOK'S POSITION:</u>**

26        Sarieddine's characterization of Smok's production in response to this

27 request ignores the many documents Smok produced that show widespread third-

28 party use of the word "alien" in connection with alternative smoking goods and

services, both generically (for a type of wire or coil used in vaporizers) and as part of a trademark or service mark.

Smok is in the process of gathering additional responsive documents and is endeavoring to make a further production responsive to this request by March 30, 2018.

Finally, in the interest of brevity, Smok incorporates by reference paragraph 2 (regarding internal documents) of Smok's Omnibus Position Regarding Document Requests.

**REQUEST FOR PRODUCTION NO. 3:**

Documents sufficient to identify all employees, officers, or principals of SMOK that were responsible for naming any goods bearing any of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Smok objects to this Request on the grounds that responsible is vague and ambiguous. Smok interprets "responsible" to mean "having an obligation to do something, as part of one's job or role." Smok will produce non-privileged documents—if any—sufficient to identify all employees, officer, or principals of Smok that had an obligation to name any goods bearing any of Smok's Alien Kit Marks as part of their job or role.

**PLAINTIFF'S POSITION:**

Despite agreeing to produce documents in response to this Request, Smok has yet to produce any responsive documents.  This is a narrow request, which simply asks for documents identifying the employees who were responsible for naming the infringing goods at issue in this lawsuit.  Plaintiff needs this basic information to identify the correct Smok employees for depositions.

Plaintiff also asks that Smok withdraw its improper objection to producing documents regarding its "Alien Kit Marks."  Plaintiff's RFPs define "Alien Kit

Marks" as including Smok's Alien Kit, Alien Baby, AL85, Alien 2, AL220, and AL230 products.  In its General Objections, Smok objected to the definition of "Alien Kit Marks" and stated that it will only search for documents regarding products specifically named "Alien" or "AL85."  This limitation is wholly improper.  Plaintiff's trademark infringement and breach of contract claims concern *all* products sold under the "Alien" name or "confusingly similar" names.  *See* First Amended Complaint (Dkt. 165) at ¶¶ 10, 44, 72.  The names that Smok used to sell its infringing products were not limited to "Alien" or "AL85."  The few documents that Smok has produced demonstrate that it used the infringing name "Alien Baby" to sell e-cigarette products.  McConnell Decl., ¶ 28, Ex. 15.  In addition, Smok's Twitter and Instagram accounts continue to display posts promoting its AL85 vaporizer using the #alienbaby hashtag, that Smok was posting to its own social media long even after this litigation had begun.  *Id.*, ¶ 36, Exs. 20-21.

Plaintiff therefore asks that Smok withdraw the foregoing objection and produce all documents that are responsive to RFP No. 3 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok has searched for but not located non-privileged documents responsive to this request.

In the interest of brevity, Smok incorporates by reference paragraph 5 (regarding the definition of "Alien Kit Marks") of Smok's Omnibus Position Regarding Document Requests.

**REQUEST FOR PRODUCTION NO. 4:**

All Documents concerning SMOK's trademark applications anywhere in the world that contain the term "Alien" for electronic cigarette products, including vaporizers or e-liquids.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

1   Smok objects to this Request on the grounds that it seeks documents

2   protected by the attorney-client privilege, the attorney work product doctrine, or the

3   common interest privilege Smok will produce non-privileged documents—if any—

4   concerning Smok's trademark application or applications that contain the term

5   "Alien" for electronic cigarette products.

6   **PLAINTIFF'S POSITION:**

7   Despite agreeing to produce documents in response to this Request, Smok

8   has produced only a single trademark application, which is publicly available on the

9   USPTO's website.  During the parties' meet and confer session on March 5, 2018,

10   Smok acknowledged that its response was deficient and agreed to produce

11   documents regarding its trademark applications for the term "Alien" that it filed in

12   China.  McConnell Decl., ¶ 21.  However, Plaintiff notes that this Request calls not

13   only for the applications themselves, but also any internal documents regarding

14   trademark applications.  Plaintiff requests that Smok search for and produce

15   internal documents regarding the trademark application that Smok has disclosed, as

16   well as any other trademark applications for the mark "Alien" on e-cigarette

17   products anywhere in the world, especially given that the Settlement Agreement

18   explicitly prevents Smok from applying for any "Alien" trademarks worldwide.

19   **SMOK'S POSITION:**

20   Sarieddine mischaracterizes Smok's production, which also includes Chinese

21   trademark applications responsive to this request. Smok has agreed to search for

22   additional documents responsive to this request, and will endeavor to produce any

23   such documents by March 30, 2018.

24

25   **REQUEST FOR PRODUCTION NO. 5:**

26   All Documents relating to searches or investigations concerning the

27   availability of SMOK's Alien Kit Mark as a trademark or service mark conducted

28

by or on behalf of SMOK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to trademark use in the United States. Smok will not search for or produce documents relating to searches or investigations concerning the availability of Smok's Alien Kit Mark as a trademark or service mark outside the United States. Smok further objects to this request on the grounds that it seeks documents protected by the attorney-client privilege or the attorney work product doctrine. Smok will produce non-privileged documents—if any—relating to searches or investigations concerning the availability of Smok's Alien Kit Mark as a trademark or service mark in the United States.

**PLAINTIFF'S POSITION:**

RFP No. 5 seeks documents relating to Smok's selection and use of names for its Alien-branded products, which infringe Plaintiff's trademarks. The process that Smok used to select these names—including any trademark searches or other investigations—is relevant to Plaintiff's claim that Smok willfully infringed Plaintiff's Alien Vape trademarks. Plaintiff has alleged that Smok adopted the "Alien Kit" name for its vaporizer with full knowledge of Plaintiff's Alien Vape products and superior trademark rights. *See* First Amended Complaint (Dkt. 165) at ¶¶ 10, 72, 104. The documents sought by this Request are also relevant to Plaintiff's breach of contract claim, which alleges that Smok used the Alien Kit Marks in violation of the settlement agreement. To date, Smok has produced no responsive documents to this request.

Smok has unjustifiably limited its response to RFP No. 5 in two critical ways. First, Smok stated that it will only produce documents pertaining to its use of "Alien" trademarks in the United States. This limitation is unacceptable because Plaintiff's breach of contract claim is not limited to Smok's use of the "Alien"

trademarks within the United States.  The settlement agreement between Plaintiff and Smok applied "worldwide."  *See* Plaintiff's First Amended Complaint, Ex. 1 (Dkt. 165-1) at Section 3.2 (prohibiting Smok from using the ALIEN mark on any products similar to Sarieddine's Alien Vape products and from applying "anywhere in the world" for any trademark that includes the term "ALIEN") and Section 9 ("The scope of this Agreement shall be worldwide.").

Nor are Plaintiff's Lanham Act claims limited to acts of trademark infringement that occurred in the United States.  As previously discussed, the Lanham Act can be used to reach extraterritorial conduct.  Plaintiff is entitled to establish that the Lanham Act should be applied extraterritorially by offering evidence demonstrating that Smok's infringing sales abroad affected American foreign commerce.  *See*, e.g., *Aurora World, Inc. v. TY Inc.*, 719 F. Supp. 2d at 1142.  But to make this threshold showing, Plaintiff needs to conduct discovery regarding Smok's infringing sales outside of the U.S.

Second, Smok has refused to produce documents regarding all products sold under the "Alien Kit Marks," which include Smok's Alien Kit, Alien Baby, AL85, Alien 2, AL220, and AL230 products, and has instead stated that it will only search for documents regarding products specifically named "Alien" or "AL85."  This limitation, which Smok asserted in its General Objections, is wholly improper.  Plaintiff's trademark infringement and breach of contract claims concern *all* products sold under the "Alien" name or "confusingly similar" names.  *See* First Amended Complaint (Dkt. 165) at ¶¶ 10, 44, 72.  As previously discussed, the names that Smok used to sell its infringing products were not limited to "Alien" or "AL85."  McConnell Decl., ¶¶ 28-30; 36.

Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 5 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok has searched for but not located non-privileged documents responsive to this request.

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").

**REQUEST FOR PRODUCTION NO. 6:**

All Documents concerning any formal or informal research (including, but not limited to, searches, investigations, surveys, reports, or market studies) conducted by or on behalf of SMOK, or of which SMOK has knowledge, pertaining to any of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to trademark use in the United States. Smok will not search for or produce documents concerning formal or informal research pertaining to any of Smok's Alien Kit Marks outside the United States. Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents—if any—concerning formal or informal research pertaining to any of Smok's Alien Kit Marks in the United States.

**PLAINTIFF'S POSITION:**

RFP No. 6 seeks documents relating to Smok's selection and use of names for its Alien-branded products, which infringe Plaintiff's trademarks.  Any research that Smok conducted in determining whether to use these infringing names— including any surveys or market studies—is relevant to Plaintiff's claim that Smok willfully infringed Plaintiff's Alien Vape trademarks.  *See* First Amended

Complaint (Dkt. 165) at ¶¶ 10, 72, 104.  The documents sought by this Request are also relevant to Plaintiff's breach of contract claim, which alleges that Smok used the Alien Kit Marks in violation of the settlement agreement.

Smok has imposed the same improper limitations on its response to RFP No. 6 as it did on its response to RFP No. 5, *supra*.  First, Smok stated that it will only produce documents pertaining to its use of "Alien" trademarks in the United States.  Second, Smok refused to produce documents regarding all "Alien Kit Marks" and instead stated that it will only search for documents regarding products named "Alien" or "AL85."  As discussed above, these limitations are unacceptable because Plaintiff's claims encompass all products sold under the Alien Kit Marks.  Moreover, Plaintiff's claims are not limited to products that Smok sold in the United States.  Plaintiff therefore asks that Smok withdraw its objections and produce all documents that are responsive to RFP No. 6 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").


**REQUEST FOR PRODUCTION NO. 7:**

All Documents related to how SMOK allegedly created, selected, adopted, cleared, acquired, or otherwise made the decision to use each of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to trademark use in the United States. Smok will not search

for or produce documents related to how Smok created, selected, adopted, cleared, acquired, or otherwise made the decision to use each of Smok's Alien Kit Marks outside the United States. Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege or the attorney work product doctrine. Smok will produce non-privileged documents—if any—related to how Smok created, selected, adopted, cleared, acquired, or otherwise made the decision to use each of Smok's Alien Kit Marks in the United States.

**PLAINTIFF'S POSITION:**

RFP No. 7 seeks documents relating to Smok's selection and use of names for its Alien-branded products, which infringe Plaintiff's trademarks. Documents that discuss how Smok decided to use these infringing names are relevant to Plaintiff's claim that Smok willfully infringed Plaintiff's Alien Vape trademarks. *See* First Amended Complaint (Dkt. 165) at ¶¶ 10, 72, 104. The documents sought by this Request are also relevant to Plaintiff's breach of contract claim, which alleges that Smok used the Alien Kit Marks in violation of the settlement agreement.

Smok has imposed the same improper limitations on its response to RFP No. 7 as it did on its response to RFP Nos. 5 and 6, *supra*. First, Smok has stated that it will only produce documents pertaining to its use of "Alien" trademarks in the United States. Second, Smok has refused to produce documents regarding all "Alien Kit Marks" and has instead stated that it will only search for documents regarding products named "Alien" or "AL85." As discussed above, these limitations are unacceptable because Plaintiff's claims encompass all products sold under the Alien Kit Marks. Moreover, Plaintiff's claims are not limited to products that Smok sold within the United States. Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 7 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").

**REQUEST FOR PRODUCTION NO. 8:**

Documents showing each proposed name considered by SMOK and the reasons for rejection of such proposed name in favor of the names ALIEN KIT, ALIEN BABY, or ALIEN 2.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks documents unrelated to trademark use in the United States and (2) Smok never adopted "Alien Baby" or "Alien 2" as a product name. Smok will not search for or produce documents showing each proposed name considered by Smok and the reasons for rejection of such proposed name in favor of the names ALIEN KIT, ALIEN BABY, or ALIEN 2, where the proposed name was considered only for use outside the United States.

Smok further objects to this request on the grounds that the phrase "documents showing" and "proposed" and "considered" are vague, in that Smok cannot discern whether Sarieddine requests each document that shows a proposed name, or rather documents sufficient to show each proposed name. Smok will not search for or produce duplicative documents that reflect identical proposed names considered by Smok.

Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege or the attorney work product doctrine. Smok will produce non-privileged documents—if any—sufficient to show each proposed name considered by Smok for use in the United States. Smok also will

1    produce non-privileged documents—if any—sufficient to show the reason Smok

2    rejected each of the aforementioned proposed names.

3    **PLAINTIFF'S POSITION:**

4        RFP No. 8 seeks documents relating to Smok's selection of names for its

5    Alien-branded products, which infringe Plaintiff's trademarks.  Documents

6    responsive to RFP No. 8 will tend to show why Smok decided to use the Alien Kit

7    Marks on its products.  These documents are relevant to Plaintiff's claim that Smok

8    willfully infringed Plaintiff's Alien Vape trademarks.  *See* First Amended

9    Complaint (Dkt. 165) at ¶¶ 10, 72, 104.  The documents sought by this Request are

10   also relevant to Plaintiff's breach of contract claim, which alleges that Smok used

11   the Alien Kit Marks in violation of the settlement agreement.

12       Smok has imposed the same improper limitations on its response to RFP No.

13   8 as it did on its response to RFP Nos. 5-7, *supra*.  First, Smok has stated that it will

14   only produce documents pertaining to its use of "Alien" trademarks in the United

15   States.  Second, Smok has refused to produce documents regarding all "Alien Kit

16   Marks" and has instead stated that it will only search for documents regarding

17   products named "Alien" or "AL85."  As discussed above, these limitations are

18   unacceptable because Plaintiff's claims encompass all products sold under the

19   Alien Kit Marks.  Moreover, Plaintiff's claims are not limited to products that

20   Smok sold within United States.  Plaintiff therefore asks that Smok withdraw the

21   foregoing objections and produce all documents that are responsive to RFP No. 8

22   within two weeks of the hearing on this motion.

23   **SMOK'S POSITION:**

24       In the interest of brevity, Smok incorporates by reference the following

25   paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding

26   trademark use outside the United States) and 5 (regarding the definition of "Alien

27   Kit Marks").

28

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

**REQUEST FOR PRODUCTION NO. 9:**

All Documents and Communications in which any of Sarieddine's Marks were discussed, including, without limitation, any meeting minutes, notes, emails, text messages, WeChat logs, or Skype logs, or logs from any other instant messenger software.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Smok objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents and communications—if any— responsive to this Request.

**PLAINTIFF'S POSITION:**

Despite agreeing to produce documents in response to this Request, Smok has produced almost no responsive documents. Smok has not produced a single internal email regarding Plaintiff's Alien Vape marks and produced very few communications with third parties on this subject. Plaintiff reasonably believes that Smok has additional documents within its possession, custody, or control that are responsive to this Request. Smok's CEO told Plaintiff that he had communicated with "Alien Kiss" (the brand name of Big Bang) about working with them "to fight against" Plaintiff's "liquid trademark." McConnell Decl., ¶ 23, Ex. 13. Given this admission from Smok's CEO, there are presumably communications between Smok and Big Bang regarding Plaintiff's trademarks, as well as communications with others.

Furthermore, given the Court's recent order denying Big Bang's request to consolidate its case with the case against Smok, Smok should not withhold responsive communications with Big Bang on privilege grounds. *See* Case No. Case 2:17-cv-00989-DSF-SK, Dkt. 71. As the Court noted, the differences between Plaintiff's cases against Smok and Big Bang include "different defendants, different products in different geographic markets, and different time periods." *Id.*

Because of these significant differences, Smok and Big Bang are not pursuing a joint legal strategy, and most, if not all, communications with Big Bang would not fall within the purview of the common interest privilege. *See, e.g., Nidec Corp. v. Victor Co.,* 249 F.R.D. 575, 579 (N.D. Cal. 2007) (noting that the common interest privilege applies only to communications made in the course of "formulating a *common legal strategy"* or otherwise furthering the parties' joint interest in a lawsuit).

Finally, Plaintiff's marks were the subject of a trademark dispute and signed Settlement Agreement regarding Smok's bestselling product, the Alien Kit. Smok navigated the trademark dispute and Settlement Agreement, apparently, without a lawyer. Smok then named a second product the "Alien Baby" and then abandoned the name in favor of "AL85". That it, a large public company, would have no internal documents regarding *any* of these developments is simply beyond belief.

To the extent that Smok has withheld any responsive communications on privilege grounds, Smok must provide a privilege log. In accordance with the instructions provided in Plaintiff's discovery requests, this privilege log should include the following information: (a) the date of the communication; (b) the subject matter of the communication; (c) the names, addresses, job titles, and employers of all persons with knowledge or a copy of the information, and (d) the nature of the privilege asserted.

Plaintiff requests that Smok produce all documents that are responsive to this Request, as well as a privilege log indicating which documents (if any) have been withheld from production, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok has produced non-privileged documents responsive to this request. Its search has not located any additional non-privileged responsive documents.

Sarieddine's position regarding the common-interest privilege between Smok and Big Bang is incorrect. While the two cases were not consolidated, there is

undisputed overlap between the cases with respect to a number of issues, including the scope of protection for Sarieddine's ALIEN VAPE marks. Sarieddine's implication that most communications Smok and Big Bang (including their respective attorneys) would cover areas where the cases do not overlap is dubious. Smok is entitled to withhold communications between its counsel and Big Bang's by virtue of the common-interest privilege.

Finally, in the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Section Regarding Document Requests: 1 (regarding internal documents); 9 (regarding third-party communications); and 12 (regarding a privilege log)

**REQUEST FOR PRODUCTION NO. 10:**

Representative specimens showing all current uses of each of SMOK's Alien Kit Marks affixed to and/or on packaging for any electronic cigarette products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to trademark use in the United States. Smok will not search for or produce specimens showing current uses of Smok's Alien Kit Marks affixed to or on packaging for any electronic cigarette products outside the United States. Smok will produce non-privileged representative photographic specimens—if any—showing current uses of each of Smok's Alien Kit Marks affixed to and/or on packaging for any electronic cigarette products in the United States.

**PLAINTIFF'S POSITION:**

RFP No. 10 seeks physical samples of e-cigarette products currently displaying Smok's Alien Kit Marks.  Smok has not produced any physical samples of its products, even though Plaintiff sent Smok with physical samples of its own Alien Vape-branded products months ago.

During the parties' meet and confer session on March 5, 2018, Smok agreed to provide physical samples of products named "Alien" only.  McConnell Decl., ¶ 21.  However, this limitation is improper, as Plaintiff's claims are not limited to products specifically named "Alien."  As previously explained, Plaintiff's claims cover all products sold under names that are confusingly similar to Alien, including Smok's Alien Mod and AL85 aka Alien Baby products.  *See* First Amended Complaint (Dkt. 165) at ¶¶ 10, 44, 72.  Plaintiff therefore asks that Smok provide physical samples of all versions of all products currently sold under the "Alien Kit Marks," which includes its AL85 vaporizer, within two weeks of the hearing on this motion.  Smok must produce its products in their original packaging.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates paragraph 5 (regarding the definition of "Alien Kit Marks") of Smok's Omnibus Section Regarding Document Requests.

**REQUEST FOR PRODUCTION NO. 11:**

Documents sufficient to identify SMOK's first use of each of SMOK's Alien Kit Marks on any e-cigarette products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the need of the case because it seeks documents unrelated to trademark use in the United States. Smok will not search for or produce documents to identify Smok's first use of each of Smok's Alien Kit Marks on e-cigarette products outside the United States. Smok will produce non-privileged documents—if any—sufficient to identify Smok's first use in the United States of each of Smok's Alien Kit Marks on any e-cigarette products.

**PLAINTIFF'S POSITION:**

This Request seeks evidence of Smok's first use of its Alien Kit Marks,

which is relevant to Smok's counterclaim for a declaratory judgment that it has not infringed Plaintiff's trademarks.  *See* Dkt. 184.  Documents regarding the first use of Smok's "Alien Kit" marks are also relevant to Plaintiff's Lanham Act and breach of contract claims against Smok, which allege that Plaintiff's Alien Vape marks have priority over Smok's Alien Kit Marks.

Given the relevance of these documents, Smok's blanket refusal to search for or produce any documents regarding Smok's first use of its Alien Kit Marks on e-cigarette products outside the United States is improper.  As previously explained, Plaintiff's claims are not limited to products sold within the United States.  The settlement agreement between Plaintiff and Smok applied "worldwide."  *See* Plaintiff's First Amended Complaint, Ex. 1 (Dkt. 165-1).  Moreover, Plaintiff's Lanham Act claims are not limited to trademark infringement that occurred within the United States, and this Court has not issued any orders limiting Plaintiff's Lanham Act claims to Smok's U.S. sales.  Plaintiff therefore requests that Smok withdraw this objection and produce documents regarding the first use of its Alien Kit Marks anywhere in the world, including but not limited to the United States.

Plaintiff also requests that Smok produce documents regarding all products sold under the "Alien Kit Marks," which include Smok's Alien Kit, Alien Baby, AL85, Alien 2, AL220, and AL230 products.  Smok's position that it will only search for documents regarding products named "Alien" or "AL85" is unjustified because Plaintiff's claims are not limited to these two names.  This case concerns *all* Smok products sold under the "Alien" name or "confusingly similar" names. *See* First Amended Complaint (Dkt. 165) at ¶¶ 10, 44, 72.

Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 11 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following

paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").

## REQUEST FOR PRODUCTION NO. 12:

All Documents concerning any consumer confusion between any of Sarieddine's Marks and SMOK's Alien Kit Marks, including any instances where a third-party has ever inquired if there is a relationship between SMOK and Sarieddine or inquiring whether SMOK is the source of any goods bearing Sarieddine's Alien Vape Marks.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents constituting inquiries and other communications which were directed to Sarieddine. Smok will not search for or produce documents that constitute inquiries or other communications as to a relationship between Smok and Sarieddine or as to whether Smok is the source of any goods bearing Sarieddine's Alien Vape Marks, where such inquiries and other communications were directed to Sarieddine. Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents—if any— concerning any alleged consumer confusion between any of Sarieddine's Marks and Smok's Alien Kit Marks.

## PLAINTIFF'S POSITION:

This Request seeks documents regarding consumer confusion between Plaintiff's trademarks and Smok's Alien Kit Marks, which are essential to Plaintiff's trademark infringement claims.  Smok has not produced any documents in response to this Request.  During the parties' meet and confer session on March

5, 2018, Smok represented that it had not located any responsive documents.
McConnell Decl., ¶ 26.  However, Plaintiff has reason to believe these documents
exist.  Plaintiff has produced dozens of communications with third parties
expressing confusion between Sarieddine's Alien Vape Marks and Smok's Alien
Kit Marks.  *Id.*  Plaintiff's First Amended Complaint includes additional examples
of consumer confusion.  *See* Dkt. 165 at ¶¶ 81- 82.  Given the frequency with which
Plaintiff has encountered third parties who expressed confusion between
Sarieddine's Alien Vape Marks and Smok's Alien Kit Marks, it is not credible that
Smok does not have a single similar inquiry from consumers.

Plaintiff asks that Smok search for and produce documents responsive to
RFP No. 12 within two weeks of the hearing on this motion

**SMOK'S POSITION:**

Smok has searched for but not located any non-privileged documents
responsive to this request.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents constituting or concerning Communications in which SMOK
asserted rights in any of SMOK's Alien Kit Marks, including any cease and desist
letters.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Smok objects to this Request on the grounds that it is overbroad, unduly
burdensome, and not proportional to the needs of the case because it seeks
documents unrelated to the assertion of trademark rights inside the United States.
Smok will not search for or produce documents constituting or concerning
communications in which Smok asserted rights in any of Smok's Alien Kit Marks
outside the United States. Smok further objects to this Request on the grounds that
it seeks document protected by the attorney-client privilege or the attorney work
product doctrine. Smok will produce non-privileged documents—if any—

constituting or concerning communications in which Smok asserted rights in any of Smok's Alien Kit Marks in the United States.

**PLAINTIFF'S POSITION:**

This Request seeks evidence regarding SMOK's efforts to enforce its Alien Kit Marks, which is relevant to Smok's counterclaim for a declaratory judgment that it has not infringed Plaintiff's trademarks. *See* Dkt. 184. Evidence bearing on the enforceability of Smok's Alien Kit Marks (or lack thereof) is also relevant to Plaintiff's Lanham Act and breach of contract claims.

Given their relevance, Smok's refusal to search for or produce any documents in which Smok asserted rights in its Alien Kit Marks outside the United States is improper. As previously explained, Plaintiff's claims are not limited to products sold by Smok within the United States. The settlement agreement between Plaintiff and Smok applied "worldwide." *See* Plaintiff's First Amended Complaint, Ex. 1 (Dkt. 165-1). Moreover, Plaintiff's Lanham Act claims are not limited to trademark infringement that occurred within the United States, and this Court has not issued any orders limiting Plaintiff's Lanham Act claims to Smok's U.S. sales. Plaintiff therefore requests that Smok withdraw this objection and produce documents and communications in which Smok asserted rights in any of its Alien Kit Marks anywhere in the world, including but not limited to the United States.

Plaintiff also requests that Smok produce documents and communications in which Smok asserted rights in any of its "Alien Kit Marks," which include Smok's Alien Kit, Alien Baby, AL85, Alien 2, AL220, and AL230 products. In its General Objections, Smok objected to the phrase "Alien Kit Marks" and restricted the definition of this phrase to products named "Alien" or "AL85" only. Smok's objections are improper because Plaintiff's claims are not limited to products named "Alien" or "AL85," and evidence demonstrates that Smok sold products under the other Alien Kit Marks. McConnell Decl., ¶¶ 28-30.

Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 13 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").

**REQUEST FOR PRODUCTION NO. 14:**

All Documents transferring, conveying, licensing, or assigning any rights in any of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to trademark rights in the United States. Smok will not search for or produce documents transferring, conveying, licensing, or assigning rights in any of Smok's Alien Kit Marks outside the United States. Smok will produce non-privileged documents—if any—transferring, conveying, licensing, or assigning any rights in any of Smok's Alien Kit Marks in the United States.

**PLAINTIFF'S POSITION:**

This Request seeks documents regarding licenses, assignments, and other conveyances of rights in Smok's Alien Kit Marks, which relate to the validity and enforceability of these marks. Evidence regarding the enforceability of Smok's Alien Kit Marks is relevant to Smok's counterclaim for a declaratory judgment that it has not infringed Plaintiff's trademarks (Dkt. 184), as well as Plaintiff's Lanham Act and breach of contract claims.

Smok's refusal to search for documents regarding Smok's conveyance of

rights in its Alien Kit Marks outside the United States is improper.  As previously explained, Plaintiff's claims are not limited to products sold by Smok within the United States.  Smok's objection to producing documents regarding all "Alien Kit Marks" is similarly baseless because Plaintiff's claims include all of these marks, and evidence demonstrates that Smok sold products under the Alien Kit Marks. McConnell Decl., ¶¶ 28-30.

Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 14 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").

**REQUEST FOR PRODUCTION NO. 15:**

All Documents relating to any analysis or evaluation of SMOK's rights to the term "ALIEN" or any of SMOK's Alien Kit Marks for e-cigarette products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to trademark rights in the United States. Smok will not search for or produce documents relating to any analysis or evaluation of Smok's rights outside the United States to the term "ALIEN" or any of Smok's Alien Kit Marks for e-cigarette products. Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents—if any—relating to any analysis or evaluation of Smok's

rights in the United States to the term "ALIEN" or any of Smok's Alien Kit Marks for e-cigarette products.

**PLAINTIFF'S POSITION:**

This Request seeks documents regarding Smok's evaluation of its rights to use the Alien Kit Marks, which are relevant to Plaintiff's claim that Smok willfully infringed Plaintiff's Alien Vape trademarks.  *See* First Amended Complaint (Dkt. 165) at ¶¶ 10, 72, 104.  The documents sought by this Request are also relevant to Plaintiff's breach of contract claim, which alleges that Smok used the Alien Kit Marks in violation of the settlement agreement.

Given the relevance of these documents, Smok's refusal to search for documents regarding Smok's rights to use the Alien Kit Marks outside the United States is improper.  As previously explained, Plaintiff's claims are not limited to products sold by Smok within the United States.  Smok's objection to producing documents regarding all "Alien Kit Marks" is similarly baseless because Plaintiff's claims include all of these marks, and evidence demonstrates that Smok sold products under the Alien Kit Marks.  McConnell Decl., ¶¶ 28-30.

Plaintiff therefore asks that Smok withdraw its objections and produce all documents that are responsive to RFP No. 15 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").

**REQUEST FOR PRODUCTION NO. 16:**

All Documents concerning or relating to any contention that SMOK does not infringe Sarieddine's trademark rights.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Smok objects to this request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks to force Smok's counsel to make legal determinations and (2) the phrase "any contention" includes contentions not made by Smok. Smok will not search for or produce any documents related to a contention that Smok does not intend to make. Smok further objects to this Request on the grounds that it seeks document protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents—if any—concerning or relating to any contention Smok intends to make that Smok does not infringe Sarieddine's trademark rights.

**PLAINTIFF'S POSITION:**

Smok has not produced all documents within its possession, custody, or control that are responsive to this Request.  Smok produced a limited volume of responsive documents, primarily consisting of advertisements for Plaintiff's products, documents from the USPTO website regarding Plaintiff's trademarks, and documents downloaded from PACER.  It is not credible that the documents regarding SMOK's contention that it has not infringed Sarieddine's trademark rights are limited to advertisements and publicly available documents.  Smok has not produced any internal emails and few company documents.  Nor has Smok produced documents regarding its affirmative defenses (*see, e.g.,* RFP Nos. 52-54 and 81, discussed *infra*).  Plaintiff therefore requests that Smok produce all documents that are responsive to this Request within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Sarieddine's characterization of Smok's production in response to this request ignores the many documents Smok produced that show widespread third-party use of the word "alien" in connection with alternative smoking goods and

services, both generically (for a type of wire or coil used in vaporizers) and as part of a trademark or service mark.

Finally, in the interest of brevity, Smok incorporates paragraph 2 (regarding internal documents) of Smok's Omnibus Position Regarding Document Requests.

## REQUEST FOR PRODUCTION NO. 17:

All Documents relating to any similarity between any of Sarieddine's Alien Vape Marks and any of SMOK's Alien Kit Marks.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

Smok objects to this request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks to force Smok's counsel to make legal determinations and (2) the broad definition of "relating to" makes this request encompass every document that refers in any way to one of Sarieddine's Alien Vape Marks or Smok's Alien Kit Marks. Smok will not search for or produce documents that do not discuss the similarity or lack thereof between any of Sarieddine's Alien Vape Marks and any of Smok's Alien Kit Marks. Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the work product doctrine, or the common interest privilege. Smok will produce non-privileged documents—if any—that discuss any similarity or lack thereof between any of Sarieddine's Alien Vape Marks and any of Smok's Alien Kit Marks.

## PLAINTIFF'S POSITION:

This Request seeks documents regarding the similarities between Plaintiff's trademarks and Smok's Alien Kit Marks, which are essential to Plaintiff's trademark infringement and Lanham Act claims. Smok has not produced any documents that are responsive to this Request. None of Smok's asserted objections permit Smok to withhold relevant, non-privileged documents or limit Smok's obligation to conduct a reasonable search for responsive documents. Smok should

withdraw these improper objections and produce all responsive documents within two weeks of the hearing on this Motion.

**SMOK'S POSITION:**

Smok's limitation of this document request is reasonable. Sarieddine's First Set of Document Requests defined "relating to" as "broadly construed as meaning pertaining to, referring to, embodying, reflecting, mentioning, requesting, discussing, describing, analyzing, regarding, showing, identifying, evidencing, constituting, comprising, or connected with a stated subject matter." Under that broad definition, any document showing any of the marks in question would be responsive because such a document would be "connected with [the] stated subject matter."

Smok's search for documents that discuss any similarity or lack thereof between any of Sarieddine's Alien Vape Marks and any of Smok's Alien Kit Marks is ongoing.

**REQUEST FOR PRODUCTION NO. 18:**

All manufacturing and distribution agreements relating to any goods bearing any of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Smok objects to this Request on the grounds that it seeks documents that are not relevant to the claims or defenses in this case and on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks financial documents that have no bearing on this action and (2) it seeks documents related to goods bearing Smok's Alien Kit Marks outside the United States.

**PLAINTIFF'S POSITION:**

Smok's blanket refusal to produce any documents in response to this Request is improper.  Smok's distribution agreements are especially relevant to this case,

given that ten of the defendants are Smok's distributors.  Such documents are likely to contain information regarding the distribution of Smok's "Alien Baby" vaporizer, which is central to Plaintiff's trademark infringement and breach of contract claims against Smok, as well as its Lanham Act and business tort claims against the Distributor Defendants.  Moreover, Smok has offered various third parties certain distribution rights and related perks in exchange for third parties' cooperation in trying to invalidate Plaintiff's trademarks. Such distribution agreements with third parties are therefore relevant to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing against Smok, as well as Plaintiff's intentional interference with contractual relations claim against the Distributor Defendants.

Moreover, Smok should not withhold any responsive documents simply because they concern sales of Smok's Alien-branded vaporizers outside of the United States. As previously explained, information regarding Smok's trademark infringement outside of the United States is relevant to Plaintiff's Lanham Act and breach of contract claims. Plaintiff therefore requests that Smok search for and produce documents responsive to this Request within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

As a compromise position, Smok has agreed to produce any distribution agreements between Smok and Distributor Defendants. Smok has hundreds of distributors in the United States (and many more worldwide). Production of every distribution agreement would be burdensome and not proportional to the needs of this case. Sarieddine offers no support (much less persuasive evidence) for his assertion that Smok offered third parties distribution rights and perks in exchange for cooperation in trying to invalidate Sarieddine's trademarks.

Finally, in the interest of brevity, Smok hereby incorporates paragraphs 3-4 (regarding trademark use outside of the United States) of Smok's Omnibus Position

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

1  Regarding Document Requests.

2

3  **REQUEST FOR PRODUCTION NO. 19:**

4      All Documents concerning or relating to the strength of any of Sarieddine's

5  Alien Vape Marks or SMOK's Alien Kit Marks.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

7      Smok objects to this Request on the grounds that it is overbroad, unduly

8  burdensome, and not proportional to the needs of the case because (1) it seeks to

9  force Smok's counsel to make legal determinations, (2) it seeks documents equally

10  available to Sarieddine, and (3) the broad definitions of "concerning" and "relating

11  to" make this request encompass every document that refers in any way to one of

12  Sarieddine's Alien Vape Marks or Smok's Alien Kit Marks. Smok will not search

13  for or produce documents that do not discuss the strength of any of Sarieddine's

14  Alien Vape Marks or Smok's Alien Kit Marks. Smok further objects to this Request

15  on the grounds that it seeks documents protected by the attorney-client privilege,

16  the attorney work product doctrine, or the common interest privilege. Smok will

17  produce non-privileged documents—if any—that discuss the strength of any of

18  Sarieddine's Alien Vape Marks or Smok's Alien Kit Marks.

19  **PLAINTIFF'S POSITION:**

20      Smok has not produced all documents within its possession, custody, or

21  control that are responsive to this Request.  Smok produced a limited volume of

22  responsive documents, primarily consisting of advertisements for Plaintiff's

23  products, documents from the USPTO website regarding Plaintiff's trademarks, and

24  documents downloaded from PACER.  It is not credible that Smok's documents

25  regarding the strength of Plaintiff's trademarks and Smok's Alien Kit Marks are

26  limited to these advertisements and publicly available documents.  Smok has not

27  produced any internal emails and has produced few company documents.  Nor has

28  Smok produced documents regarding its affirmative defenses (*see, e.g.,* RFP Nos.

52-54 and 81, discussed *infra*).  Plaintiff therefore reasonably expects that Smok has additional responsive documents in its possession, custody, or control, which it has chosen not to produce.

To the extent that Smok has withheld documents based on its asserted objections, Smok should produce those documents immediately.  Smok's objection that this Request "encompass[es] every document that refers in any way to one of Sarieddine's Alien Vape Marks or Smok's Alien Kit Marks" is unfounded. Plaintiff specifically defined what Plaintiff meant by the "strength" of trademarks in a letter to Defendants, dated November 28, 2017.  McConnell Decl., ¶ 7, Ex. 5. Smok therefore cannot claim that it does not understand the scope of this Request.

Plaintiff requests that Smok produce all documents that are responsive to this Request within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Sarieddine's November 28, 2018 letter states that "this request asks for documents that discuss the distinctiveness and marketplace recognition of Sarieddine's Mark, as well as documents that discuss the distinctiveness and marketplace recognition of Smok's Alien Kit Marks." McConnell Decl., ¶ 7, Ex. 5 (note that the letter erroneously refers to this RFP as "No. 14"). In effect, Sarieddine seeks documents that discuss the strength of any of Sarieddine's Alien Vape Marks or Smok's Alien Kit Marks. This narrowed scope matches the documents that Smok stated it would produce, if located.

Smok's search for non-privileged documents responsive to the narrowed request is ongoing.

Nonetheless, Smok has produced many documents related to the commercial strength of Sarieddine's ALIEN VAPE marks, showing widespread third-party use of the word "alien" in connection with alternative smoking goods and services, both generically (for a type of wire or coil used in vaporizers) and as part of a trademark or service mark.

Finally, in the interest of brevity, Smok incorporates paragraph 2 (regarding internal documents) of Smok's Omnibus Position Regarding Document Requests).

## REQUEST FOR PRODUCTION NO. 20:

All Documents concerning or relating to the scope of SMOK's rights in any ALIEN mark for any e-cigarette products.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 20:

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, vague and not proportional to the needs of the case because (1) it seeks documents unrelated to trademark rights in the United States and (2) it seeks to force Smok's counsel to make legal determinations. Smok will not search for or produce documents concerning or relating to the scope of Smok's rights outside the United States in any ALIEN mark for e-cigarette products. Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok further objects on the grounds that the term ALIEN marks is vague.   Smok will produce non-privileged documents—if any—concerning or relating to the scope of Smok's rights in Smok Alien Kit for vaporizers.

## PLAINTIFF'S POSITION:

This Request seeks documents regarding the scope of Smok's rights to use any "Alien" mark for e-cigarette products, which are relevant to Plaintiff's claim that Smok willfully infringed Plaintiff's Alien Vape trademarks. *See* First Amended Complaint (Dkt. 165) at ¶¶ 10, 72, 104.  The documents sought by this Request are also relevant to Plaintiff's breach of contract claim, which alleges that Smok willfully used the Alien Kit Marks in violation of the settlement agreement.

Smok's refusal to search for documents regarding Smok's rights to use "Alien" marks on e-cigarette products outside the United States is improper.  As

previously explained, Plaintiff's claims are not limited to products sold by Smok within the United States.  The settlement agreement between Plaintiff and Smok, applied worldwide, and this Court has not issued any orders limiting Plaintiff's claims to Smok's U.S. sales.  Plaintiff therefore requests that Smok withdraw its objections and produce documents regarding the scope of Smok's rights in any ALIEN mark for e-cigarette products anywhere in the world within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok hereby incorporates paragraphs 3-4 (regarding trademark use outside the United States) of Smok's Omnibus Position Regarding Document Requests.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents and Communications between or among SMOK and any third party concerning any disputes (including, without limitation, actual or threatened litigation raised by SMOK or any third-party on SMOK's behalf) concerning any of SMOK's Alien Kit marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to trademark rights in the United States. Smok will not search for or produce any documents or communications between or among Smok and any third party concerning any disputes outside the United States concerning any of Smok's Alien Kit Marks. Smok further objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest doctrine. Smok will produce non-privileged documents and communications—if any— concerning any disputes in the United States concerning any of Smok's Alien Kit Marks.

**PLAINTIFF'S POSITION:**

This Request seeks Smok's internal documents and communications regarding disputes over its Alien Kit Marks, as well as communications with third parties on this topic.  These documents relate to the validity of Smok's Alien Kit Marks and Smok's enforce its rights in these marks, which are relevant to Smok's counterclaims.  Smok's communications with third parties on this subject are also relevant to Plaintiff's breach of contract claim, which alleges that Smok worked with third parties to challenge Plaintiff's Alien Vape marks by, *inter alia*, filing a trademark application for Smok Alien Kit.

Smok has produced almost no documents in response to this Request.  Smok has not produce a single internal communication regarding its Alien Kit Marks and produced very few communications with third parties on this subject.  It is not credible that Smok, a major public company, does not have any internal documents or communications regarding a dispute over its Alien Kit Marks, especially when much of the dispute was negotiated and resolved apparently before Smok engaged any counsel. Additionally, Plaintiff has evidence that Smok discussed this lawsuit with third parties.  McConnell Decl., ¶¶ 23-24, Exs. 13-14.  Therefore, Plaintiff has reason to believe that Smok has additional responsive documents within its possession, custody, or control that it has withheld from production.

To the extent that Smok has withheld documents based on the objections it asserted in response to this Request, Smok should withdraw those objections and produce all responsive documents.  As previously explained, Smok's objection to producing documents regarding its use of the Alien Kit Marks outside of the United States is improper because Plaintiff's claims are not limited to products sold within the United States. Smok's refusal to produce documents regarding all the Alien Kit Marks is likewise improper because Plaintiff's claims broadly include all products are confusingly similar to the "Alien" name.

Furthermore, given the Court's recent order denying Big Bang's request to

consolidate its case with the case against Smok, Smok should not withhold

responsive communications with Big Bang on privilege grounds.  *See* Case No.

Case 2:17-cv-00989-DSF-SK, Dkt. 71.  As the Court noted, the differences

between Plaintiff's cases against Smok and Big Bang include "different defendants,

different products in different geographic markets, and different time periods."  *Id.*

Because of these significant differences, Smok and Big Bang are not pursuing a

joint legal strategy, and most, if not all, communications with Big Bang would not

fall within the purview of the common interest privilege.  *See, e.g., Nidec Corp. v.*

*Victor Co.,* 249 F.R.D. 575, 579 (N.D. Cal. 2007) (noting that the common interest

privilege applies only to communications made in the course of "formulating

a *common legal strategy"* or otherwise furthering the parties' joint interest in a

lawsuit).

Plaintiff therefore asks that Smok withdraw these objections and produce all

documents that are responsive to RFP No. 21 within two weeks of the hearing on

this motion.

## SMOK'S POSITION:

Sarieddine's position regarding the common-interest privilege between Smok

and Big Bang is incorrect. While the two cases were not consolidated, there is

undisputed overlap between the cases with respect to a number of issues, including

the scope of protection for Sarieddine's ALIEN VAPE marks. Sarieddine's

implication that most communications Smok and Big Bang (including their

respective attorneys) would cover areas where the cases do not overlap is dubious.

Smok is entitled to withhold communications between its counsel and Big Bang's

by virtue of the common-interest privilege.

Finally, in the interest of brevity, Smok incorporates the following

paragraphs from Smok's Omnibus Position Regarding Document Requests: 2

(regarding internal documents); 3-4 (regarding trademark use outside the United

States); 5 (regarding the definition of "Alien Kit Marks); and 9 (regarding third-

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

1  party communications).

2

3  **REQUEST FOR PRODUCTION NO. 22:**

4      Documents sufficient to identify all goods or services that have ever been

5  offered, sold, or certified under any of SMOK's Alien Kit Marks.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

7      Smok objects to this Request on the grounds that it is overbroad, unduly

8  burdensome, and not proportional to the needs of the case because it seeks

9  documents unrelated to trademark use in the United States. Smok will not search

10  for or produce documents sufficient to identify goods or services that have been

11  offered, sold, or certified outside the United States under any of Smok's Alien Kit

12  Marks.  Smok will produce non-privileged documents—if any—sufficient to

13  identify all goods or services that have ever been offered, sold, or certified in the

14  United States under any of Smok's Alien Kit Marks.

15  **PLAINTIFF'S POSITION:**

16      This Request seeks documents regarding Smok's sale of products under the

17  Alien Kit Marks, which are relevant to Plaintiff's Lanham Act claims and damages.

18  These documents are also relevant to Plaintiff's breach of contract claims, which

19  prohibit Smok from selling, or offering for sale, any products under the Alien Kit

20  Marks without Plaintiff's consent.

21      Given the relevance of these documents, Smok's blanket refusal to search for

22  or produce any documents regarding Smok's use of its Alien Kit Marks on e-

23  cigarette products outside the United States is improper.  As previously explained,

24  Plaintiff's claims are not limited to products sold within the United States.  This

25  case concerns *all* Smok products sold under the "Alien" name and other

26  "confusingly similar" names anywhere in the world.  *See* First Amended Complaint

27  (Dkt. 165) at ¶¶ 10, 44, 72.  Plaintiff therefore asks that Smok withdraw the

28  foregoing objections and produce all documents that are responsive to RFP No. 22

within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").

**REQUEST FOR PRODUCTION NO. 23:**

Documents sufficient to identify all channels of trade used by SMOK for any goods or services offered under any of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to trademark use in the United States. Smok will not search for or produce documents sufficient to identify channels of trade outside the United States used by Smok for any goods or services offered under any of Smok's Alien Kit Marks. Smok will produce non-privileged documents—if any—sufficient to identify all channels of trade in the United States used by Smok for any goods or services offered under any of Smok's Alien Kit Marks.

**PLAINTIFF'S POSITION:**

This Request seeks documents regarding the channels of trade (stores, websites, etc.) that Smok used to sell products under the infringing "Alien Kit Marks." These documents are relevant to Plaintiff's Lanham Act claims and damages, as well as Plaintiff's breach of contract claims against Smok, which prohibit Smok from selling, or offering for sale, any products under the Alien Kit Marks without Plaintiff's consent.

Smok's refusal to search for or produce any documents regarding any "channels of trade" that it used to sell infringing products outside of the United

States is improper.  Excluding these documents from production has the effect of grossly distorting the number of infringing products that Smok sold.  As previously explained, Plaintiff's claims are not limited to products named "Alien" sold within the United States.  This case concerns *all* Smok products sold under the "Alien" name and other "confusingly similar" names anywhere in the world.  *See* First Amended Complaint (Dkt. 165) at ¶¶ 10, 44, 72.

Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 23 within two weeks of the hearing on this motion

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").

**REQUEST FOR PRODUCTION NO. 25:**

One sample of each e-cigarette product to which each of SMOK's Alien Kit Marks have been affixed, whether on the product itself or on the product's packaging.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks items unrelated to trademark use in the United States. Smok will not search for or produce samples of e-cigarette products sold exclusively outside the United States. Smok will produce one sample photo—if any—of each e-cigarette product to which each of Smok's Alien Kit Marks have been affixed in the United States.

**PLAINTIFF'S POSITION:**

RFP No. 25 requests a physical sample of every e-cigarette product that has

displayed any of Smok's Alien Kit Marks.  This includes products that have been discontinued or are no longer being sold.  Smok has not produced any physical samples of its products, even though Plaintiff provided physical samples of its products months ago.

During the parties' meet and confer session on March 5, 2018, Smok agreed to provide physical samples of products specifically named "Alien" only. McConnell Decl., ¶ 21.  This limitation is improper.  As previously explained, the infringing products at issue include all products sold under the "Alien Kit Marks," not just products named "Alien."  Plaintiff therefore asks that Smok produce a physical sample of every version of each product that has been sold under any of the "Alien Kit Marks," anywhere in the world within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").


**REQUEST FOR PRODUCTION NO. 26:**

All Documents and Communications between or among SMOK and any third party concerning this Action or any disputes in this Action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Smok objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the work product doctrine, or the common interest privilege. Smok will produce non-privileged documents and communications—if any— between or among Smok and any third party concerning this Action or any disputes in this Action.

1

**PLAINTIFF'S POSITION:**

2

    This Request seeks Smok's internal documents and communications

3

regarding any issues in this lawsuit, as well as communications with third parties on

4

this topic.  These documents and communications are relevant to Plaintiff's claims

5

for breach of contract and breach of the implied covenant of good faith and fair

6

dealing, which allege that Smok worked with third parties to challenge Plaintiff's

7

Alien Vape marks.

8

    Smok has produced almost no documents in response to this Request.  Smok

9

has not produce a single internal communication regarding this lawsuit and

10

produced very few communications with third parties on this subject.  It is not

11

credible that Smok does not have any internal documents or communications

12

regarding this lawsuit.  The few documents that Smok has produced demonstrate

13

that Smok has communicated with third parties, including Big Bang, regarding the

14

claims in this lawsuit.  McConnell Decl., ¶ 23, Ex. 13.  Plaintiff is also aware that

15

Smok has communicated with Vapor World, a former Smok distributor, about this

16

lawsuit.  *Id*., ¶ 24, Ex. 14.

17

    During the parties' meet and confer session on March 5, 2018, Smok

18

revealed for the first time that it has "no written record" of these missing third-party

19

communications.  *Id*., ¶ 22.  However, documents produced in this lawsuit

20

demonstrate Smok employees tend to use email, WeChat, and Skype to

21

communicate with individuals outside the company.  *Id*. ¶ 23, Ex. 13.  This is

22

consistent with Plaintiff's own experience, as the vast majority of Plaintiff's

23

communications with Smok occurred through these means.  *Id*., ¶ 23.  Plaintiff

24

therefore expects that there are additional responsive communications that have not

25

been produced.

26

    Furthermore, given the Court's recent order denying Big Bang's request to

27

consolidate its case with the case against Smok, Smok should not withhold

28

responsive communications with Big Bang on privilege grounds.  *See* Case No.

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

1   Case 2:17-cv-00989-DSF-SK, Dkt. 71.  As the Court noted, the differences

2   between Plaintiff's cases against Smok and Big Bang include "different defendants,

3   different products in different geographic markets, and different time periods."  *Id*.

4   Because of these significant differences, Smok and Big Bang are not pursuing a

5   joint legal strategy, and most, if not all, communications with Big Bang would not

6   fall within the purview of the common interest privilege.  *See, e.g., Nidec Corp. v.*

7   *Victor Co.,* 249 F.R.D. 575, 579 (N.D. Cal. 2007) (noting that the common interest

8   privilege applies only to communications made in the course of "formulating

9   a *common legal strategy"* or otherwise furthering the parties' joint interest in a

10   lawsuit).

11      To the extent that Smok has withheld responsive communications on

12   privilege grounds, including on joint defense or common interest privilege grounds,

13   Smok must provide a privilege log.  In accordance with the instructions provided in

14   Plaintiff's discovery requests, this privilege log should include the following

15   information: (a) the date of the communication; (b) the subject matter of the

16   communication; (c) the names, addresses, job titles, and employers of all persons

17   with knowledge or a copy of the information, and (d) the nature of the privilege

18   asserted.

19      Plaintiff requests that Smok produce documents and communications that are

20   responsive to RFP No. 26 within two weeks of the hearing on this motion.

21   **SMOK'S POSITION:**

22      Sarieddine's position regarding the common-interest privilege between Smok

23   and Big Bang is incorrect. While the two cases were not consolidated, there is

24   undisputed overlap between the cases with respect to a number of issues, including

25   the scope of protection for Sarieddine's ALIEN VAPE marks. Sarieddine's

26   implication that most communications Smok and Big Bang (including their

27   respective attorneys) would cover areas where the cases do not overlap is dubious.

28   Smok is entitled to withhold communications between its counsel and Big Bang's

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

1  by virtue of the common-interest privilege.

2       Finally, in the interest of brevity, Smok incorporates the following

3  paragraphs from Smok's Omnibus Position Regarding Document Requests: 2

4  (regarding internal documents); 9 (regarding third-party communications); and 12

5  (regarding a privilege log).

6

7  **REQUEST FOR PRODUCTION NO. 27:**

8       Documents related to choosing any names for products bearing SMOK's

9  Alien Kit Marks.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

11       Smok objects to this Request on the grounds that it is overbroad, unduly

12  burdensome, and not proportional to the needs of the case because it seeks

13  documents unrelated to trademark use in the United States. Smok will not search

14  for or produce documents related to choosing names for products bearing Smok's

15  Alien Kit Marks outside the United States. Smok further objects to this Request on

16  the grounds that it seeks documents protected by the attorney-client privilege, the

17  attorney work product doctrine, or the common interest privilege. Smok will

18  produce non-privileged documents—if any—related to choosing any names for

19  products bearing Smok's Alien Kit Marks in the United States.

20  **PLAINTIFF'S POSITION:**

21       Smok has not produced a single document in response to this Request.

22  Plaintiff reasonably expects that Smok, a multinational public company that is one

23  of the most successful e-cigarette companies in the world, has documents

24  explaining how and why it chose to use the name of its company's bestselling

25  product.  Smok should produce those documents, which are relevant to Plaintiff's

26  claim that Smok willfully infringed Plaintiff's Alien Vape trademarks.  Plaintiff has

27  alleged that Smok adopted the "Alien Kit" name for its vaporizer with full

28  knowledge of Plaintiff's Alien Vape products and superior trademark rights.  *See*

First Amended Complaint (Dkt. 165) at ¶¶ 10, 72, 104.  Furthermore, Plaintiff has produced its own documents showing that Smok knew about its trademark and showed in interest in its mark in the months before Smok announced its first "Alien" product.

The documents sought by this Request are also relevant to Plaintiff's breach of contract claim, which alleges that Smok used the Alien Kit Marks in violation of the settlement agreement.

Like its responses to numerous other RFPs, Smok has unjustifiably limited its response to RFP No. 27 to products sold only within the United States and also to products specifically named "AL85" or "Alien."  As previously explained, these limitations are unacceptable because Plaintiff's claims are not limited to products sold within the United States and because Plaintiff's claims encompass all the "Alien Kit Marks," not just products named "AL85" or "Alien."  Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 27 within two weeks of the hearing on this motion.

**<u>SMOK'S POSITION:</u>**

Smok's search for non-privileged documents responsive to this request is ongoing.

Finally, in the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").


**<u>REQUEST FOR PRODUCTION NO. 28:</u>**

All Communications with any third parties selling electronic cigarette products that include the term "Alien" in the product name relating to any attempt to purchase, assign, or license any common law or registered trademark rights.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks communications unrelated to trademark rights in the United States. Smok will not search for or produce communications with any third parties selling electronic cigarette products outside the United States that include the term "Alien" in the product name relating to any attempt to purchase, assign, or license any common law or registered trademark rights. Smok will produce non-privileged communications—if any—with any third parties selling electronic cigarette products in the United States that include the term "Alien" in the product name relating to any attempt to purchase, assign, or license any common law or registered trademark rights.

**PLAINTIFF'S POSITION:**

Smok has not produced a single document in response to this Request. Documents regarding Smok's efforts to purchase, assign, or license any common law or registered trademark rights in "Alien" e-cigarette products are relevant to Plaintiff's claim that Smok willfully infringed Plaintiff's Alien Vape trademarks. These documents are also relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing, which allege that Smok worked with third parties to try to invalidate and otherwise challenge Plaintiff's Alien Vape marks.

Like its responses to numerous other RFPs, Smok has unjustifiably limited its response to RFP No. 28 to products sold only within the United States.  As previously explained, this limitation is unacceptable because Plaintiff's claims are not limited to products sold within the United States.  Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 28 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok hereby incorporates paragraphs 3-4 (regarding trademark use outside the United States) of Smok's Omnibus Position Regarding Document Requests.

**REQUEST FOR PRODUCTION NO. 32:**

One representative sample of each e-mail promotion that SMOK has sent to any of its marketing lists that advertises goods offered under any of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to trademark use in the United States. Smok will not search for or produce email promotions that were not sent to recipients in the United States.  Smok will produce one representative sample—if any—of each email promotion that Smok has sent to any of its marketing lists in the United States that advertised goods offered under any of Smok's Alien Kit Marks

**PLAINTIFF'S POSITION:**

This Request seeks samples of Smok's email promotions for its infringing products, which are indisputably relevant to Plaintiff's Lanham Act and breach of contract claims. Smok has produced some documents but improperly limited the scope of responsive materials to marketing lists in the United States and to products specifically named "AL85" or "Alien."  As previously explained, these limitations are unacceptable because Plaintiff's claims are not limited to products sold within the United States and because Plaintiff's claims encompass all the "Alien Kit Marks," not just products named "AL85" or "Alien."  Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 32 within two weeks of the hearing on this motion

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States) and 5 (regarding the definition of "Alien Kit Marks").

**REQUEST FOR PRODUCTION NO. 34:**

All Documents concerning the type of person or entity to which SMOK's goods are sold or marketed or intended to be sold or marketed, including, without limitation, the person or entity's demographics (e.g., geographic location, age, profession, education, and income).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents unrelated to consumers in the United States. Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok further objects to this Request on the grounds that "type of person" and "type of entity" are vague and ambiguous.

Smok will produce non-privileged documents—if any—concerning the type of person or entity to which Smok's goods are sold or marketed or intended to be sold or marketed in the United States.

**PLAINTIFF'S POSITION:**

Smok has not produced a single document in response to this Request. Documents responsive to RFP No. 34 contain information that is relevant to the customer confusion inquiry, which will be used to determine whether Defendants are liable for trademark infringement.  It is not credible that a company as large and sophisticated as Smok does not have a single document or communication

regarding its customer base, or efforts to market its products to a certain demographic.  Smok should produce these relevant documents.

Like its responses to numerous other RFPs, Smok has unjustifiably limited its response to RFP No. 34 to products sold only within the United States.  As previously explained, this limitation is unacceptable because Plaintiff's claims are not limited to products sold within the United States.  Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 34 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok's search for non-privileged documents responsive to this request is ongoing.

Finally, in the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 2 (regarding internal documents) and 3-4 (regarding trademark use outside the United States).

**REQUEST FOR PRODUCTION NO. 35:**

Documents sufficient to show SMOK's advertising and promotional expenditure for all goods bearing any of Smok's Alien Kit Marks on a monthly basis.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents related to trademark use outside the United States. Smok will not search for or produce documents showing Smok's advertising and promotional expenditure outside the United States. Smok will not produce any financial documents relating to its AL85 product on the grounds that Smok has never sold that or any product under the name "Alien Baby," and therefore any such

documents are irrelevant to this action.  Smok will produce non-privileged

documents—if any—sufficient to show Smok's advertising and promotional

expenditure for all goods bearing Smok's "Smok Alien" mark on a monthly basis.

**PLAINTIFF'S POSITION:**

Smok has not produced any documents regarding its advertising and

promotional expenditures for the infringing products at issue, except for

SMOK002406, an Excel spreadsheet summarizing Smok's revenue, profit, and

costs for its Alien Kit vaporizer.  The production of this spreadsheet, which appears

to have been created solely for this lawsuit, does not satisfy Smok's discovery

obligations for several reasons.  First, this spreadsheet is limited to sales in the

United States, which is improper because Plaintiff's claims against Smok are not

limited to U.S. sales.  In any event, Plaintiff is entitled to examine Smok's financial

documents regarding the sales of its infringing products worldwide to determine

whether Smok's claims regarding its U.S. sales are true.  *See, e.g., Wahoo Int'l, Inc.*

*v. Phix Doctor, Inc.,* No. 13cv1395-GPC (BLM), 2014 U.S. Dist. LEXIS 98044, at

\*20-21 (S.D. Cal. July 18, 2014) (plaintiff was entitled to underlying financial

documents to investigate defendant's sales numbers where defendant only produced

an Excel spreadsheet reflecting total sales).

Second, summaries like SMOK002406 are not admissible.  Thus, if Smok

seeks to use any of the financial data on this spreadsheet as evidence in this case,

Smok is required to produce the documents underlying this summary.  *See, e.g., H-*

*D Mich., Inc. v. Bikers Dream, Inc.,* No. CV 97-864 SVW (CWx), 1998 U.S. Dist.

LEXIS 17259, at \*18 (C.D. Cal. July 28, 1998) ("A summary is not admissible

unless the records summarized have been made available to the opposing party.");

*Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516-17 (9th Cir. 1985) (a summary

is not admissible if it does not fairly represent the underlying documents and the

underlying documents have not been made available).

Third, the spreadsheet is improperly limited to Smok's "Alien" vaporizer,

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

even though infringing products in this lawsuit are not so limited. Smok has no basis for refusing to produce documents regarding its advertising and promotional expenditure for its other "Alien Kit Marks" products, given their relevance to this lawsuit and the fact that Smok's documents confirm that it sold products under the other Alien Kit Marks.  McConnell Decl., ¶¶ 28-29, Exs. 15-16.

To respond to RFP No. 35, Smok should produce its underlying accounting and financial documents that reflect Smok's advertising and promotional expenditure for all goods bearing any of Smok's Alien Kit Marks.  During the parties' meet and confer session on March 5, 2018, Smok stated that it would produce "some" underlying cost documents for the numbers in the Excel spreadsheet, but could not say whether these cost documents would include any advertising or promotional expenditures.  McConnell Decl., ¶ 33.  Given that Smok is a public company, Plaintiff expects that Smok has accounting documents and audit reports that show its monthly advertising and promotional expenditures on the products at issue.  Plaintiff requests that Smok produce these documents within two weeks of the hearing on this motion.

## SMOK'S POSITION:

Sarieddine's position ignores the fact that Smok has produced an additional internal document (bates-labeled SMOK001700) showing Smok's advertising and promotional expenditures.

Finally, in the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85 goods); and 8 (regarding Smok's financial document production).

## REQUEST FOR PRODUCTION NO. 36:

Documents sufficient to identify every retailer, distributor or vendor that sells

any goods bearing SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) goods bearing Smok's Alien Kit Marks are sold by thousands of retailers, distributors, and vendors in the United States, and such identification would not materially affect any claim or defense in this action; and (2) it seeks to identify retailers, distributors, and vendors outside the United States.

**PLAINTIFF'S POSITION:**

Smok has objected to producing documents responsive to this Request, claiming that it is "unduly burdensome" because goods bearing Smok's Alien Kit Marks are sold by thousands of retailers, distributors, and vendors in the United States." As a compromise, Plaintiff has offered to accept documents identifying Smok's top twenty distributors of products bearing Smok's Alien Kit Marks, measured by gross sales. Plaintiff expects that Smok has accounting or marketing documents that identify its highest grossing U.S. distributors of "Alien"-branded products and asks that Smok produce these documents within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok will produce a list of its top 20 distributors of SMOK ALIEN goods in the United States, measured by gross sales.

**REQUEST FOR PRODUCTION NO. 37:**

Each marketing plan SMOK has created since January 2016 that include goods that bear any of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks

documents unrelated to trademark use in the United States. Smok will not search for or produce marketing plans directed to markets outside the United States. Smok will produce marketing plans—if any—that it has created relating to the United States since January 2016 that include goods that bear any of Smok's Alien Kit Marks.

**PLAINTIFF'S POSITION:**

Smok has not produced a single document in response to this Request. Documents responsive to RFP No. 37 contain information that is relevant to the customer confusion inquiry, which will be used to determine whether Defendants are liable for trademark infringement.  It is not credible that a company as large and sophisticated as Smok does not any marketing plans for the infringing products at issue.  Smok should produce these relevant documents.

Like its responses to numerous other RFPs, Smok has unjustifiably limited its response to RFP No. 37 to products sold only within the United States and to products specifically named "Alien" or "AL85."  As previously explained, these limitations are unacceptable because Plaintiff's claims are not limited to products sold within the United States or products named "Alien" or "AL85."  Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 37 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Sarieddine's position ignores the fact that Smok has already produced several internal marketing documents. Smok' searched for additional non-privileged documents responsive to this request is ongoing.

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 2 (regarding internal documents); 3-4 (regarding trademark use outside the United States); and 5 (regarding the definition of "Alien Kit Marks").

1

2   **REQUEST FOR PRODUCTION NO. 38:**

3       All Documents related to the role that an e-liquid or vaporizer's name has in

4   a consumer's purchasing decision or in product sales.

5   **RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

6       Smok objects to this Request on the grounds that it is overbroad, unduly

7   burdensome, and not proportional to the needs of the case because it seeks

8   documents related to consumers and product sales outside the United States. Smok

9   will not search for or produce documents related to the role that an e-liquid or

10  vaporizer's name in a non-United-States consumer's purchasing decision or in

11  product sales outside the United States. Smok further objects to this Request on the

12  grounds that it seeks documents protected by the attorney-client privilege, the

13  attorney work product doctrine, or the common interest doctrine. Smok will

14  produce non-privileged documents—if any—related to the role that an e-liquid or

15  vaporizer's name has in a United States consumer's purchasing decision or in

16  product sales in the United States.

17  **PLAINTIFF'S POSITION:**

18      Smok has not produced a single document in response to this Request.

19  Documents responsive to RFP No. 38 contain information that is relevant to the

20  customer confusion inquiry, which will be used to determine whether Defendants

21  are liable for trademark infringement.  These documents are also relevant to

22  Plaintiff's claims that Smok willfully infringed its Alien Vape marks.  Plaintiff

23  reasonably expects that Smok, a multinational company making millions of dollars

24  annually in e-cigarette sales, has documents regarding the role that an e-liquid or

25  vaporizer's name has in a consumer's purchasing decision or in product sales.

26  Given their relevance, Smok should produce these documents.

27      Like its responses to numerous other RFPs, Smok has unjustifiably limited its

28  response to RFP No. 38 to products sold only within the United States.  As

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

previously explained, this limitation is unacceptable because Plaintiff's claims are not limited to products sold within the United States.  Plaintiff therefore asks that Smok withdraw the foregoing objections and produce all documents that are responsive to RFP No. 38 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok hereby incorporates the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 2 (regarding internal documents) and 3-4 (regarding trademark use outside the United States).

**REQUEST FOR PRODUCTION NO. 39:**

All internal Communications related to the Contract, Sarieddine, this Action, or the claims therein.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Smok objects to the Request as unduly burdensome and harassing to the extent it seeks internal Communications related to this Action or the claims therein. Smok will not search for or produce internal Communications related to this Action or the claims therein. Smok objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege or the attorney work product doctrine. Smok will produce non-privileged internal communications—if any— related to the purported "Contract" and Sarieddine.

**PLAINTIFF'S POSITION:**

Smok's blanket refusal to search for or produce *any* internal communications relating to this action is improper.  Not all internal communications are protected by the attorney-client privilege or the attorney work product doctrine.  Smok has been communicating with Plaintiff since August 2016, which is long before Smok retained counsel in this lawsuit. Furthermore, Smok's counsel went on the record during the preliminary injunction hearings to say that Smok negotiated the entire Settlement Agreement without any counsel from any lawyers and that they had just

recently been hired. Plaintiff therefore reasonably expects that there are internal communications, exchanged between Smok employees, regarding Plaintiff, the settlement agreement, and the claims in this lawsuit that are not privileged. Smok should search for and produce these responsive non-privileged documents.

To the extent that Smok has withheld responsive communications on privilege grounds, Smok must provide a privilege log.  In accordance with the instructions provided in Plaintiff's discovery requests, this privilege log should include the following information: (a) the date of the communication; (b) the subject matter of the communication; (c) the names, addresses, job titles, and employers of all persons with knowledge or a copy of the information, and (d) the nature of the privilege asserted.

Plaintiff requests that Smok produce all documents responsive to RFP No. 39, along with a privilege log if Smok has withheld any documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Sarieddine argues that Smok cannot object to producing internal communications related to this action because Smok negotiated the purported agreement with Sarieddine without legal counsel. But even if those negotiations resulted in internal written communications, such documents are covered by Sarieddine's request for internal communications related to "the Contract" or "Sarieddine." Sarieddine has not (and cannot) set forth any reasonable argument that he is entitled to Smok's internal communications regarding this lawsuit or his claims, especially separate and apart from the documents Smok has agreed to search for and produce (if located).

Finally, in the interest of brevity, Smok incorporates the following paragraphs from Smok's Omnibus Section Regarding Document Requests: 2 (regarding internal documents) and 12 (regarding a privilege log).

**REQUEST FOR PRODUCTION NO. 40:**

All internal Communications related to Sarieddine or Sarieddine's Alien Vape Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Smok objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege or the attorney work product doctrine. Smok will produce non-privileged internal communications—if any—related to Sarieddine or Sarieddine's Alien Vape Marks.

**PLAINTIFF'S POSITION:**

Smok has not produced a single document in response to this Request. Given that Plaintiff and Smok were in a contractual relationship and Smok employees have been communicating with Plaintiff since August 2016, Plaintiff reasonably expects that there are have been communications among Smok employees that mention either Plaintiff or his Alien Vape Marks. Plaintiff therefore requests that Smok search for and produce all internal communications that relate to Plaintiff or his trademarks.

To the extent that Smok has withheld responsive communications on privilege grounds, Smok must provide a privilege log. In accordance with the instructions provided in Plaintiff's discovery requests, this privilege log should include the following information: (a) the date of the communication; (b) the subject matter of the communication; (c) the names, addresses, job titles, and employers of all persons with knowledge or a copy of the information, and (d) the nature of the privilege asserted.

Plaintiff requests that Smok produce all documents responsive to RFP No. 40, along with a privilege log if Smok has withheld any documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok's search for non-privileged documents responsive to this request is

1   ongoing.

2       Finally, in the interest of brevity, Smok incorporates paragraph 12 (regarding

3   a privilege log) of Smok's Omnibus Position Regarding Document Requests.

4

5   **REQUEST FOR PRODUCTION NO. 41:**

6       All Documents related to SMOK's decision to discontinue purchasing

7   Sarieddine's Alien Vape e-liquid pursuant to Section 3.1.1 of the Contract.

8   **RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

9       Smok objects to this Request on the grounds that it seeks documents

10  protected by the attorney-client privilege, the attorney work product doctrine, or the

11  common interest privilege. Smok will produce non-privileged documents—if any—

12  related to its decision to discontinue purchasing Sarieddine's Alien Vape e-liquid.

13  **PLAINTIFF'S POSITION:**

14      Smok has not produced a single internal company document or

15  communication in response to this Request.  Plaintiff reasonably expects that Smok

16  has documents regarding its decision to discontinue purchasing Plaintiff's Alien

17  Vape e-liquid, which violated Section 3 of the Settlement Agreement.  As an

18  affirmative defense to Plaintiff's breach of contract claim, Smok alleged that it

19  stopped purchasing Plaintiff's e-liquid because it was prohibited from selling that e-

20  liquid under Chinese law.  Given that Smok has been raising this affirmative

21  defense for the past year, Smok must have at least some documents in its

22  possession, custody, or control regarding this defense.  These responsive documents

23  should be produced.

24      To the extent that Smok has withheld responsive communications on

25  privilege grounds, including on joint defense or common interest privilege grounds,

26  Smok must provide a privilege log.  In accordance with the instructions provided in

27  Plaintiff's discovery requests, this privilege log should include the following

28  information: (a) the date of the communication; (b) the subject matter of the

communication; (c) the names, addresses, job titles, and employers of all persons with knowledge or a copy of the information, and (d) the nature of the privilege asserted.

Plaintiff requests that Smok produce all documents responsive to RFP No. 41, along with a privilege log if Smok has withheld any documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok has located non-privileged documents responsive to this request, and will endeavor to produce them by March 30, 2018.

Finally, in the interest of brevity, Smok incorporates paragraph 12 (regarding a privilege log) of Smok's Omnibus Position Regarding Document Requests.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents related to SMOK's decision to discontinue advertising Sarieddine's Alien Vape e-liquid pursuant to Sections 3.1.2 through 3.1.7 of the Contract.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Smok objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents—if any—related to its decision to discontinue advertising Sarieddine's Alien Vape e-liquid.

**PLAINTIFF'S POSITION:**

Smok has not produced a single internal company document or communication in response to this Request.  Plaintiff reasonably expects that Smok has documents regarding its decision to discontinue advertising Plaintiff's Alien Vape e-liquid, which violated Section 3 of the Settlement Agreement.  As an affirmative defense to Plaintiff's breach of contract claim, Smok alleged that it stopped purchasing Plaintiff's e-liquid because it was prohibited from selling that e-

liquid under Chinese law.  Given that Smok has been raising this affirmative defense for the past year, Smok must have at least some documents in its possession, custody, or control regarding this defense.  These responsive documents should be produced.

To the extent that Smok has withheld responsive communications on privilege grounds, Smok must provide a privilege log.  In accordance with the instructions provided in Plaintiff's discovery requests, this privilege log should include the following information: (a) the date of the communication; (b) the subject matter of the communication; (c) the names, addresses, job titles, and employers of all persons with knowledge or a copy of the information, and (d) the nature of the privilege asserted.

Plaintiff requests that Smok produce all documents responsive to RFP No. 42, along with a privilege log if Smok has withheld any documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok has located non-privileged documents responsive to this request, and will endeavor to produce them by March 30, 2018.

Finally, in the interest of brevity, Smok incorporates paragraph 12 (regarding a privilege log) of Smok's Omnibus Position Regarding Document Requests.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents and Communications related to any communications with any third parties discussing challenging the validity or enforceability of the Alien Vape Marks dated before May 31, 2017.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Smok objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege.  Smok will produce non-

privileged documents and communications—if any— related to any communications with any third parties discussing challenging the validity or enforceability of the Alien Vape marks dated before May 31, 2017.

## PLAINTIFF'S POSITION:

This Request seeks Smok's communications with third parties regarding the validity of Plaintiff's Alien Vape Marks before May 31, 2017, which is when Smok purported to "terminate" the Settlement Agreement with Plaintiff.  These documents are relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Smok, which allege that Smok worked with third parties to challenge Plaintiff's Alien Vape Marks in violation of the Settlement Agreement.

Smok has not produced any documents in response to this Request. Plaintiff reasonably expects that Smok has communications with third parties that are responsive, especially given the admission of Smok's CEO in a message to Plaintiff that Smok is working with Big Bang to invalidate Plaintiff's marks.  McConnell Decl., ¶ 23, Ex. 13.

During the parties' meet and confer session on March 5, 2018, Smok revealed for the first time that it has "no written record" of these missing third-party communications.  *Id*., ¶ 22.  However, documents produced in this lawsuit demonstrate Smok employees tend to use email, WeChat, and Skype to communicate with individuals outside the company.  *Id*., ¶ 23, Ex. 13.  This is consistent with Plaintiff's own experience, as the vast majority of Plaintiff's communications with Smok occurred through these means.  *Id*., ¶ 23.  Plaintiff therefore expects that Smok has responsive communications with third parties in its possession, custody, or control.

Furthermore, given the Court's recent order denying Big Bang's request to consolidate its case with the case against Smok, Smok should not withhold

1   responsive communications with Big Bang on privilege grounds.  *See* Case No.

2   Case 2:17-cv-00989-DSF-SK, Dkt. 71.  As the Court noted, the differences

3   between Plaintiff's cases against Smok and Big Bang include "different defendants,

4   different products in different geographic markets, and different time periods."  *Id.*

5   Because of these significant differences, Smok and Big Bang are not pursuing a

6   joint legal strategy, and most, if not all, communications with Big Bang would not

7   fall within the purview of the common interest privilege.  *See, e.g., Nidec Corp. v.*

8   *Victor Co.,* 249 F.R.D. 575, 579 (N.D. Cal. 2007) (noting that the common interest

9   privilege applies only to communications made in the course of "formulating

10  a *common legal strategy"* or otherwise furthering the parties' joint interest in a

11  lawsuit).

12          To the extent that Smok has withheld any responsive communications on

13  privilege grounds, Smok must provide a privilege log.  In accordance with the

14  instructions provided in Plaintiff's discovery requests, this privilege log should

15  include the following information: (a) the date of the communication; (b) the

16  subject matter of the communication; (c) the names, addresses, job titles, and

17  employers of all persons with knowledge or a copy of the information, and (d) the

18  nature of the privilege asserted.

19          Plaintiff requests that Smok produce all documents responsive to RFP No.

20  44, along with a privilege log if Smok has withheld any documents, within two

21  weeks of the hearing on this motion.

22  **SMOK'S POSITION:**

23          Sarieddine's position regarding the common-interest privilege between Smok

24  and Big Bang is incorrect. While the two cases were not consolidated, there is

25  undisputed overlap between the cases with respect to a number of issues, including

26  the scope of protection for Sarieddine's ALIEN VAPE marks. Sarieddine's

27  implication that most communications Smok and Big Bang (including their

28  respective attorneys) would cover areas where the cases do not overlap is dubious.

Smok is entitled to withhold communications between its counsel and Big Bang's by virtue of the common-interest privilege.

Finally, in the interest of brevity, Smok incorporates the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 9 (regarding third-party communications) and 12 (regarding a privilege log).

**REQUEST FOR PRODUCTION NO. 45:**

All Documents and Communications related to SMOK supporting, aiding, or assisting any third party in contesting the validity or enforceability of the Alien Vape Marks before May 31, 2017.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Smok objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents and communications—if any— related to Smok supporting, aiding, or assisting any third party in contesting the validity or enforceability of the Alien Vape Marks before May 31, 2017.

**PLAINTIFF'S POSITION:**

This Request seeks Smok's communications with third parties regarding efforts to challenge the validity of Plaintiff's Alien Vape Marks.  Specifically, RFP No. 45 is focused on communications that occurred *before* May 31, 2017, which is when Smok announced that it was terminating the Settlement Agreement.  These communications are relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Smok, which allege that Smok worked with third parties to challenge Plaintiff's Alien Vape Marks in violation of the Settlement Agreement.

Smok has not produced any documents in response to this Request. Plaintiff reasonably expects that Smok has communications with third parties that are

responsive, especially given the admission of Smok's CEO in a message to Plaintiff that Smok is working with Big Bang to invalidate Plaintiff's marks. McConnell Decl., ¶ 23, Ex. 13.

During the parties' meet and confer session on March 5, 2018, Smok revealed for the first time that it has "no written record" of these missing third-party communications. *Id.*, ¶ 22. However, documents produced in this lawsuit, discussions with third parties, and Plaintiff's own interactions with Smok, demonstrate Smok employees virtually exclusively to use email, WeChat, and Skype to communicate with individuals outside the company. *Id.*, ¶ 23, Ex. 13. This is consistent with Plaintiff's own experience, as the vast majority of Plaintiff's communications with Smok occurred through these means. *Id.*, ¶ 23. This is also consistent with the fact that Smok is a Chinese company and phone calls or in-person meetings do not make sense given the time difference and language barrier. Plaintiff therefore expects that Smok has responsive communications with third parties in its possession, custody, or control.

Furthermore, given the Court's recent order denying Big Bang's request to consolidate its case with the case against Smok, Smok should not withhold responsive communications with Big Bang on privilege grounds. *See* Case No. Case 2:17-cv-00989-DSF-SK, Dkt. 71. As the Court noted, the differences between Plaintiff's cases against Smok and Big Bang include "different defendants, different products in different geographic markets, and different time periods." *Id.* Because of these significant differences, Smok and Big Bang are not pursuing a joint legal strategy, and most, if not all, communications with Big Bang would not fall within the purview of the common interest privilege. *See, e.g., Nidec Corp. v. Victor Co.,* 249 F.R.D. 575, 579 (N.D. Cal. 2007) (noting that the common interest privilege applies only to communications made in the course of "formulating a *common legal strategy"* or otherwise furthering the parties' joint interest in a lawsuit).

To the extent that Smok has withheld any responsive communications on privilege grounds, Smok must provide a privilege log.  In accordance with the instructions provided in Plaintiff's discovery requests, this privilege log should include the following information: (a) the date of the communication; (b) the subject matter of the communication; (c) the names, addresses, job titles, and employers of all persons with knowledge or a copy of the information, and (d) the nature of the privilege asserted.

Plaintiff requests that Smok produce all documents responsive to RFP No. 45, along with a privilege log if Smok has withheld any documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Sarieddine's position regarding the common-interest privilege between Smok and Big Bang is incorrect. While the two cases were not consolidated, there is undisputed overlap between the cases with respect to a number of issues, including the scope of protection for Sarieddine's ALIEN VAPE marks. Sarieddine's implication that most communications Smok and Big Bang (including their respective attorneys) would cover areas where the cases do not overlap is dubious. Smok is entitled to withhold communications between its counsel and Big Bang's by virtue of the common-interest privilege.

Finally, in the interest of brevity, Smok incorporates the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 9 (regarding third-party communications) and 12 (regarding a privilege log).

**REQUEST FOR PRODUCTION NO. 46:**

All Documents and Communications related to SMOK supporting, aiding, or assisting any third party in contesting the validity or enforceability of the Alien Vape Marks after May 31, 2017.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 46:

Smok objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents and communications—if any— related to Smok supporting, aiding, or assisting any third party in contesting the validity or enforceability of the Alien Vape Marks after May 31, 2017.

## PLAINTIFF'S POSITION:

This Request seeks Smok's communications with third parties regarding efforts to challenge the validity of Plaintiff's Alien Vape Marks. Specifically, RFP No. 46 is focused on communications that occurred *after* May 31, 2017, which is when Smok announced that it was terminating the Settlement Agreement.  These communications are relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Smok, which allege that Smok worked with third parties to challenge and invalidate Plaintiff's Alien Vape Marks in violation of the Settlement Agreement.

Smok has not produced any documents in response to this Request. Plaintiff reasonably expects that Smok has communications with third parties that are responsive, especially given the admission of Smok's CEO in a message to Plaintiff that Smok is working with Big Bang to invalidate Plaintiff's marks.  McConnell Decl., ¶ 23, Ex. 13.

During the parties' meet and confer session on March 5, 2018, Smok revealed for the first time that it has "no written record" of these missing third-party communications.  *Id*., ¶ 22.  However, other documents produced in this lawsuit demonstrate Smok employees tend to use email, WeChat, and Skype to communicate with individuals outside the company.  *Id*., ¶ 23, Ex. 13.  This is consistent with Plaintiff's own experience, as the vast majority of Plaintiff's communications with Smok occurred through these means.  *Id*., ¶ 23.  This is also

1  consistent with the fact that Smok is a Chinese company and phone calls or in-

2  person meetings do not make sense given the time difference and language barrier.

3  Plaintiff therefore expects that Smok has responsive communications with third

4  parties in its possession, custody, or control.

5  　　Furthermore, given the Court's recent order denying Big Bang's request to

6  consolidate its case with the case against Smok, Smok should not withhold

7  responsive communications with Big Bang on privilege grounds.  *See* Case No.

8  Case 2:17-cv-00989-DSF-SK, Dkt. 71.  As the Court noted, the differences

9  between Plaintiff's cases against Smok and Big Bang include "different defendants,

10  different products in different geographic markets, and different time periods."  *Id*.

11  Because of these significant differences, Smok and Big Bang are not pursuing a

12  joint legal strategy, and most, if not all, communications with Big Bang would not

13  fall within the purview of the common interest privilege.  *See, e.g., Nidec Corp. v.*

14  *Victor Co.,* 249 F.R.D. 575, 579 (N.D. Cal. 2007) (noting that the common interest

15  privilege applies only to communications made in the course of "formulating

16  a *common legal strategy"* or otherwise furthering the parties' joint interest in a

17  lawsuit).

18  　　To the extent that Smok has withheld any responsive communications on

19  privilege grounds, Smok must provide a privilege log.  In accordance with the

20  instructions provided in Plaintiff's discovery requests, this privilege log should

21  include the following information: (a) the date of the communication; (b) the

22  subject matter of the communication; (c) the names, addresses, job titles, and

23  employers of all persons with knowledge or a copy of the information, and (d) the

24  nature of the privilege asserted.

25  　　Plaintiff requests that Smok produce all documents responsive to RFP No.

26  46, along with a privilege log if Smok has withheld any documents, within two

27  weeks of the hearing on this motion.

28

**SMOK'S POSITION:**

Sarieddine's position regarding the common-interest privilege between Smok and Big Bang is incorrect. While the two cases were not consolidated, there is undisputed overlap between the cases with respect to a number of issues, including the scope of protection for Sarieddine's ALIEN VAPE marks. Sarieddine's implication that most communications Smok and Big Bang (including their respective attorneys) would cover areas where the cases do not overlap is dubious. Smok is entitled to withhold communications between its counsel and Big Bang's by virtue of the common-interest privilege.

Finally, in the interest of brevity, Smok incorporates the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 9 (regarding third-party communications) and 12 (regarding a privilege log).

**REQUEST FOR PRODUCTION NO. 47:**

All Documents and Communications between SMOK and any third party concerning the Contract.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Smok objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents and communications—if any— between Smok and any third party concerning the purported "Contract."

**PLAINTIFF'S POSITION:**

This Request seeks Smok's communications with third parties regarding the Settlement Agreement between Plaintiff and Smok.  These communications are relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Smok, which allege that Smok communicated with third parties about challenging and invalidating Plaintiff's

1    Alien Vape Marks in violation of the Settlement Agreement.

2         Smok has not produced any documents in response to this Request. Plaintiff

3    reasonably expects that Smok has communications with third parties that are

4    responsive, especially given the admission of Smok's CEO in a message to Plaintiff

5    that Smok is working with Big Bang to invalidate Plaintiff's marks.  McConnell

6    Decl., ¶ 23, Ex. 13.

7         During the parties' meet and confer session on March 5, 2018, Smok

8    revealed for the first time that it has "no written record" of these missing third-party

9    communications.  *Id*., ¶ 22.  However, other documents produced in this lawsuit

10   demonstrate Smok employees tend to use email, WeChat, and Skype to

11   communicate with individuals outside the company.  *Id*., ¶ 23, Ex. 13.  This is

12   consistent with Plaintiff's own experience, as the vast majority of Plaintiff's

13   communications with Smok occurred through these means.  *Id*., ¶ 23.   Plaintiff

14   therefore expects that Smok has responsive communications with third parties in its

15   possession, custody, or control.

16        Furthermore, given the Court's recent order denying Big Bang's request to

17   consolidate its case with the case against Smok, Smok should not withhold

18   responsive communications with Big Bang on privilege grounds.  *See* Case No.

19   Case 2:17-cv-00989-DSF-SK, Dkt. 71.  As the Court noted, the differences

20   between Plaintiff's cases against Smok and Big Bang include "different defendants,

21   different products in different geographic markets, and different time periods."  *Id*.

22   Because of these significant differences, Smok and Big Bang are not pursuing a

23   joint legal strategy, and most, if not all, communications with Big Bang would not

24   fall within the purview of the common interest privilege.  *See, e.g., Nidec Corp. v.*

25   *Victor Co.,* 249 F.R.D. 575, 579 (N.D. Cal. 2007) (noting that the common interest

26   privilege applies only to communications made in the course of "formulating

27   a *common legal strategy"* or otherwise furthering the parties' joint interest in a

28   lawsuit).

To the extent that Smok has withheld any responsive communications on privilege grounds, Smok must provide a privilege log.  In accordance with the instructions provided in Plaintiff's discovery requests, this privilege log should include the following information: (a) the date of the communication; (b) the subject matter of the communication; (c) the names, addresses, job titles, and employers of all persons with knowledge or a copy of the information, and (d) the nature of the privilege asserted.

Plaintiff requests that Smok produce all documents responsive to RFP No. 47, along with a privilege log if Smok has withheld any documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Sarieddine's position regarding the common-interest privilege between Smok and Big Bang is incorrect. While the two cases were not consolidated, there is undisputed overlap between the cases with respect to a number of issues, including the scope of protection for Sarieddine's ALIEN VAPE marks. Sarieddine's implication that most communications Smok and Big Bang (including their respective attorneys) would cover areas where the cases do not overlap is dubious. Smok is entitled to withhold communications between its counsel and Big Bang's by virtue of the common-interest privilege.

Finally, in the interest of brevity, Smok incorporates the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 9 (regarding third-party communications) and 12 (regarding a privilege log).

**REQUEST FOR PRODUCTION NO. 48:**

All Documents and Communications concerning the Contract, including, without limitation, edits to the Contract, internal and external correspondence, emails, WeChat, and Skype logs regarding the Contract.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

Smok objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents and communications—if any— concerning the purported "Contract."

**PLAINTIFF'S POSITION:**

This Request seeks Smok's documents and communications regarding the Settlement Agreement, which are relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Smok has not produced any internal documents or communications that are responsive to this Request. The only communications that Smok has produced regarding the Settlement Agreement are communications with Plaintiff or Plaintiff's attorneys, which were already in Plaintiff's possession. Given that Smok is a sophisticated multinational company, Plaintiff reasonably expects that Smok has at least some internal documents and communications analyzing the Settlement Agreement and discussing the benefits and drawbacks of Smok's performance under that agreement. Therefore, the lack of responsive documents in Smok's production is either caused by Smok's failure to diligently search for these documents, or Smok's over-application of the attorney-client privilege.

To the extent that Smok has withheld responsive communications on privilege grounds, including joint defense or common interest privilege, Smok must provide a privilege log. In accordance with the instructions provided in Plaintiff's discovery requests, this privilege log should include the following information: (a) the date of the communication; (b) the subject matter of the communication; (c) the names, addresses, job titles, and employers of all persons with knowledge or a copy of the information, and (d) the nature of the privilege asserted.

Plaintiff requests that Smok produce all documents responsive to RFP No.

48, along with a privilege log if Smok has withheld any documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok's search for non-privileged documents responsive to this request is ongoing.

In the interest of brevity, Smok incorporates the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 2 (regarding internal documents) and 12 (regarding a privilege log).

**REQUEST FOR PRODUCTION NO. 50:**

All Documents and Communications concerning or generated in connection with any analysis, audit, review, or examination that SMOK, any party on behalf of SMOK, or any other third-party conducted concerning the Contract.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Smok objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents and communications—if any— concerning or generated in connection with any analysis, audit, review, or examination that Smok, any party of behalf of Smok, or any other third party conducted concerning the purported "Contract."

**PLAINTIFF'S POSITION:**

This Request seeks Smok's internal documents and communications analyzing the Settlement Agreement between Plaintiff and Smok, as well as Smok's communications with third parties on this subject.  These documents and communications are relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing against Smok, which allege that Smok breached the Settlement Agreement in bad faith and communicated with

1   third parties about strategies for invalidating Plaintiff's Alien Vape Marks.

2         Smok has not produced any documents in response to this Request. Plaintiff

3   reasonably expects that Smok has communications with third parties that are

4   responsive, especially given the admission of Smok's CEO in a message to Plaintiff

5   that Smok is working with Big Bang to invalidate Plaintiff's marks.  McConnell

6   Decl., ¶ 23, Ex. 13.

7         During the parties' meet and confer session on March 5, 2018, Smok

8   revealed for the first time that it has "no written record" of these missing third-party

9   communications.  *Id.*, ¶ 22.  However, other documents produced in this lawsuit

10  demonstrate Smok employees tend to use email, WeChat, and Skype to

11  communicate with individuals outside the company.  *Id.*, ¶ 23, Ex. 13.  This is

12  consistent with Plaintiff's own experience, as the vast majority of Plaintiff's

13  communications with Smok occurred through these means.  *Id.*, ¶ 23.   Plaintiff

14  therefore expects that Smok has responsive communications with third parties in its

15  possession, custody, or control.

16        Furthermore, given the Court's recent order denying Big Bang's request to

17  consolidate its case with the case against Smok, Smok should not withhold

18  responsive communications with Big Bang on privilege grounds.  *See* Case No.

19  Case 2:17-cv-00989-DSF-SK, Dkt. 71.  As the Court noted, the differences

20  between Plaintiff's cases against Smok and Big Bang include "different defendants,

21  different products in different geographic markets, and different time periods."  *Id*.

22  Because of these significant differences, Smok and Big Bang are not pursuing a

23  joint legal strategy, and most, if not all, communications with Big Bang would not

24  fall within the purview of the common interest privilege.  *See, e.g., Nidec Corp. v.*

25  *Victor Co.,* 249 F.R.D. 575, 579 (N.D. Cal. 2007) (noting that the common interest

26  privilege applies only to communications made in the course of "formulating

27  a *common legal strategy"* or otherwise furthering the parties' joint interest in a

28  lawsuit).

To the extent that Smok has withheld any responsive communications on privilege grounds, Smok must provide a privilege log.  In accordance with the instructions provided in Plaintiff's discovery requests, this privilege log should include the following information: (a) the date of the communication; (b) the subject matter of the communication; (c) the names, addresses, job titles, and employers of all persons with knowledge or a copy of the information, and (d) the nature of the privilege asserted.

Plaintiff requests that Smok produce all documents responsive to RFP No. 50, along with a privilege log if Smok has withheld any documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok has searched for but has not located any non-privileged documents responsive to this request.

Sarieddine's position regarding the common-interest privilege between Smok and Big Bang is incorrect. While the two cases were not consolidated, there is undisputed overlap between the cases with respect to a number of issues, including the scope of protection for Sarieddine's ALIEN VAPE marks. Sarieddine's implication that most communications Smok and Big Bang (including their respective attorneys) would cover areas where the cases do not overlap is dubious. Smok is entitled to withhold communications between its counsel and Big Bang's by virtue of the common-interest privilege.

Finally, in the interest of brevity, Smok incorporates the following paragraphs from Smok's Omnibus Section Regarding Document Requests: 2 (regarding internal documents); 9 (regarding third-party communications); and 12 (regarding a privilege log).

**REQUEST FOR PRODUCTION NO. 51:**

All Documents and Communications related to your allegations that the

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

1   Contract is unenforceable, invalid, or illusory.

2   **RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

3       Smok objects to this Request on the grounds that it seeks documents and

4   communications protected by the attorney-client privilege, the attorney work

5   product doctrine, or the common interest privilege. Smok will produce non-

6   privileged documents and communications—if any— related to its allegations that

7   the purported "Contract" is unenforceable, invalid, or illusory.

8   **PLAINTIFF'S POSITION:**

9       This Request seeks Smok's documents and communications regarding its

10  affirmative defenses that the Settlement Agreement is unenforceable, invalid, and

11  illusory.  Given that Smok has been asserting these affirmative defenses for the past

12  year, Plaintiff reasonably expects that Smok has at least some documents relating to

13  these defenses.  Therefore, the lack of responsive documents in Smok's production

14  is either caused by Smok's failure to diligently search for these documents, or

15  Smok's over-application of the attorney-client, joint defense, or common interest

16  privileges.

17      To the extent that Smok has withheld responsive communications on

18  privilege grounds, including joint defense or common interest privilege, Smok must

19  provide a privilege log.  In accordance with the instructions provided in Plaintiff's

20  discovery requests, this privilege log should include the following information: (a)

21  the date of the communication; (b) the subject matter of the communication; (c) the

22  names, addresses, job titles, and employers of all persons with knowledge or a copy

23  of the information, and (d) the nature of the privilege asserted.

24      Plaintiff requests that Smok produce all documents responsive to RFP No.

25  51, along with a privilege log if Smok has withheld any documents, within two

26  weeks of the hearing on this motion.

27  **SMOK'S POSITION:**

28      Smok's search for non-privileged documents responsive to this request is

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

1   ongoing.

2       In the interest of brevity, Smok incorporates the following paragraphs from

3   Smok's Omnibus Position Regarding Document Requests: 2 (regarding internal

4   documents) and 12 (regarding a privilege log).

5

6   **REQUEST FOR PRODUCTION NO. 52:**

7       All Documents and Communications with any governmental agencies or

8   third parties regarding SMOK's inability to sell e-liquid in China.

9   **RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

10       Smok objects to this Request on the grounds that it is overbroad, unduly

11   burdensome, and not proportional to the needs of the case because it seeks

12   documents unrelated to whether Smok was permitted to sell Sarieddine's Alien

13   Vape e-liquid in China. Smok will not search for or produce documents or

14   communications with governmental agencies or third parties unrelated to Smok's

15   inability to sell Sarieddine's Alien Vape e-liquid. Smok further objects to this

16   Request on the grounds that it seeks documents and communications protected by

17   the attorney-client privilege, the attorney work product doctrine, or the common

18   interest privilege. Smok will produce non-privileged documents and

19   communications—if any— with any governmental agencies or third parties

20   regarding Smok's inability to sell Sarieddine's Alien Vape e-liquid.

21   **PLAINTIFF'S POSITION:**

22       Smok has not produced a single document in response to this Request.

23   Plaintiff reasonably expects that Smok has documents regarding Smok's alleged

24   inability to sell e-liquid in China, which Smok raised as an affirmative defense to

25   Plaintiff's breach of contract claim.  Given that Smok has been raising this

26   affirmative defense for the past year, Smok must have at least some documents in

27   its possession, custody, or control regarding this subject.  Moreover, because RFP

28   No. 52 seeks Smok's communications with third parties, Plaintiff expects that most

1   (if not all) responsive documents and communications are not privileged.

2   During the parties' meet and confer session on March 5, 2018, Smok

3   expressed its willingness to produce documents in response to RFP No. 52, but did

4   not say when these documents would be produced.  McConnell Decl., ¶ 21.

5   Plaintiff requests that Smok produce all documents responsive to RFP No. 52

6   within two weeks of the hearing on this motion.

7   **SMOK'S POSITION:**

8   Smok has located non-privileged documents responsive to this request, and

9   will endeavor to produce them by March 30, 2018.

10

11   **REQUEST FOR PRODUCTION NO. 53:**

12   All Documents and Communications related to your allegations that "Smok

13   learned that the ALIEN VAPE e-liquid did not comply with several Chinese

14   regulations. Smok attempted to clear those hurdles...."

15   **RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

16   Smok further objects to this Request on the grounds that it seeks documents

17   and communications protected by the attorney-client privilege, the attorney work

18   product doctrine, or the common interest doctrine. Smok will produce non-

19   privileged documents and communications—if any— related to its allegations that

20   "Smok learned that the ALIEN VAPE e-liquid did not comply with several Chinese

21   regulations. Smok attempted to clear those hurdles . . ."

22   **PLAINTIFF'S POSITION:**

23   Smok has not produced a single document in response to this Request.

24   Plaintiff reasonably expects that Smok has documents regarding its allegation that

25   Plaintiff's ALIEN VAPE e-liquid did not comply with Chinese regulations, which

26   Smok raised as an affirmative defense to Plaintiff's breach of contract claim.  Given

27   that Smok has been raising this affirmative defense for the past year, Smok must

28   have at least some documents in its possession, custody, or control regarding this

1  subject.  These responsive documents should be produced.

2      To the extent that Smok has withheld responsive communications on

3  privilege grounds, including on joint defense or common interest privilege grounds,

4  Smok must provide a privilege log.  In accordance with the instructions provided in

5  Plaintiff's discovery requests, this privilege log should include the following

6  information: (a) the date of the communication; (b) the subject matter of the

7  communication; (c) the names, addresses, job titles, and employers of all persons

8  with knowledge or a copy of the information, and (d) the nature of the privilege

9  asserted.

10      Plaintiff requests that Smok produce all documents responsive to RFP No.

11  53, along with a privilege log if Smok has withheld any documents, within two

12  weeks of the hearing on this motion.

13  **SMOK'S POSITION:**

14      Smok has located non-privileged documents responsive to this request, and

15  will endeavor to produce them by March 30, 2018.

16      Finally, in the interest of brevity, Smok incorporates paragraph 12 (regarding

17  a privilege log) of Smok's Omnibus Position Regarding Document Requests.

18

19  **REQUEST FOR PRODUCTION NO. 54:**

20      All Documents and Communications related to Sarieddine's alleged failure

21  to "work with Smok to comply with Chinese regulations."

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

23      Smok objects to this Request on the grounds that it seeks documents and

24  communications protected by the attorney-client privilege, the attorney work

25  product doctrine, or the common interest doctrine. Smok will produce non-

26  privileged documents and communications—if any— related to Sarieddine's failure

27  to work with Smok to comply with Chinese regulations.

28

**PLAINTIFF'S POSITION:**

Smok has not produced a single document in response to this Request. Plaintiff reasonably expects that Smok has documents regarding its allegation that Plaintiff failed to "work with Smok to comply with Chinese regulations," which Smok raised as an affirmative defense to Plaintiff's breach of contract claim. Given that Smok has been raising this affirmative defense for the past year, Smok must have at least some documents in its possession, custody, or control regarding this subject. These responsive documents should be produced.

To the extent that Smok has withheld responsive communications on privilege grounds, including on joint defense or common interest privilege grounds, Smok must provide a privilege log. In accordance with the instructions provided in Plaintiff's discovery requests, this privilege log should include the following information: (a) the date of the communication; (b) the subject matter of the communication; (c) the names, addresses, job titles, and employers of all persons with knowledge or a copy of the information, and (d) the nature of the privilege asserted.

Plaintiff requests that Smok produce all documents responsive to RFP No. 54, along with a privilege log if Smok has withheld any documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok' search for non-privileged documents responsive to this request is ongoing.

Finally, in the interest of brevity, Smok incorporates paragraph 12 (regarding a privilege log) of Smok's Omnibus Position Regarding Document Requests.

**REQUEST FOR PRODUCTION NO. 55:**

All Documents and Communications that include any one of the following terms: "Alien Baby", "Sarieddine", "Alien 2", or "Alien Vape.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Smok objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case because Smok never produced any "Alien 2" product. Smok will not search for or produce any Documents or Communications including the term "Alien 2." Smok objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest doctrine.  Smok will produce non-privileged documents and communications—if any— that include any of the terms "Alien Baby", "Sarieddine", or "Alien Vape."

**PLAINTIFF'S POSITION:**

Smok has produced only a fraction of the documents that are responsive to this Request.  Smok had agreed to produce all internal communications that include the term "Sarieddine" in response to this Request but has not produced any such communications.

In addition, Smok's production is devoid of any documents mentioning its "Alien 2" product.  Smok has refused to even search for documents mentioning the phrase "Alien 2" on the grounds that Smok "never produced any 'Alien 2' product." This objection is meritless.  Documents produced by Plaintiff produced reveal that Smok had plans to release a product known as "Alien 2" in spring of 2017.  McConnell Decl., ¶ 30, Ex. 17.  In addition, Smok's distribution affiliates in the United States had press releases on their websites regarding the Alien 2 product, which were clearly given to them by Smok.  *See* Dkt. 71-1, Plaintiff's Motion for a Preliminary Injunction, at pp. 6-7.

To the extent that Smok claims that "Alien 2" was only a temporary name, or a "nickname" given to one of its vaporizers, that does not excuse Smok from having to search for and produce "Alien 2" documents.  There is no reason to limit the scope of Plaintiff's discovery to the current "official" names for Smok's vaporizers. Plaintiff is entitled to ask Smok about all e-cigarette products that have ever been

sold under any iteration of the "Alien" name, as such evidence is directly relevant to Plaintiff's Lanham Act and breach of contract claims.

To the extent that Smok has failed to locate documents mentioning "Alien 2" because such documents are written in Mandarin, Smok should be translating these documents into English to search for this phrase, as well as the other phrases requested by RFP No. 55. The fact that a document contains the Mandarin equivalent of the phrase "Alien 2," for example, does not excuse Smok from having to produce this document.  If documents written in Mandarin are responsive to Plaintiff's discovery requests, they must be produced.

Plaintiff therefore asks that Smok produce all outstanding responsive documents, including all documents mentioning "Sarieddine" and all documents mentioning "Alien 2" within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok did make preliminary plans for an AL230 vaporizer, which some potential distributors and customers referred to as the "Alien 2." But no such product was ever produced, much less brought to market. So Plaintiff's purported entitlement to ask Smok about all e-cigarette products that have ever been sold under any iteration of the 'Alien' name" does not apply to the phrase "Alien 2," because no such product was ever sold.

Finally, in the interest of brevity, Smok incorporates paragraph 2 (regarding internal documents) from Smok's Omnibus Position Regarding Document Requests.


**REQUEST FOR PRODUCTION NO. 56:**

All Documents and Communications related to SMOK's decision to discontinue referring to its "AL85" product as the "Alien Baby."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Smok objects to this Request on the grounds that it seeks documents and

communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest doctrine. Smok will produce non-privileged documents and communications—if any— related to Smok's alleged decision.

**PLAINTIFF'S POSITION:**

To respond to this Request, Smok must produce emails and other internal communications regarding Smok's decision to change the name of its "Alien Baby" product. Smok has not produced these documents. Smok cannot satisfy its obligation to respond to this Request by producing advertisements and other publicly available documents that simply mention "Alien Baby" or "AL85," but do not address Smok's decision to change the name of this product.

During the parties' meet and confer session on March 5, 2018, Smok expressed its willingness to produce documents in response to RFP No. 56, but did not say when these documents would be produced. McConnell Decl., ¶ 21. Plaintiff is troubled by the discrepancy between Smok's response to this RFP and Smok's responses to Plaintiff's other discovery responses. Throughout Smok's responses to Plaintiff's RFPs, and well as in its responses to Plaintiff's interrogatories, Smok has refused to produce information regarding its "Alien Baby" product, claiming that it "never sold any product under the name 'Alien Baby.'" *See, e.g.,* Smok's responses to Interrogatories Nos. 3-4 and 6, discussed *infra*. In response to RFP No. 56, however, Smok acknowledges that it did sell a product called the "Alien Baby," as Smok agreed to produce documents regarding its decision to discontinue that name. Plaintiff reiterates that Smok must fully respond to all discovery requests regarding Smok's "Alien Baby" product. The fact that Smok has discontinued the "Alien Baby" name does not obviate or otherwise modify Smok's obligation to search for and produce responsive documents.

Plaintiff requests that Smok produce all documents responsive to RFP No. 56 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok has located non-privileged documents responsive to this request, and will endeavor to produce them by March 30, 2018.

There is no discrepancy between Smok's response to this request and Smok's other responses to discovery requests. Smok does not dispute that the phrase "alien baby" appears in a few instances of advertising and promotion for AL85 goods. But "alien baby" was never the name of any Smok product. Smok's documents discuss the decision to cease using the phrase "alien baby."

**REQUEST FOR PRODUCTION NO. 57:**

All Documents and Communications related to SMOK's decision to discontinue referring to its "AL230" product as the "Alien 2."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Smok objects to this Request on the grounds that it overbroad, unduly burdensome, and not proportional to the needs of the case because (1) Smok never brought an "AL230" or "Alien 2" product to market and (2) Smok never referred to any product as the "Alien 2." Smok further objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, or the common interest doctrine.

**PLAINTIFF'S POSITION:**

Smok's blanket refusal to respond to this Request because it "never brought an 'AL230' or 'Alien 2' product to market" or "referred to any product as the 'Alien 2'" is improper. As previously noted, Plaintiff has documents demonstrating that Smok had plans to release a product known as "Alien 2" in spring of 2017. *See, e.g.*, SAR - 00019-SAR – 00020. Moreover, Smok's claim that it did not end up giving the "Alien 2" or "AL230" name to any product "brought to market" does not obviate Smok's obligation to respond to this Request. Plaintiff is entitled to review Smok's internal communications regarding the possibility of naming one of its

vaporizers "AL230" and/or "Alien 2," as well as any communications regarding Smok's alleged decision not to bring the "AL230" or "Alien 2" product to market. Communications regarding Smok's decision to use—or not use—the "Alien" name on its vaporizers are directly relevant to Plaintiff's Lanham Act and breach of contract claims.  Plaintiff therefore asks that Smok withdraw this objection and search for and produce all communications that refer to Smok's decision regarding the naming of its "AL230" and "Alien 2" products.

**SMOK'S POSITION:**

This request refers to a particular product—namely, Smok's "'AL230' product." But, as discussed above, no such product ever existed. Moreover, Sarieddine has not explained (nor can he) how a name that Smok never used on any product has any bearing on either his Lanham Act or breach of contract claims.

Notably, Plaintiff's position improperly seeks a broader production ("all communications that refer to Smok's decision regarding the naming of its 'AL230' and 'Alien 2' products") than was sought in the original request ("all Documents and Communications related to SMOK's decision to discontinue referring to its 'AL230' product as the 'Alien 2'").

**REQUEST FOR PRODUCTION NO. 58:**

All Documents and Communications with RRV Enterprises LLC d/b/a/ Vapor World, or any owner or employee of it, including Lance Custen (collectively, "RRV"), regarding Sarieddine or RRV's settlement with Sarieddine.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Smok will produce non-privileged documents and communications—if any— with RRV, or any owner or employee of RRV, regarding Sarieddine or RRV's settlement with Sarieddine.

**PLAINTIFF'S POSITION:**

The documents sought by this Request relate to Plaintiff's claim for breach of

contract and breach of the implied covenant of good faith and fair dealing, which allege that Smok communicated with third parties, including RRV, about challenging Plaintiff's Alien Vape trademarks.  Documents produced by Plaintiff indicate that Smok communicated with Lance Custen of RRV about this lawsuit and tried to pressure RRV to remain in this case and challenge Plaintiff's Alien Vape trademarks.  McConnell Decl., ¶ 24, Ex. 14.

During the parties' meet and confer session on March 5, 2018, Smok revealed for the first time that it has "no written record" any communications with RRV, or any owner or employee of RRV, including Lance Custen.  *Id*., ¶ 22.  However, Plaintiff has reason to believe that at least some communications between Mr. Custen and Smok were recorded, as other documents produced in this lawsuit demonstrate Smok employees tend to use email, WeChat, and Skype to communicate with individuals outside the company.  *Id*., ¶ 23, Ex. 13.  This is consistent with Plaintiff's own experience, as the vast majority of Plaintiff's communications with Smok occurred through these means.  *Id*., ¶ 23.  Plaintiff therefore believes Smok has responsive communications with RRV and Lance Custen in its possession, custody, or control and asks that Smok produce these communications within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok's search for non-privileged documents responsive to this request is ongoing.

In the interest of brevity, Smok incorporates paragraph 9 (regarding third-party communications) of Smok's Omnibut Position Regarding Document Requests).

**REQUEST FOR PRODUCTION NO. 59:**

All Documents and Communications with RRV after its settlement of this Action with Sarieddine regarding exclusive distribution of any of SMOK's

products.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 59:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because the documents sought are entirely unrelated to Smok's alleged liability under the claims asserted in Sarieddine's complaint or to any cognizable category of damages Sarieddine could seek pursuant to those claims.

**PLAINTIFF'S POSITION:**

RFP No. 59 seeks Smok's communications with RRV, d/b/a Vapor World, following their settlement in this lawsuit. Specifically, this Requests seek communications regarding Smok's efforts to discourage Vapor World from settling this lawsuit by terminating Vapor World's distribution contract. Plaintiff has produced its communications with Lance Custen, which indicate that Smok engaged in this misconduct. McConnell Decl., ¶ 24, Ex. 14. Therefore, Plaintiff reasonably expects that Smok has documents responsive to RFP No. 59 in its possession, custody or control.

Smok does not have grounds to refuse to produce these responsive communications. Smok's assertion that these communications are "entirely unrelated to Smok's alleged liability under the claims asserted in Sarieddine's complaint or to any cognizable category of damages Sarieddine could seek pursuant to those claims" is not true. Smok's attempts to encourage third parties, including Vapor World, to challenge Plaintiffs' Alien Vape trademarks are relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. As Plaintiff has alleged in its First Amended Complaint, Smok has a continuing obligation under the settlement agreement not to challenge Plaintiff's Alien Vape trademarks. Smok's efforts to invalidate Plaintiff's marks and encourage third parties to do so—including by punishing third parties, such as Vapor World, who settle lawsuits with Plaintiff—are directly relevant to these

claims.  Plaintiff therefore requests that Smok produce its documents and communications that are responsive to RFP No. 59 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok agrees to search for non-privileged documents responsive to this request, and its search is ongoing.

In the interest of brevity, Smok incorporates paragraph 9 (regarding third-party communications) of Smok's Omnibut Position Regarding Document Requests).

**REQUEST FOR PRODUCTION NO. 60:**

All Documents and Communications with RRV after its settlement of this Action with Sarieddine regarding SMOK raising prices for RRV.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 60:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because the documents sought are entirely unrelated to Smok's alleged liability under the claims asserted in Sarieddine's complaint or to any cognizable category of damages Sarieddine could seek pursuant to those claims.

**PLAINTIFF'S POSITION:**

RFP No. 60 seeks Smok's communications with RRV, d/b/a Vapor World, following their settlement in this lawsuit. Specifically, this Requests seek communications regarding Smok's efforts to discourage Vapor World from settling this lawsuit by raising prices for Vapor World.  Plaintiff has produced its communications with Lance Custen, which indicate that Smok engaged in this misconduct.  McConnell Decl., ¶ 24, Ex. 14.  Therefore, Plaintiff reasonably expects that Smok has documents responsive to RFP No. 60 in its possession, custody or control.

Smok does not have grounds to refuse to produce these responsive communications.  Smok's assertion that these communications are "entirely unrelated to Smok's alleged liability under the claims asserted in Sarieddine's complaint or to any cognizable category of damages Sarieddine could seek pursuant to those claims" is not true.  Smok's attempts to encourage third parties, including Vapor World, to challenge Plaintiffs' Alien Vape trademarks are relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  As Plaintiff has alleged in its First Amended Complaint, Smok has a continuing obligation under the settlement agreement not to challenge or invalidate Plaintiff's Alien Vape trademarks. Smok's efforts to invalidate Plaintiff's marks and encourage third parties to do so—including by punishing third parties, such as Vapor World, who settle lawsuits with Plaintiff—are directly relevant to these claims.  Plaintiff therefore requests that Smok produce its documents and communications that are responsive to RFP No. 60 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok agrees to search for non-privileged documents responsive to this request, and its search is ongoing.

In the interest of brevity, Smok incorporates paragraph 9 (regarding third-party communications) of Smok's Omnibut Position Regarding Document Requests).

**REQUEST FOR PRODUCTION NO. 61:**

All Documents and Communications with any third parties regarding your allegation in paragraph 26 of your Amended Counterclaims that any third party has "chosen to cease or circumscribe their business relationship with Smok as a result of Plaintiff's unjustified, sham lawsuit against the Distributor Defendants."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

Smok objects to this Request on the grounds that it is moot in light of Smok's withdrawal of its Amended Counterclaim for tortious interference with business relations. Smok further objects to this Request on the grounds that it is unduly burdensome and not proportional to the needs of the case because it seeks to force Smok's counsel to make legal determinations.

**PLAINTIFF'S POSITION:**

Smok's refusal to produce any documents in response to this Request is improper.  The fact that Smok has decided to no longer pursue its Amended Counterclaim for tortious interference with business relations does not make Plaintiff's discovery request "moot."  Certainly, Smok must have had some factual basis for asserting this Amended Counterclaim, and Plaintiff is entitled to see documents regarding those facts.  Among other things, documents that explain how Smok's business relationships with its distributors were affected by this lawsuit, as well as Smok's communications with third parties regarding this lawsuit, are likely to contain information that is relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

Smok's objection that this Request "seeks to force Smok's counsel to make legal determinations" is similarly groundless.  This Request seeks documents and communications regarding Smok's business relationships with third parties and how these relationships may have affected by this lawsuit.  This Request does not ask for any "legal determinations" or other attorney work product.  Plaintiff therefore requests that Smok produce its documents and communications that are responsive to RFP No. 61 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok maintains its mootness objection. The claim at issue has been dismissed. If Sarieddine seeks documents "likely to contain information that is relevant to Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing" which are not covered by one of

Sarieddine's 85 other document requests, he may propound additional requests. But he may not use his desire for such documents as an after-the-fact justification for a request related to a dead claim.

**REQUEST FOR PRODUCTION NO. 62:**

Copies of all receipts from January 1, 2016 for the sale of goods bearing any of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks financial documents that have no bearing on this action; (2) it seeks documents related to goods bearing Smok's Alien Kit Marks outside the United States; and (3) Smok has never sold any product under the name "Alien Baby." Smok further objects to this Request on the grounds that receipt is vague and ambiguous when applied to Smok's business.

**PLAINTIFF'S POSITION:**

Smok does not have grounds for refusing to produce any documents in response to this Request. Smok's assertion that this Request seeks "financial documents that have no bearing on this action" is incorrect. Request No. 62 seeks the underlying records for the sales of Smok's infringing products, which are relevant to Plaintiff's damages for trademark infringement. In addition, Smok's erroneous contention that it "never sold any product under the name 'Alien Baby'" does not excuse Smok from producing any documents in response to this Request. Even if that claim were true, which it is not (McConnell Decl., ¶ 28, Ex. 15) Smok is nonetheless obligated to produce receipts for its other goods bearing the Alien Kit Marks.

If the volume of documents responsive to this Request is very large and would be unduly burdensome to produce, Plaintiff is willing to limit the breadth of

this Request.  Specifically, Plaintiff has offered to limit the scope of RFP No. 62 to a summary of Smok's sales its "Alien Kit Marks" products to Distributor Defendants.  During the parties' meet and confer session on March 5, 2018, Smok stated that it was willing to consider this proposed revised request but did not commit to providing this summary.  *Id.*, ¶ 35, Ex. 19.  Plaintiff therefore requests that Smok produce at least a summary of Smok's sales its "Alien Kit Marks" products to Distributor Defendants within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Sarieddine apparently recognizes the unduly burdensome nature of this request. As a practical matter, Smok has disclosed in SMOK002406 its sales of Alien goods in the United States. As that document lists the customer for each sale, Sarieddine can use that document to derive the information he seeks with respect to the Distributor Defendants.

Finally, in the interest of brevity, Smok incorporates the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85 goods); and 8 (regarding Smok's financial document production).

**REQUEST FOR PRODUCTION NO. 64:**

All of SMOK's financial statements from 2016 and 2017, including, but not limited to, balance sheets, income statements, and profits and loss statements.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks financial documents that have no bearing on this action; (2) it seeks documents unrelated to Smok's use of allegedly infringing marks; and (3) it seeks documents unrelated to trademark use in the United States.  Smok further objects on the

grounds that this Request seeks documents that are not relevant to any claims or defenses in this case.  Smok further objects to this Request on the grounds that it is intended to be harassing when applied to a sophisticated foreign business that is defending trademark infringement and unfair competition claims.

**PLAINTIFF'S POSITION:**

Smok's refusal to produce any of its financial statements is improper. Plaintiff needs to see Smok's financial statements and accounting documents to analyze and evaluate Smok's revenue, profits, and costs from selling products that infringed Plaintiff's trademarks.  Such evidence is directly relevant to Plaintiff's damages.

As previously explained, the only financial document that Smok has produced is one bare-bones, summary Excel spreadsheet (SMOK002406), which does not completely reflect Smok's revenue, profits, and costs from selling any of the infringing products and was clearly created just for this lawsuit.  Smok cannot produce this spreadsheet in lieu of producing its actual underlying accounting documents and financial statements.  Among other problems, the spreadsheet does not include data for Smok's AL85 vaporizer, also known as the "Alien Baby," and is also improperly limited to U.S. sales, even though none of Plaintiff's claims are so limited. The spreadsheet also does not tell Plaintiff how Smok arrived at its conclusory numbers for "profit" and "revenue".

At the very least, Smok must produce the underlying financial statements that it used to create this spreadsheet. At the parties' meet and confer session on March 5, 2018, Smok stated that it was willing to produce "some" underlying cost documents that it used to create this spreadsheet, but it did not commit to producing its underlying revenue or profit documents.  McConnell Decl., ¶ 33.  However, Plaintiff is entitled to review ***all*** financial documents that were used to create this spreadsheet. Without these documents, Plaintiff has no way of investigating the accuracy of the summary presented in Smok's Excel spreadsheet. *See, e.g., Wahoo*

*Int'l, Inc. v. Phix Doctor, Inc.,* No. 13cv1395-GPC (BLM), 2014 U.S. Dist. LEXIS
98044, at *20-21 (S.D. Cal. July 18, 2014) (plaintiff was entitled to underlying
financial documents to investigate defendant's sales numbers where defendant only
produced an Excel spreadsheet reflecting total sales).  Moreover, none of the data in
this spreadsheet are admissible without the underlying financial documents. *See,
e.g., H-D Mich., Inc. v. Bikers Dream, Inc.,* No. CV 97-864 SVW (CWx), 1998
U.S. Dist. LEXIS 17259, at *18 (C.D. Cal. July 28, 1998) ("A summary is not
admissible unless the records summarized have been made available to the
opposing party.").

To respond to RFP No. 64, Smok must produce its underlying accounting
and financial documents that fully reflect Smok's revenue, profits, and costs for all
goods bearing Smok's Alien Kit Marks.  Plaintiff requests that Smok produce these
documents within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok hereby incorporates by reference the
following paragraphs from Smok's Omnibus Position Regarding Document
Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the
definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85
goods); and 8 (regarding Smok's financial document production).


**REQUEST FOR PRODUCTION NO. 65:**

All Documents showing income to or expenses incurred by SMOK resulting
from the sale or licensing any of Goods bearing any of SMOK's Alien Kit Marks.
**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Smok objects to this Request on the grounds that it is overbroad, unduly
burdensome, and not proportional to the needs of the case because (1) it seeks
financial documents that have no bearing on this action ; (2) it seeks documents
related to goods bearing Smok's Alien Kit Marks outside the United States; and (3)

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

Smok has never sold any product under the name "Alien Baby."

**PLAINTIFF'S POSITION:**

Documents regarding Smok's income and expenses resulting from the sale or licensing of products that infringed Plaintiff's trademarks are undeniably relevant to this lawsuit. These documents contain evidence of Smok's revenue, costs, and profits from infringing Plaintiff's trademarks, which Plaintiff will use to calculate damages pursuant to 15 U.S.C. § 1117(a) of the Lanham Act.

During the parties' meet and confer session on March 5, 2018, Smok said that it would consider producing its licensing documents but did not commit to doing so. McConnell Decl., ¶ 35, Ex. 19. Smok also reasserted its objections to producing documents regarding Smok's Alien Kit Marks outside the United States. *Id.* As previously explained, evidence of sales outside of the United States are relevant to Plaintiff's Lanham Act and breach of contract claims. Smok's refusal to provide any information regarding its AL85 / "Alien Baby" is likewise improper, given that the significance of this product to Plaintiff's Lanham Act and breach of contract claims, and the fact that Smok used the "Alien Baby" name to sell its vaporizer. *Id.*, ¶ 28, Ex. 15.

Plaintiff requests that Smok produce all documents responsive to RFP No. 65 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

With respect to this request as it applies to the sale of goods, as a practical matter, Smok has produced documentation showing income and expenses from sales of Alien goods in the United States (SMOK002406), and Smok intends to produce additional documents related to its costs.

Upon further consideration, Smok maintains its objection to producing documents related to licensing Smok's Alien Kit Marks, as those marks are not at issue in the case and any licensure of those marks would have no bearing on a reasonable royalty for the licensure of Sarieddine's Alien Vape Marks.

Finally, in the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85 goods); and 8 (regarding Smok's financial document production).

**REQUEST FOR PRODUCTION NO. 66:**

Documents sufficient to identify the costs, revenue, and profits of each of the goods bearing SMOK's Alien Kit Marks, broken down by country of sale.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks documents related to goods bearing Smok's Alien Kit Marks outside the United States and (2) Smok never sold any product under the name "Alien Baby." Smok will not search for or produce document related to the costs, revenue, or profits outside the United States of any of the goods bearing Smok's Alien Kit Marks. Smok will not search for or produce any financial documents relating to its AL85 product. Smok will produce non-privileged documents—if any—sufficient to identify the costs, revenue, and profits in the United States of each of the goods bearing Smok's "Smok Alien" mark.

**PLAINTIFF'S POSITION:**

This Request seeks financial documents that are critical to computing damages in this lawsuit. To assess damages under 15 U.S.C. § 1117(a), Plaintiff needs evidence of Smok's revenue, costs, and profits from selling products that infringe its Alien Vape trademarks. However, the only financial document that Smok has produced is an Excel spreadsheet (SMOK002406), which presents an incomplete "summary" of Smok's profits. As previously discussed, this spreadsheet is deficient because it does not include data for Smok's AL85

vaporizer, also known as the "Alien Baby," and is also improperly limited to U.S. sales, even though none of Plaintiff's claims are so limited.

At the parties' meet and confer session on March 5, 2018, Smok stated that it was willing to produce "some" underlying cost documents that it used to create the Excel spreadsheet at SMOK002406 but did not commit to producing its underlying revenue or profit documents. McConnell Decl., ¶ 33. However, Plaintiff is entitled to review *all* financial documents that were used to create this spreadsheet. Without these documents, Plaintiff has no way of investigating the accuracy of the summary presented in Smok's excel spreadsheet. *Wahoo Int'l, Inc. v. Phix Doctor, Inc.,* 2014 U.S. Dist. LEXIS 98044, at *20-21.

Plaintiff cannot obtain an accurate and complete understanding of its damages in this action without Smok's accounting and financial documents, which reflect worldwide sales and include revenue, profits, and cost figures for all infringing products. Plaintiff requests that Smok produce these documents within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85 goods); and 8 (regarding Smok's financial document production).


**REQUEST FOR PRODUCTION NO. 67:**

All Documents concerning or relating to any royalty payments or licensing of any trademark, trade name, or service mark for any e-cigarette products, including vaporizers or e-liquid products, sold by SMOK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

Smok objects to this Request on the grounds that it is overbroad, unduly

burdensome, and not proportional to the needs of the case because (1) it seeks financial documents that have no bearing on this action and (2) it seeks documents related to goods bearing Smok's Alien Kit Marks outside the United States.

**PLAINTIFF'S POSITION:**

Smok does not have grounds for refusing to produce any documents in response to this Request.  Documents regarding royalty payments and licensing of Smok's e-cigarette products are relevant to the issues of damages.  These documents could provide a basis for calculating a reasonable royalty as a measure of Plaintiff's actual damages.  Documents regarding Smok's trademark licenses are also relevant to the validity of Smok's trademarks and Smok's counterclaims based on those marks.  In addition, because Smok has claimed that the "alien" name is generic in the e-cigarette industry, Plaintiff is entitled to know if Smok is licensing its "alien" marks to third parties, thereby taking positions apposite to those asserted in this litigation.

During the parties' meet and confer session on March 5, 2018, Smok agreed to consider producing its licensing documents but did not commit to doing so. McConnell Decl., ¶ 35, Ex. 19.  Smok also reasserted its objections to producing documents regarding Smok's Alien Kit Marks outside the United States, which are improper for reasons previously discussed.  Plaintiff requests that Smok produce all documents responsive to RFP No. 67 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Upon further consideration, Smok maintains its objection to producing documents responsive to this request. Royalty payments for marks or names not at issue in this case have no bearing on a reasonable royalty for the licensure of Sarieddine's Alien Vape Marks.

Finally, in the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document

Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85 goods).

**REQUEST FOR PRODUCTION NO. 68:**

Documents sufficient to identify the marginal cost to manufacture each of the goods bearing any of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks financial documents that have no bearing on this action (2) it seeks documents related to goods bearing Smok's Alien Kit Marks outside the United States; and (3) Smok never sold any product under the name "Alien Baby." Smok further objects on the grounds that this Request seeks documents that are not relevant to any claims or defenses in this case. Smok further objects to this Request on the grounds that it is intended to be harassing when applied to a sophisticated foreign business that is defending trademark infringement and unfair competition claims.

**PLAINTIFF'S POSITION:**

Smok's blanket objections to producing any documents in response to RFP No. 68 are improper. This Request seeks standard information regarding Smok's marginal profits from selling infringing products on a per-unit basis. Smok's marginal profits are directly relevant to Plaintiff's damages calculations under 15 U.S.C. § 1117(a). There is nothing "harassing" about Plaintiff's request for such basic financial information.

Smok's objections that this Request seeks information regarding sales of "Alien Baby," as well as information regarding sales outside of the United States, are similarly improper. As previously discussed herein, Smok has sold a vaporizer known as "Alien Baby." Data regarding the marginal costs of manufacturing this

product—as well as all other infringing products—on a worldwide basis are relevant to Plaintiff's Lanham Act and breach of contract claims.  Plaintiff therefore requests that Smok produce documents responsive to RFP No. 68 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

As a practical matter, Smok has already provided documentation of its marginal costs related to sales of Alien goods in this United States through the spreadsheet bates-labeled SMOK002406.

Finally, in the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85 goods).

**REQUEST FOR PRODUCTION NO. 69:**

Documents sufficient to establish all costs and expenditures for the advertising and promoting of any goods bearing any of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks documents unrelated to Smok's trademark use in the United States and (2) Smok never sold any product under the name "Alien Baby." Smok will not search for or produce document related to costs and expenditures incurred outside the United States for the advertising and promoting of any goods bearing any of Smok's Alien Kit Marks. Smok will not search for or produce any financial documents relating to its AL85 product. Smok further objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks documents to establish costs and expenditures not incurred by

Smok. Smok will not search for or produce documents related to costs or expenditures incurred by others. Smok will produce non-privileged documents—if any—sufficient to identify costs and expenditures incurred in the United States by Smok for the advertising and promoting of goods bearing Smok's "Smok Alien" mark.

**PLAINTIFF'S POSITION:**

RFP No. 69 seeks essential information regarding Smok's costs from selling the infringing products at issue. This information is necessary to compute Plaintiff's damages from Smok's trademark infringement under 15 U.S.C. § 1117(a). Despite the clear relevance of these data, Smok has objected to this Request because it calls for information regarding non-U.S. sales and the "Alien Baby" product. Both objections are without merit.

As previously discussed, Smok *did* sell a vaporizer known as the "Alien Baby." McConnell Decl., ¶ 28, Ex. 15. And even if Smok's contention regarding "Alien Baby" were true (which it is not), that does not excuse Smok from producing financial documents regarding any of the other Alien Kit Marks.

Smok is likewise obligated to produce documents reflecting its worldwide sales of the infringing products. Plaintiff's Lanham Act and breach of contract claims are not limited to U.S.-only sales. Even if these claims were so limited, Plaintiff is still entitled to review Smok's underlying financial data to investigate the veracity of Smok's claims regarding the sales of its infringing products within the U.S.

The sole financial document that Smok has produced is the Excel spreadsheet at SMOK002406, which is deficient because it was created specifically for this lawsuit, is not accompanied by the underlying and supporting documents that were used to create it, and presents an incomplete picture of Smok's revenue, profits, and costs. At the parties' meet and confer session on March 5, 2018, Smok stated that it

was willing to produce some of the underlying cost documents that it used to create
the Excel spreadsheet at SMOK002406 but could not say whether Smok's
advertising and promoting expenditures would be included these documents.  Nor
did Smok withdraw its improper objections to producing financial data for its
worldwide sales and for its AL85 / "Alien Baby" vaporizer.  McConnell Decl., ¶¶
33-34.

Plaintiff requests that Smok withdraw its objections and produce all
documents responsive to RFP No. 69 within two weeks of the hearing on this
motion.

**SMOK'S POSITION:**

Sarieddine's position ignores the fact that Smok has produced an additional
internal document (bates-labeled SMOK001700) showing Smok's advertising and
promotional expenditures.

Smok's search additional documents establishing its costs and expenditures
incurred in the United States for the advertising and promoting of goods bearing
Smok's "Smok Alien" mark is ongoing.

Finally, in the interest of brevity, Smok hereby incorporates by reference the
following paragraphs from Smok's Omnibus Position Regarding Document
Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the
definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85
goods); and 8 (regarding Smok's financial document production).

**REQUEST FOR PRODUCTION NO. 70:**

Documents sufficient to identify the number of vaporizer SMOK has sold
under each of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

Smok objects to this Request on the grounds that it is overbroad, unduly
burdensome, and not proportional to the needs of the case because (1) the

1   documents sought are entirely unrelated to Smok's alleged liability under the claims

2   asserted in Sarieddine's complaint or to any cognizable category of damages

3   Sarieddine could seek pursuant to those claims; (2) it seeks documents unrelated to

4   Smok's trademark use in the United States; and (3) Smok never sold any product

5   under the name "Alien Baby."

6   **PLAINTIFF'S POSITION:**

7       RFP No. 70 seeks basic data regarding Smok's total sales of its infringing

8   products, which are needed to compute Plaintiff's damages from Smok's trademark

9   infringement under 15 U.S.C. § 1117(a). Despite the clear relevance of these data,

10  Smok has objected to this Request because it calls for information regarding non-

11  U.S. sales and the "Alien Baby" product. Both objections are without merit.

12      As previously discussed, Smok *did* sell a vaporizer known as the "Alien

13  Baby." McConnell Decl., ¶ 28, Ex. 15. And even if Smok's contention regarding

14  "Alien Baby" were true (which it is not), that does not excuse Smok from

15  producing financial documents regarding any of the other Alien Kit Marks.

16      Smok is likewise obligated to produce documents reflecting its worldwide

17  sales of the infringing products. Plaintiff's Lanham Act and breach of contract

18  claims are not limited to U.S.-only sales. Even if these claims were so limited,

19  Plaintiff is still entitled to review Smok's underlying financial data to investigate

20  the veracity of Smok's claims regarding the sales of its infringing products within

21  the U.S.

22      The sole financial document that Smok has produced is the Excel spreadsheet

23  at SMOK002406, which is deficient because it was created specifically for this

24  lawsuit, is not accompanied by the underlying and supporting documents that were

25  used to create it, and presents an incomplete picture of Smok's revenue, profits, and

26  costs. This spreadsheet does not satisfy Smok's obligations to respond to RFP No.

27  70. Plaintiff requests that Smok withdraw its meritless objections and produce

28  documents responsive to RFP No. 70 within two weeks of the hearing on this

motion.

**SMOK'S POSITION:**

As a practical matter, the spreadsheet bates-labed SMOK 002406 establishes the number of Alien goods Smok has sold in the United States.

Finally, in the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); and 8 (regarding Smok's financial document production).

**REQUEST FOR PRODUCTION NO. 71:**

Documents sufficient to identify the average selling price of the vaporizers sold under each of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks financial documents that have no bearing on this action; (2) it seeks documents unrelated to Smok's trademark use in the United States; and (3) Smok never sold any product under the name "Alien Baby." Smok further objects on the grounds that the average selling price is vague and ambiguous in that it does not identify the seller and seeks to elicit an average of a dynamic cohort.

**PLAINTIFF'S POSITION:**

RFP No. 71 seeks basic data regarding the average prices of Smok's infringing products, which are needed to compute Plaintiff's damages from Smok's trademark infringement under 15 U.S.C. § 1117(a). Despite the clear relevance of these data, Smok has objected to this Request because it calls for information regarding non-U.S. sales and the "Alien Baby" product. Both objections are without merit.

As previously discussed, Smok *did* sell a vaporizer known as the "Alien Baby." McConnell Decl., ¶ 28, Ex. 15. And even if Smok's contention regarding "Alien Baby" were true (which it is not), that does not excuse Smok from producing financial documents regarding any of the other Alien Kit Marks.

Smok is likewise obligated to produce documents reflecting its worldwide sales of the infringing products. Plaintiff's Lanham Act and breach of contract claims are not limited to U.S.-only sales. Even if these claims were so limited, Plaintiff is still entitled to review Smok's underlying financial data to investigate the veracity of Smok's claims regarding the sales of its infringing products within the U.S.

The sole financial document that Smok has produced is the Excel spreadsheet at SMOK002406, which is deficient because it was created specifically for this lawsuit, is not accompanied by the underlying and supporting documents that were used to create it, and presents an incomplete picture of Smok's revenue, profits, and costs. This spreadsheet does not satisfy Smok's obligations to respond to RFP No. 71. Plaintiff requests that Smok withdraw its meritless objections and produce documents responsive to RFP No. 71 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Sarieddine's position wholly ignores Smok's vagueness and ambiguity objection. Sarieddine does not identify which seller or sellers are to be included in calculating an "average selling price," nor does Sarieddine explain how an "average selling price can be identified when sales are ongoing.

Finally, in the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85

1   goods); and 8 (regarding Smok's financial document production).

2

3   **REQUEST FOR PRODUCTION NO. 72:**

4   Documents sufficient to identify the total revenue to SMOK from each of the

5   goods bearing any of SMOK's Alien Kit marks.

6   **RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

7   Smok objects to this Request on the grounds that it is overbroad, unduly

8   burdensome, and not proportional to the needs of the case because (1) it seeks

9   documents related to goods bearing Smok's Alien Kit Marks outside the United

10   States and (2) Smok never sold any product under the name "Alien Baby." Smok

11   will not search for or produce documents related to Smok's revenue from products

12   sold outside the United States. Smok will not search for or produce financial

13   documents relating to its AL85 product. Smok further objects on the grounds that

14   total revenue to Smok is vague and ambiguous. Smok interprets "total revenue" to

15   mean "gross revenue."  Smok will produce non-privileged documents—if any—

16   sufficient to identify the gross revenue to Smok from United States sales of each of

17   the goods bearing Smok's "Smok Alien" mark.

18   **PLAINTIFF'S POSITION:**

19   RFP No. 72 seeks essential data regarding Smok's revenue from selling the

20   infringing products at issue, which are necessary to compute Plaintiff's damages

21   from Smok's trademark infringement under 15 U.S.C. § 1117(a).  Despite the clear

22   relevance of these data, Smok has objected to this Request because it calls for

23   information regarding non-U.S. sales and the "Alien Baby" product.  Both

24   objections are without merit.

25   As previously discussed, Smok *did* sell a vaporizer known as the "Alien

26   Baby."  *See, e.g.*, SMOK001988. And even if Smok's contention regarding "Alien

27   Baby" were true (which it is not), that does not excuse Smok from producing

28   financial documents regarding any of the other Alien Kit Marks.

Smok is likewise obligated to produce documents reflecting its worldwide sales of the infringing products.  Plaintiff's Lanham Act and breach of contract claims are not limited to U.S.-only sales.  Even if these claims were so limited, Plaintiff is still entitled to review Smok's underlying financial data to investigate the veracity of Smok's claims regarding the sales of its infringing products within the U.S.

The sole financial document that Smok has produced is the Excel spreadsheet at SMOK002406, which is deficient because it was created specifically for this lawsuit, is not accompanied by the underlying and supporting documents that were used to create it, and presents an incomplete picture of Smok's revenue, profits, and costs.  This spreadsheet does not satisfy Smok's obligations to respond to RFP No. 72.  Plaintiff requests that Smok withdraw its meritless objections and produce documents responsive to RFP No. 72 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85 goods); and 8 (regarding Smok's financial document production).

**REQUEST FOR PRODUCTION NO. 73:**

Documents sufficient to identify the total revenue of SMOK from January 2016 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 73:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks

financial documents that have no bearing on this action; (2) it seeks documents unrelated to Smok's use of allegedly infringing marks; and (3) it seeks documents unrelated to trademark use in the United States.  Smok further objects on the grounds that this Request is not relevant to any claim or defense in the case.

**PLAINTIFF'S POSITION:**

Smok's refusal to produce any of its revenue documents is improper. Plaintiff needs to see Smok's underlying financial statements and accounting documents to calculate Smok's revenue from selling products that infringed Plaintiff's trademarks.  Such evidence is needed to compute Plaintiff's damages from Smok's trademark infringement under 15 U.S.C. § 1117(a).

As previously explained, the only financial document that Smok has produced is an Excel spreadsheet (SMOK002406). Smok cannot fulfill its discovery obligations by producing this spreadsheet, which does not fully reflect Smok's revenue from selling the infringing products at issue.  Among other problems, the spreadsheet does not include data for Smok's AL85 vaporizer, also known as the "Alien Baby," and is also limited to U.S. sales, even though none of Plaintiff's claims are so limited.

At the very least, Smok must produce the underlying financial statements that it used to create this spreadsheet.  *Wahoo Int'l, Inc. v. Phix Doctor, Inc.,* 2014 U.S. Dist. LEXIS 98044, at *20-21.  Without these underlying financial documents, Plaintiff has no way of investigating the accuracy of the summary presented in Smok's Excel spreadsheet.  Moreover, none of the data in this spreadsheet are admissible without the underlying financial documents.  *H-D Mich., Inc. v. Bikers Dream, Inc.,* 1998 U.S. Dist. LEXIS 17259, at *18.

The fact that RFP No. 73 seeks financial documents regarding Smok's revenue from selling products outside the U.S. does not excuse Smok from responding to this Request.  As previously discussed, Plaintiff's Lanham Act and breach of contract claims are not limited to U.S.-only sales.  Even if these claims

were so limited, Plaintiff is still entitled to review Smok's underlying financial data to investigate the veracity of Smok's claims regarding the sales of its infringing products within the U.S.  Smok must therefore produce its underlying accounting and financial documents that fully reflect Smok's revenue, profits, and costs for all goods bearing Smok's Alien Kit Marks.  Plaintiff requests that Smok produce these documents within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

This request is woefully overbroad. Even if Sarieddine were entitled to Smok's worldwide financial information for both Alien and AL85 (which Sarieddine is not), this request would still seek disclosure of revenue from Smok's many other goods. To give one example out of dozens, Smok is not required to disclose revenues from sales of Smok's T-PRIV kit.

Finally, in the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85 goods); and 8 (regarding Smok's financial document production).

**REQUEST FOR PRODUCTION NO. 74:**

Documents sufficient to identify SMOK's total profits from selling any goods bearing each of SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks documents related to goods bearing Smok's Alien Kit Marks outside the United States and (2) Smok never sold any product under the name "Alien Baby." Smok will not search for or produce documents related to Smok's profits from products sold outside the United States. Smok will not search for or produce any financial

documents relating to its AL85 product. Smok will produce non-privileged documents—if any—sufficient to identify Smok's total profits from selling any goods in the United States goods bearing each of Smok's Smok Alien mark.

**PLAINTIFF'S POSITION:**

RFP No. 74 seeks essential data regarding Smok's profits from selling the infringing products at issue, which are necessary to compute Plaintiff's damages from Smok's trademark infringement under 15 U.S.C. § 1117(a).  Despite the clear relevance of these data, Smok has improperly objected to this Request because it calls for information regarding non-U.S. sales and information regarding the "Alien Baby" product.  Both objections are without merit.

As previously discussed, Smok *did* sell a vaporizer known as the "Alien Baby."  *See, e.g.*, SMOK001988. And even if Smok's contention regarding "Alien Baby" were true (which it is not), that does not excuse Smok from producing financial documents regarding any of the other Alien Kit Marks.

Smok is likewise obligated to produce documents reflecting its worldwide sales of the infringing products.  Plaintiff's Lanham Act and breach of contract claims are not limited to U.S.-only sales.  Even if these claims were so limited, Plaintiff is still entitled to review Smok's underlying financial data to investigate the veracity of Smok's claims regarding the sales of its infringing products within the U.S.

The sole financial document that Smok has produced is the Excel spreadsheet at SMOK002406, which is deficient because it was created specifically for this lawsuit, is not accompanied by the underlying and supporting documents that were used to create it, and presents an incomplete picture of Smok's revenue, profits, and costs.  This spreadsheet does not satisfy Smok's obligations to respond to RFP No. 74.  Plaintiff requests that Smok withdraw its meritless objections and produce documents responsive to RFP No. 74 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85 goods); and 8 (regarding Smok's financial document production).

**REQUEST FOR PRODUCTION NO. 75:**

All Documents relating to any revenue or business projections or forecasts for any products sold under SMOK's Alien Kit Marks.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) the documents sought are entirely unrelated to Smok's alleged liability under the claims asserted in Sarieddine's complaint or to any cognizable category of damages Sarieddine could seek pursuant to those claims; (2) it seeks documents unrelated to trademark use in the United States; and (3) Smok never sold any product under the name "Alien Baby."  Smok further objects to this Request on the grounds that "documents relating to business projections or forecasts" is vague and ambiguous and could constitute virtually every document possessed by a corporation.

**PLAINTIFF'S POSITION:**

RFP No. 75 seeks Smok's revenue forecasts for the infringing products at issue, which are relevant to computing Plaintiff's damages from Smok's trademark infringement under 15 U.S.C. § 1117(a).  These documents also provide insight into Smok's motivations for infringing Plaintiff's trademarks, which are relevant to Plaintiff's claims that Smok willfully infringed Plaintiff's marks and breached the Settlement Agreement in bad faith.  Despite the clear relevance of these data, Smok has improperly objected to this Request because it calls for information regarding

non-U.S. sales and the "Alien Baby" product.  Both objections are without merit.

As previously discussed, Smok *did* sell a vaporizer known as the "Alien Baby."  *See, e.g.*, SMOK001988. And even if Smok's contention regarding "Alien Baby" were true (which it is not), that does not excuse Smok from producing financial documents regarding any of the other Alien Kit Marks.

Smok is likewise obligated to produce documents reflecting its worldwide sales of the infringing products.  Plaintiff's Lanham Act and breach of contract claims are not limited to U.S.-only sales.  Even if these claims were so limited, Plaintiff is still entitled to review Smok's underlying financial data to investigate the veracity of Smok's claims regarding the sales of its infringing products within the U.S.

The sole financial document that Smok has produced is the Excel spreadsheet at SMOK002406, which is deficient because it was created specifically for this lawsuit, is not accompanied by the underlying and supporting documents that were used to create it, and presents an incomplete picture of Smok's revenue, profits, and costs.  This spreadsheet does not satisfy Smok's obligations to produce the revenue forecasts sought by RFP No. 75.

Smok's objection that this Request "could constitute virtually every document possessed by a corporation" is likewise meritless.  RFP No. 75 does not call for "every document" in Smok's possession; it seeks only those documents regarding Smok's "Alien Kit Marks" products and is further limited to documents discussing revenue forecasts for those products.  Plaintiff requests that Smok withdraw its meritless objections and produce documents responsive to RFP No. 75 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Sarieddine is incorrect that his damages calculations flow from business projections, as opposed to Smok's actual profits. And a business projection or forecast can provide no "insight" regarding Smok's motivations for its adoption of

any particular mark. Instead, such documents merely make an educated guess regarding future revenue, expenses, and profits.

Once again, Sarieddine fails to recognize that his own broad definition of "relating to" would sweep in an unduly burdensome volume of documents. Nearly every document in Smok's possession, custody, or control related to the goods at issue (for example, every copy of every advertisement or promotion for Smok's Alien goods) would be "connected with" Smok's "revenue or business projections or forecasts." The scope of this request is not proportional to the needs of the case, yet Sarieddine has made no effort to narrow it.

Finally, in the interest of brevity, Smok hereby incorporates by reference the following paragraphs from Smok's Omnibus Position Regarding Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); 6-7 (regarding financial information for AL85 goods); and 8 (regarding Smok's financial document production).

**REQUEST FOR PRODUCTION NO. 76:**

All Documents and Communications supporting SMOK's allegation that "A prohibition on sales in the United States of vaporizers named Alien Kit, AL85, and AL230 for one year would causes losses to Smok of more than $50 million in revenue and more than $5 million in profits."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Smok objects to this Request on the grounds that it is moot because Smok made the quoted statement in opposition to Sarieddine's motions for temporary injunctive relief, which motions have since been denied. Smok further objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks financial information that has no bearing on this action and (2) it seeks to force Smok's counsel to make legal determinations. Smok further objects to this Request on the grounds that it seeks

documents and communications protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege.  Smok further objects on the grounds that the Request mischaracterizes the quoted language as an allegation when it is not an allegation in any claim or defense.

**PLAINTIFF'S POSITION:**

Smok's refusal to produce any documents in response to this Request is improper. This discovery request is not "moot" simply because it seeks information regarding a statement that Smok made in its opposition to Plaintiff's request for preliminary injunctive relief.  That motion has been decided, but Smok's revenue and profits from infringing Plaintiff's trademarks clearly has not been determined. Smok made a statement under a penalty of perjury regarding its revenue and profits from selling products that infringed Plaintiff's trademarks.  Smok has no basis for refusing to produce documents regarding that statement and how Smok calculated its claims of "$50 million in revenue and more than $5 million in profits," which are directly relevant to the computation of Plaintiff's damages.  Plaintiff therefore requests that Smok produce documents responsive to RFP No. 76 within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Sarieddine tries to justify this request by pointing to the need to determine Smok's revenue and profits. But those are sought in multiple other requests, and Smok has produced documentation of revenue and profits from its sale of Alien goods in the United States.

Plaintiff's position as to additional documents responsive to this request intentionally ignores the difference between calculation of actual revenue and profits and ***projections*** of revenues and profits. Smok does not dispute that Plaintiff is entitled to know Smok's revenues and profits for Smok's Alien goods in the United States, but that does not give Plaintiff free reign to explore facts underlying a financial projection made in June 2017. Moreover, nine months have passed since

that year-long projection. Any projections for that time period have given way to actual revenue and profits.

**REQUEST FOR PRODUCTION NO. 77:**

All Documents and Communication supporting your allegation that "Welfer OuYang agreed to sign the purported agreement because he believed Sarieddine's registrations for the ALIEN VAPE Marks automatically gave Sarieddine superior trademark rights, as would be the case under Chinese law. Based on statements made by Sarieddine, OuYang understood that the purpose of the Purported Agreement was to give Sarieddine the access he desired to Smok's sales channels and to introduce Sarieddine's products into new markets. In exchange for Smok's purchase and marketing of Sarieddine's products, OuYang understood that Sarieddine would not challenge Smok's use of Smok's ALIEN mark." (Internal Citations Omitted).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 77:**

Smok objects to this Request on the grounds that it seeks documents and communications protected by the attorney-client privilege, the attorney work product doctrine, and the common interest privilege. Smok will produce non-privileged documents and communications—if any— supporting the referenced language.

**PLAINTIFF'S POSITION:**

Smok had agreed to produce non-privileged documents and communications in response to this Request. However, it does not appear that Smok has produced all responsive documents, as Smok has yet to produce a single internal communication or email on this topic.  Plaintiff reasonably expects that Smok has internal emails and documents regarding the decision of Smok's CEO to enter into the settlement agreement.  Plaintiff asks that these documents be produced within two weeks of the hearing on this motion.

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

**SMOK'S POSITION:**

Smok's search for non-privileged documents responsive to this request is ongoing.

Finally, in the interest of brevity, Smok incorporates paragraph 2 (regarding internal documents) of Smok's Omnibus Position Regarding Document Requests.

**REQUEST FOR PRODUCTION NO. 79:**

All Documents supporting or refuting your denial that SMOK marketed a vaporizer product in January 2017 named the "Alien Baby", in paragraph 6 of your Amended Answer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because "all documents" supporting Smok's denial would include every document that refers to the AL85 product by the name AL85. Smok will not search for or produce all such documents. Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents—if any—that refute Smok's denial that it marketed a vaporizer product in January 2017 named the "Alien Baby." Smok also will produce representative non-privileged documents—if any—supporting the aforementioned denial.

**PLAINTIFF'S POSITION:**

Smok improperly objected that this Request is overbroad because "all documents supporting Smok's denial would include every document that refers to the AL85 product by the name AL85." However, RFP No. 79 does not ask Smok to produce every document that uses the term AL85.  Rather, it asks Smok for evidence regarding Smok's contention that it never marketed a product named "Alien Baby." As previously discussed, emails and advertisements demonstrate that

Smok marketed and advertised its AL85 vaporizer under the name "Alien Baby." McConnell Decl., ¶ 28, Ex. 15. To understand the discrepancy between these advertisements and Smok's position in this lawsuit, Plaintiff is entitled to review Smok's documents supporting its contention that it never marketed a vaporizer under the "Alien Baby" name.

During the parties' meet and confer session on March 5, 2018, Smok agreed to search for documents responsive to RFP No. 79. McConnell Decl., ¶ 21. Plaintiff asks that Smok produce these responsive documents within two weeks of the hearing on this Motion.

**SMOK'S POSITION:**

Smok's support for denying that it marketed a product named the "Alien Baby" is that the name of the product in question has always been "AL85". Thus, "all documents" supporting this denial would include every document referring to the AL85 product by the name AL85. Plaintiff has made no attempt to narrow the overbroad scope of this request.

**REQUEST FOR PRODUCTION NO. 81:**

All Documents relating to or supporting any of SMOK's Affirmative Defense in its Amended Answer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

Smok objects to this request on the grounds that it is moot in light of Sarieddine's stated intention to file an Amended Complaint. Smok further objects to this Request on the grounds that it is unduly burdensome and not proportional to the needs of the case because it seeks to force Smok's counsel to make legal determinations. Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, or the common interest doctrine.

**PLAINTIFF'S POSITION:**

Smok objected that this Request is "moot in light of Sarieddine's stated intention to file an Amended Complaint." During the parties' meet and confer session, Plaintiff asked that Smok interpret this Request as applying to the Affirmative Defenses of Smok's most recently filed Amended Counterclaims (Dkt. 184). McConnell Decl., ¶ 35, Ex. 19. Plaintiff requests that Smok produce documents regarding these affirmative defenses within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

During the meet and confer, Smok agreed to interpret this RFP as applying to Smok's amended affirmative defenses. Smok has already produced numerous documents relating to or supporting its amended affirmative defenses, and intends to produce additional responsive documents by May 30, 2018.

**REQUEST FOR PRODUCTION NO. 86:**

All Documents that SMOK is asked to identify in responding to any of Plaintiff's Interrogatories to SMOK, or from which SMOK derives information used in preparing said responses.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

Smok objects to this Request on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks production of documents which Smok was asked to identify in Interrogatories that where wholly or partially objectionable. Smok will not search for or produce documents that it objected to identifying in responding to Plaintiff's Interrogatories. Smok further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok will produce non-privileged documents—if any— that Smok identified in responding to Plaintiff's Interrogatories. Smok also will produce non-privileged documents—if any—from which Smok derived

1    information in preparing those responses.

2    **PLAINTIFF'S POSITION:**

3    It does not appear that Smok has produced the documents it used to answer

4    Plaintiff's interrogatories.  For example, Interrogatories Nos. 3-4 and 6 seek

5    information regarding Smok's revenue, profits, and costs from selling the infringing

6    products at issue, but Smok has not produced any underlying financial documents.

7    The sole financial document that Smok has produced is the spreadsheet at

8    SMOK002406, which is incomplete for the reasons previously discussed.  This

9    spreadsheet was clearly made from other more detailed financial and accounting

10   documents.  Plaintiff asks that Smok produce the underlying financial documents

11   that Smok used to create the spreadsheet at SMOK002406 and which were also

12   used to provide information in response to Interrogatories Nos. 3-4 and 6.  Plaintiff

13   asks that Smok produce all documents that it used in responding to Plaintiff's

14   interrogatories within two weeks of the hearing on this motion.

15   **SMOK'S POSITION:**

16   Plaintiff's sole complaint regarding Smok's production in response to this

17   RFP relates to information derived in preparing Smok's responses to Interrogatory

18   Nos. 3-4 and 6. Smok's responses to those Interrogatories were derived from the

19   spreadsheet bates-labeled SMOK002406, which Smok has already produced.

20

21   **D. Plaintiff's Omnibus Position Regarding Interrogatories**

22   Smok has failed to substantively respond to more than half of Plaintiff's

23   interrogatories, despite having six months to respond.  Smok still has not provided

24   *any* information in response to Interrogatories Nos. 5, 8, 12, and 17 and instead has

25   asserted unsubstantiated objections that improperly limit Smok's obligation to

26   provide the requested information.  For example, Smok objected to Interrogatory

27   No. 8 on attorney-client privilege grounds, even though that Interrogatory expressly

28   calls for communications between Smok and third parties.  Smok has not provided

JOINT STIPULATION REGARDING
PLAINTIFF'S MOTION TO COMPEL
Case No. 2:17-cv-02390-DSF-SK

any authority for its position that its communications with third parties are privileged, nor has it provided a privilege log.  Smok's responses to Plaintiff's remaining interrogatories are replete with similarly baseless objections.

The few interrogatories that Smok has answered suffer from critical deficiencies.  Smok disclosed only three numbers in response to Interrogatories Nos. 3, 4, and 6, which seek essential information regarding Smok's costs, profits, and revenue from selling the infringing products at issue.  Smok has represented that these three numbers represent its costs, profits, and revenue from selling *one* of the infringing products, based on U.S. sales only.  Smok has refused, without justification, to produce any cost, revenue, or profit information for the other infringing products in this lawsuit.  Smok has likewise refused to produce any data for sales that occurred outside the U.S., even though the parties' Settlement Agreement applied "worldwide," and Plaintiff's breach of contract claims therefore include Smok's infringement outside the United States.  Nor has Smok provided a breakdown of its profits, costs, and revenue information, by product, financial quarter, and country, as requested by Plaintiff's interrogatories.

Moreover, Smok has yet to produce any verifications for its interrogatory responses in violation of FRCP 33, which requires that interrogatories be verified by the answering party under oath. Plaintiff has been asking Smok to produce these outstanding verifications since Plaintiff sent its first letter, dated November 28, 2017, regarding deficiencies in Smok's interrogatory responses.  McConnell Decl., ¶ 7, Ex. 5.

After six months, Smok has produced only a fraction of the information requested by Plaintiff's interrogatories and continues to assert unfounded objections to avoid answering Plaintiff's interrogatories in full.  Plaintiff therefore requests a Court Order requiring Smok provide substantive, verified interrogatory responses within two weeks of the hearing on this motion.  Plaintiff's Interrogatories, and the relevant portions of Smok's responses thereto, are identified below.

### E. Smok's Omnibus Position Regarding Interrogatories

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); and 6-7 (regarding financial information for AL85 goods).

As to providing profits, costs, and revenue broken down by quarter, pursuant to Fed. R. Civ. P. 33(d), Plaintiff can derive that information from the spreadsheet bates-labeled SMOK002406. Smok will amend its interrogatory responses to reflect this.

### F. Interrogatories That Are in Dispute

**INTERROGATORY NO. 3:**

Identify the total amount of costs that SMOK has incurred relating to the products sold, or offered for sale, under the Alien Kit Marks. The identification shall include a breakdown of the costs incurred, type of cost, and an identification of all documents relating to those costs.

**RESPONSE TO INTERROGATORY NO. 3:**

Smok objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks information unrelated to trademark use in the United States and (2) Smok never sold any product under the name "Alien Baby." Smok further objects to this Interrogatory on the grounds that it is unduly burdensome because identifying "all documents relating to those costs" would be unnecessary to disclose the cost information Sarieddine seeks through this Interrogatory. Smok will not search for or provide answers regarding its costs relating to products sold or offered for sale outside the United States, nor will Smok identify all documents relating to the costs it has incurred relating to products sold or offered for sale under the Alien Kit Marks. Smok will not search for or provide financial information relating to its

AL85 product. [Remaining response redacted as Attorney's Eyes Only pursuant to Stipulated Protective Order (D.I. 157) and separately produced to counsel.].

**PLAINTIFF'S POSITION:**

Interrogatory No. 3 asks Smok to identify the total amount of costs it incurred from selling goods under the "Alien Kit Marks."  Like Plaintiff's RFPs, Plaintiff's interrogatories define "Alien Kit Marks" as encompassing all Smok's Alien-branded products in this lawsuit, which Smok sold in breach of the parties' settlement agreement and in violation of Plaintiff's federal trademark rights. These products include Alien Kit aka AL220, Alien Mod, Alien Baby aka AL85, and the Alien 2 aka AL230.  In addition to asking Smok to provide its total costs from selling these products, Interrogatory No. 3 also asks Smok to provide a breakdown of these costs by product sold.  This information is needed to compute Plaintiff's damages from Smok's trademark infringement under 15 U.S.C. § 1117(a).

Smok has failed to meaningfully respond to Interrogatory No. 3.  Smok provided only one number in response to this interrogatory, which Smok said reflected its "direct costs" for its U.S.-only sales of its "Smok Alien" product. Smok refused to provide any cost information for its other product sold under the "Alien Kit Marks" and also refused to provide cost information for worldwide sales. Plaintiff asks that Smok withdraw its objections and fully respond to Interrogatory No. 3 for the following reasons.

First, Smok has no basis for refusing to search for or produce any financial information regarding its other products sold under the Alien Kit Marks.  Smok's refusal to produce any information for its AL85 vaporizer, advertised as the "Alien Baby" product, is particularly egregious.  This vaporizer is a key product in this lawsuit, mentioned throughout Plaintiff's First Amended Complaint as a product that Smok sold in breach of the parties' settlement agreement and in violation of Plaintiff's trademark rights. Data regarding Smok's costs from selling this infringing product are directly relevant to Plaintiff's damages in this lawsuit.

Smok's false assertion in its response to Interrogatory No. 3 that it "never sold any product under the name 'Alien Baby'" is contradicted by Smok's own documents. McConnell Decl., ¶ 28, Ex. 15. Furthermore, Smok's Twitter and Instagram accounts continue to display posts promoting the AL85 vaporizer using the #alienbaby hashtag. *Id.*, ¶ 36, Exs. 20-21.

Smok's refusal to provide any data regarding the sales of its Alien-branded vaporizers outside of the United States is likewise improper. As previously explained herein, Smok's objection is inconsistent with the claims in this lawsuit. The parties' settlement agreement applied worldwide, and Plaintiff's Lanham Act claims are not limited to acts of trademark infringement that occurred within the United States. Even if the Court does eventually decide that Plaintiff's Lanham Act claims do not apply extraterritorially, such a decision would not give Smok unfettered discretion to "cherry-pick" financial data to produce in this case. Plaintiff has the right to examine Smok's financial data regarding all sales of its infringing products to investigate the veracity of Smok's claimed sales in the United States. *See Wahoo Int'l, Inc. v. Phix Doctor, Inc.,* 2014 U.S. Dist. LEXIS 98044, at *20-21.

Plaintiff therefore requests that Smok revise its response to Interrogatory No. 3 to include its costs for all products sold under the Alien Kit Marks and that it also include the costs from the worldwide sales of these goods. In addition, Smok should provide a per-product breakdown of these costs, as requested by the Interrogatory. Furthermore, Smok should produce the underlying financial documents that it used to respond to Interrogatory No. 3. Plaintiff requests that Smok provide its amended response to Interrogatory No. 3, along with the underlying financial documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit

Marks"); and 6-7 (regarding financial information for AL85 goods).

**INTERROGATORY NO. 4:**

Identify the total profits that SMOK has derived from all products sold or offered for sale under the Alien Kit Marks. The identification shall include a breakdown of SMOK's profits, by product on a quarterly basis, from first sale to the present.

**RESPONSE TO INTERROGATORY NO. 4:**

Smok objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) it seeks information unrelated to trademark use in the United States and (2) Smok never sold any product under the name "Alien Baby." Smok will not search for or provide answers regarding its profits relating to products sold or offered for sale outside the United States. Smok will not search for or provide financial information relating to its AL85 product. [Remaining response redacted as Attorney's Eyes Only pursuant to Stipulated Protective Order (D.I. 157) and separately produced to counsel.].

**PLAINTIFF'S POSITION:**

Interrogatory No. 4 asks Smok to identify the total amount of profits it incurred from selling goods under the "Alien Kit Marks" and also asks Smok to provide a breakdown of these profits by product sold.  This information is needed to compute Plaintiff's damages from Smok's trademark infringement under 15 U.S.C. § 1117(a).

Smok has failed to meaningfully respond to Interrogatory No. 4.  Smok provided only one number in response to this interrogatory, which Smok said reflected its "gross profits" for its U.S.-only sales of its "Smok Alien" product. Smok refused to provide any profit information for its other product sold under the "Alien Kit Marks" and also refused to provide profit information for worldwide sales.  Plaintiff asks that Smok withdraw its objections and fully respond to

Interrogatory No. 4 for the following reasons.

First, Smok has no basis for refusing to search for or produce any financial information regarding its other products sold under the "Alien Kit Marks."  As previously discussed, Plaintiff's claims encompass all products sold under the "Alien Kit Marks," and Plaintiff therefore needs data regarding Smok's profits from selling these products to calculate damages in this lawsuit.  Smok's false assertion in its response to Interrogatory No. 4 that it "never sold any product under the name 'Alien Baby'" is contradicted by Smok's own documents and promotions on social media.  McConnell Decl., ¶¶ 28 and 36; Exs. 15; 20-21.

Smok's refusal to provide any data regarding the sales of its Alien-branded vaporizers outside of the United States is likewise improper.  As previously explained herein, Smok's limitation is inconsistent with the claims in this lawsuit.  The parties' settlement agreement applied "worldwide" and Plaintiff's Lanham Act claims against Smok are not limited to acts of trademark infringement that occurred within the United States.  In any event, Plaintiff has the right to examine Smok's underlying financial documents regarding all sales of its infringing products to investigate the veracity of Smok's claims its sales in the United States.  *See, e.g., Wahoo Int'l, Inc. v. Phix Doctor, Inc.,* 2014 U.S. Dist. LEXIS 98044, at *20-21.

Plaintiff therefore requests that Smok revise its response to Interrogatory No. 4 to include its profits for all products sold under the Alien Kit Marks and that it also include profits from the worldwide sales of these goods.  In addition, Smok should provide a per-product breakdown of these profits, as requested by the Interrogatory.  Furthermore, Smok should produce the underlying financial documents that it used to respond to Interrogatory No. 4. Plaintiff requests that Smok provide its amended response to Interrogatory No. 4, along with the underlying financial documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following

paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); and 6-7 (regarding financial information for AL85 goods).

**INTERROGATORY NO. 5:**

Identify all facts supporting SMOK's contention that "[i]f Smok is prohibited from selling its ALIEN, AL85, and AL230 vaporizers for a year while awaiting trial, Smok would project to lose well over $50 million in revenue and $5 million in profits." (Dkt. 102-1 at page 11). The identification shall include, without limitation, all documents relating to this contention, as well as facts sufficient to demonstrate how SMOK arrived at its "$50 million in revenue and $5 million in profits" calculations.

**RESPONSE TO INTERROGATORY NO. 5:**

Smok objects to this Interrogatory on the grounds that it is moot because Smok made the quoted prediction in opposition to Sarieddine's motions for temporary injunctive relief, which motions have since been denied. Smok further objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks dated, predictive financial information that has no bearing on this action. Smok further objects to this Interrogatory on the grounds that it is unduly burdensome to identify "all documents relating" to anticipated sales of so many products.

**PLAINTIFF'S POSITION:**

Smok has improperly refused to answer this interrogatory, claiming that the interrogatory is "moot" because Smok had represented that it would "lose well over $50 million in revenue and $5 million in profits" in its opposition to Plaintiff's motion for injunctive relief. However, the fact that Plaintiff's motion for injunctive relief was denied does not render this issue "moot." The question of how Smok calculates its revenue and profits from selling its infringing products is very much a

1   live issue.  Plaintiff is entitled to understand how Smok calculates its revenue and

2   profits and how Smok makes financial predictions regarding the infringing products

3   at issue.

4       Plaintiff therefore requests that Smok amend its response to Interrogatory

5   No. 5 to explain how it estimated that it would "lose well over $50 million in

6   revenue and $5 million in profits" if it were enjoined from selling its ALIEN,

7   AL85, and AL230 vaporizers for a year.  Smok should also produce the underlying

8   financial documents that it used to respond to this interrogatory. Plaintiff requests

9   that Smok provide its amended response to Interrogatory No. 5, as well as the

10  supporting financial documents, within two weeks of the hearing on this motion.

11  **SMOK'S POSITION:**

12      Plaintiff's position intentionally ignores the difference between calculation of

13  actual revenue and profits and ***projections*** of revenues and profits. Smok does not

14  dispute that Plaintiff is entitled to know Smok's revenues and profits for Smok's

15  Alien goods in the United States, but that does not give Plaintiff free reign to

16  explore facts underlying a financial projection made in June 2017. Moreover, nine

17  months have passed since that year-long projection. Any projections for that time

18  period have given way to actual revenue and profits.

19

20  **INTERROGATORY NO. 6:**

21      Identify SMOK's total gross revenue from the sale of any and all goods

22  bearing any of the Alien Kit Marks, broken down by product and country, from first

23  sale to the present.

24  **RESPONSE TO INTERROGATORY NO. 6:**

25      Smok objects to this Interrogatory on the grounds that it is overbroad, unduly

26  burdensome, and not proportional to the needs of the case because (1) it seeks

27  information unrelated to trademark use in the United States and (2) Smok never

28  sold any product under the name "Alien Baby." Smok will not search for or provide

answers regarding its gross revenue for products sold or offered for sale outside the United States. Smok will not search for or provide financial information relating to its AL85 product. [Remaining response redacted as Attorney's Eyes Only pursuant to Stipulated Protective Order (D.I. 157) and separately produced to counsel.].

**PLAINTIFF'S POSITION:**

Interrogatory No. 6 asks Smok to identify its total revenue from selling goods under the "Alien Kit Marks" and also asks Smok to provide a breakdown of the revenue by country and product sold. This information is needed to compute Plaintiff's damages from Smok's trademark infringement under 15 U.S.C. § 1117(a).

Smok has failed to meaningfully respond to Interrogatory No. 6. Smok provided only one number in response to this interrogatory, which Smok said reflected its "gross revenue" for its U.S.-only sales of its "Smok Alien" product. Smok refused to provide any revenue information for its other product sold under the "Alien Kit Marks" and also refused to provide revenue information for worldwide sales. Plaintiff asks that Smok withdraw its objections and fully respond to Interrogatory No. 6 for the following reasons.

First, Smok has no basis for refusing to search for or produce any financial information regarding its other products sold under the "Alien Kit Marks." As previously discussed, Plaintiff's claims encompass all products sold under the "Alien Kit Marks," and Plaintiff therefore needs data regarding Smok's revenue from selling these products to calculate damages in this lawsuit. Smok's false assertion in its response to Interrogatory No. 6 that it "never sold any product under the name 'Alien Baby'" is contradicted by Smok's own documents and promotions on social media. McConnell Decl., ¶¶ 28 and 36; Exs. 15; 20-21.

Smok's refusal to provide any data regarding the sales of its Alien-branded vaporizers outside of the United States is likewise improper. As previously explained herein, Smok's objection is inconsistent with the claims in this lawsuit.

The parties' settlement agreement applied "worldwide" and Plaintiff's Lanham Act claims against Smok are not limited to acts of trademark infringement that occurred within the United States.  In any event, Plaintiff has the right to examine Smok's underlying financial documents regarding all sales of its infringing products to investigate the veracity of Smok's claims its sales in the United States.  *See Wahoo Int'l, Inc. v. Phix Doctor, Inc.,* 2014 U.S. Dist. LEXIS 98044, at \*20-21.

Plaintiff therefore requests that Smok revise its response to Interrogatory No. 6 to include its revenue for all products sold under the Alien Kit Marks and that it also include revenue from the worldwide sales of these goods.  In addition, Smok should provide a per-product and per-country breakdown of these profits, as requested by the Interrogatory.  Furthermore, Smok should produce the underlying financial documents that it used to respond to Interrogatory No. 6. Plaintiff requests that Smok provide its amended response to Interrogatory No. 6, along with the underlying financial documents, within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

In the interest of brevity, Smok incorporates by reference the following paragraphs from Smok's Omnibus Position on Document Requests: 3-4 (regarding trademark use outside the United States); 5 (regarding the definition of "Alien Kit Marks"); and 6-7 (regarding financial information for AL85 goods).

**INTERROGATORY NO. 7:**

Identify every trademark application that SMOK has filed anywhere in the world that includes the term "ALIEN." The identification shall include, without limitation, the trademark application number, the country where the application was filed, and the date of filing.

**RESPONSE TO INTERROGATORY NO. 7:**

Smok objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks

information unrelated to trademark activity in the United States. Smok answers
only with respect to trademark applications Smok has filed in the United States that
include the term "ALIEN."

    • Application No. 87/411,300 for the mark SMOK ALIEN KIT, filed on
April 13, 2017. Smok filed a request for express abandonment of this application on
April 20, 2017. The USPTO issued a Notice of Abandonment on April 21, 2017.

**PLAINTIFF'S POSITION:**

    Smok had improperly restricted the scope of this Interrogatory to trademark
applications filed in the United States.  Interrogatory No. 7 seeks information
regarding *all* of Smok's trademark applications for "Alien," which were filed in
violation of the parties' settlement agreement.  Because the settlement agreement
applied "worldwide," trademark applications that Smok filed in China and
elsewhere are relevant to Plaintiff's breach of contract claims.  *See* Dkt. 165-1.

    During the parties' meet and confer session on March 5, 2018, Smok agreed
to revise its response to Interrogatory No. 7 to reflect the trademark applications it
filed in China that contained the term "Alien."  McConnell Decl., ¶ 21.  That is not
good enough. Smok must revise its response to reflect all trademark applications
filed <u>anywhere in the world</u> that contained the term "Alien". Plaintiff asks that
Smok provide its updated response to Interrogatory No. 7 within two weeks of the
hearing on this motion.

**SMOK'S POSITION:**

    As Smok's counsel noted during the meet and confer, Smok's only trademark
applications containing the term "Alien" were filed in China or the United States.
So Smok's amendment to identify the Chinese applications will reflect trademark
applications "<u>anywhere in the world</u>."


**INTERROGATORY NO. 8:**

    Identify all communications, before May 31, 2017, between SMOK and any

third parties that refer or relate to contesting, challenging, or invalidating Plaintiff's Alien Vape Marks. The identification shall include the date(s) of each communication, the parties to the communication, and the substance of the communication, as well as all documents relating to the communication.

**RESPONSE TO INTERROGATORY NO. 8:**

Smok objects to the Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok answers that it is not aware of any non-privileged communications prior to May 31, 2017, between Smok and any third parties, that refer or relate to contesting, challenging, or invalidating Plaintiff's Alien Vape Marks.

**PLAINTIFF'S POSITION:**

Smok had initially refused to provide the information requested by Interrogatory No. 8 on the grounds that "it is not aware of any non-privileged communications prior to May 31, 2017, between Smok and any third parties, that refer or relate to contesting, challenging, or invalidating Plaintiff's Alien Vape Marks." However, this assertion is contradicted by Smok's documents. For example, Smok's CEO admitted to speaking with Big Bang and working with them "to fight against" Plaintiff's "liquid trademark." McConnell Decl., ¶ 23, Ex. 13. Given this admission from Smok's CEO, there are presumably other communications between Smok and third parties regarding efforts to invalidate Plaintiff's trademarks.

During the parties' meet and confer session on March 5, 2018, Smok conceded that the requested communications *did* occur, but stated there was "no written record" of these communications. Smok agreed to revise its response to Interrogatory No. 8 to include information regarding these non-recorded communications. *Id*., ¶ 22.

However, Plaintiff has reason to believe that recorded communications

between Smok and third parties, which are responsive to Interrogatory No. 8, do exist.  As previously discussed, other documents produced in this lawsuit demonstrate Smok employees tend to use email, WeChat, and Skype to communicate with individuals outside the company.  *Id.*, ¶ 23, Ex. 13.  This is consistent with Plaintiff's own experience, as the vast majority of Plaintiff's communications with Smok occurred through these means.  *Id.*, ¶ 23.  Plaintiff therefore requests that Smok produce *all* communications with third parties that refer or relate to challenging Plaintiff's trademarks and that Smok revise its response to this Interrogatory to identify all recorded and non-recorded communications.

Furthermore, given the Court's recent order denying Big Bang's request to consolidate its case with the case against Smok, Smok should not withhold responsive communications with Big Bang on privilege grounds.  *See* Case No. Case 2:17-cv-00989-DSF-SK, Dkt. 71.  As the Court noted, the differences between Plaintiff's cases against Smok and Big Bang include "different defendants, different products in different geographic markets, and different time periods."  *Id.* Because of these significant differences, Smok and Big Bang are not pursuing a joint legal strategy, and most, if not all, communications with Big Bang would not fall within the purview of the common interest privilege.  *See, e.g., Nidec Corp. v. Victor Co.,* 249 F.R.D. 575, 579 (N.D. Cal. 2007) (noting that the common interest privilege applies only to communications made in the course of "formulating a *common legal strategy"* or otherwise furthering the parties' joint interest in a lawsuit).

To the extent that Smok has withheld responsive communications with third parties on any privilege grounds, including on joint defense or common interest privilege grounds, Smok must provide a privilege log.  In accordance with the instructions provided in Plaintiff's discovery requests, this privilege log should include the following information: (a) the date of the communication; (b) the

1  subject matter of the communication; (c) the names, addresses, job titles, and
2  employers of all persons with knowledge or a copy of the information, and (d) the
3  nature of the privilege asserted.

4      Smok should revise its response to Interrogatory 8, and produce all
5  communications used to answer this Interrogatory as well as a privilege log for any
6  withheld communications, within two weeks of the hearing on this motion.

7  **SMOK'S POSITION:**

8      During the meet and confer, Smok's position was that communications with
9  third parties regarding Sarieddine or the Alien Vape Marks had occurred; it was not
10  Smok's position that those communications necessarily referred or related to
11  contesting, challenging, or invalidating the Alien Vape Marks. If Smok can identify
12  any non-privileged responsive communications, it will amend its answer to this
13  Interrogatory accordingly.

14      Sarieddine's position regarding the common-interest privilege between Smok
15  and Big Bang is incorrect. While the two cases were not consolidated, there is
16  undisputed overlap between the cases with respect to a number of issues, including
17  the scope of protection for Sarieddine's ALIEN VAPE marks. Sarieddine's
18  implication that most communications Smok and Big Bang (including their
19  respective attorneys) would cover areas where the cases do not overlap is dubious.
20  Smok is entitled to withhold communications between its counsel and Big Bang's
21  by virtue of the common-interest privilege.

22      Finally, in the interest of brevity, Smok incorporates by reference the
23  following paragraphs from Smok's Omnibus Position on Document Requests: 9
24  (regarding third-party communications) and 12 (regarding a privilege log).

25

26  **INTERROGATORY NO. 12:**

27      Identify all facts relating to your affirmative defense that SMOK did not
28  perform under the Contract because Sarieddine's "ALIEN VAPE e-liquid did not

comply with Chinese regulations." (SMOK Amended Answer, Dkt. 139 at page 13). The identification should include, without limitation, the Chinese regulations at issue, the date that SMOK allegedly learned that Sarieddine's "ALIEN VAPE e-liquid did not comply with Chinese regulations," and the persons or entities who have knowledge of facts relating to this affirmative defense.

**RESPONSE TO INTERROGATORY NO. 12:**

Smok objects to this interrogatory on the grounds that it seems information protected by the attorney-client privilege and attorney work product doctrine. Chinese regulations govern the type of business that Smok can operate, and sales of Alien Vape branded e-juice are not consistent with Smok's obligations under those regulations. Smok is still investigating this interrogatory.

**PLAINTIFF'S POSITION:**

Smok failed to provide any information in response to this Interrogatory and simply states that "Chinese regulations govern the type of business that Smok can operate, and sales of Alien Vape branded e-juice are not consistent with Smok's obligations under those regulations. Smok is still investigating this interrogatory."

Plaintiff requests that Smok amend its response to provide substantive information regarding this affirmative defense. Given that Smok has been asserting this affirmative defense for the better part of a year, Plaintiff expects that Smok has some factual basis for asserting it. During the parties' meet and confer session on March 5, 2018, Smok agreed to provide information in response to this Interrogatory. McConnell Decl., ¶ 21. Plaintiff asks that Smok amend its response to Interrogatory No. 12 to provide the requested information within two weeks of the hearing on this motion.

**SMOK'S POSITION:**

Smok will amend its answer to this Interrogatory to provide additional facts.

**INTERROGATORY NO. 17:**

Identify all communications that refer or relate to any consumer confusion between Sarieddine's Alien Vape Marks and SMOK's Alien Kit Marks, including, without limitation, any instances when a third-party has inquired if there is a relationship between SMOK and Sarieddine, or whether SMOK is the source of any goods bearing Sarieddine's Alien Vape Marks. The identification shall include the date(s) of each communication, the parties to the communication, and the substance of the communication, as well as all documents relating to the communication.

**RESPONSE TO INTERROGATORY NO. 17:**

Smok objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product doctrine, or the common interest privilege. Smok further objects to this Interrogatory as overbroad, unduly burdensome, and not proportional to the needs of the case because it seeks information related to communications to which Smok was not a party. Smok answers that it is not aware of any non-privileged communications to which Smok was a party that refer or relate to any consumer confusion between Sarieddine's Alien Vape Marks and Smok's Alien Kit Marks.

**PLAINTIFF'S POSITION:**

Smok failed to provide any information in response to Interrogatory No. 17 on the grounds that it is "not aware of any non-privileged communications to which Smok was a party that refer or relate to any consumer confusion between Sarieddine's Alien Vape Marks and Smok's Alien Kit Marks." However, this statement is not credible. Plaintiff has produced dozens of communications with third parties expressing confusion between Sarieddine's Alien Vape Marks and Smok's Alien Kit Marks. McConnell Decl., ¶ 26. Plaintiff's First Amended Complaint includes additional examples of consumer confusion. *See* Dkt. 165 at ¶¶ 81- 82. Given the frequency with which Plaintiff has encountered third parties who expressed confusion between Sarieddine's Alien Vape Marks and Smok's Alien Kit

1  Marks, Plaintiff reasonably believes that Smok has also communications on this

2  topic within its possession, custody, or control.

3     Plaintiff asks that Smok revise its response to Interrogatory No. 17 to provide

4  the request information, and that Smok also produce the underlying

5  communications indicating consumer confusion, within two weeks of the hearing

6  on this motion.

7  **SMOK'S POSITION:**

8     Smok remains unaware of any non-privileged communications to which

9  Smok was a party that refer or relate to any consumer confusion between

10  Sarieddine's Alien Vape Marks and Smok's Alien Kit Marks.

11

12  DATED:  March 21, 2018

Respectfully submitted,

13  THE MCARTHUR LAW FIRM, PC

14

15  By:_____/s/ Stephen McArthur_____
             Stephen McArthur

16  Attorneys for Plaintiff, Mike Sarieddine

17

18

19

20  DATED:  March 21, 2018

Respectfully submitted,

21  LOCKE LORD LLP

22

23  By: _David T. Van Der Laan_

24

25  Name: _David T. Van Der Laan_

26  Attorneys for Defendant and
    Counterclaimant Shenzhen IVPS

27  Technology Co., Ltd. f/k/a Shenzhen
    Smok Technology Co., Ltd.

28